**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **Marc Opperman**, *et al.*, | § | |
| **for themselves and all others** | § | |
| **similarly situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **Case No. 1:12-CV-00219-SS** |
| **vs.** | § | |
| | § | |
| **Path, Inc.,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANT ZEPTOLAB UK LIMITED'S MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

Pursuant to FED. R. CIV. P. 8, 12(b) and 21, Defendant ZeptoLab UK Limited ("ZeptoLab") requests that the Court dismiss Plaintiffs' Second Amended Class Action Complaint ("SAC") as against it due to Plaintiffs' failure to comply with the requirements of FED. R. CIV. P. 8; on the basis of the Court's lack of personal jurisdiction over ZeptoLab; and on the ground that ZeptoLab has been improperly joined in this action.

**PRELIMINARY STATEMENT**

1.      The SAC – totaling 83 pages, with 439 individual paragraphs – has been filed in apparent disregard of this Court's directive in its August 23, 2012 Order for Plaintiffs to file a "**short and plain** statement of the claim showing that the pleader is entitled to relief" or be "subject to dismissal with prejudice".   (Doc. # 99 (citing FED. R. CIV. P. 8(a)(2)) (emphasis added).)   Failing to meet these basic standards, the SAC is rambling, repetitive and contains voluminous passages that do not appear to pertain to ZeptoLab.   ZeptoLab should not be required to spend inordinate and unnecessary expense to address and respond to prolix passages that are irrelevant to ZeptoLab.   Given that Plaintiffs have now had three chances to file a proper

pleading but have failed to do so, this Court should dismiss Plaintiffs' SAC with prejudice.

2.      Even despite Plaintiffs' voluminous collection of allegations, Plaintiffs' failure to adequately allege any sufficient basis for personal jurisdiction over ZeptoLab also warrants dismissal of the claims alleged against ZeptoLab in the SAC.  ZeptoLab is a United Kingdom limited company that has its principal place of business in London.  ZeptoLab does not maintain any offices in Texas, does not have any employees in Texas, and does not direct any significant activity into Texas.  Plaintiffs' inability to allege a basis for personal jurisdiction over ZeptoLab with any specificity is unsurprising, given that ZeptoLab has no purposeful contacts with Texas, much less "minimum contacts" sufficient to satisfy the Due Process clause of the United States Constitution.

3.      Finally, to the extent that ZeptoLab's other requested relief is not granted, this Court should dismiss the SAC as against ZeptoLab on the ground that it has been improperly joined in the action.  There are **fourteen** named Plaintiffs in this action who have asserted claims against **sixteen** defendants pertaining to **eleven** separate iPhone applications (also known as "Apps").  Only six of these named Plaintiffs purport to assert any claim against ZeptoLab. Plaintiffs' claims pertaining to ZeptoLab and their claims pertaining to other defendants simply do not arise out of the same transactions and occurrences (or series of transactions and occurrences), and different witnesses and documentary proof would be required to litigate each of these claims.

4.      For these reasons, and as described in further detail below, the claims against ZeptoLab in the SAC should be dismissed.

## EVIDENCE IN SUPPORT OF THIS MOTION

5.      In support of this motion, ZeptoLab refers this Court to the various pleadings and

papers on file in this action, as well as the September 28, 2012 declaration of Spartak Zuy, a true and correct copy of which is attached hereto as "Exhibit A" (the "Zuy Dec.").

## BACKGROUND

### I.    Procedural History

6.    Plaintiffs commenced this action on March 12, 2012 by filing a 152-page Complaint against defendants including ZeptoLab.  Plaintiffs thereafter filed a First Amended Class Action Complaint (the "FAC") even before ZeptoLab had been served with process.  The FAC was 343 pages long.  Prior to the deadline for ZeptoLab to respond to the FAC, this Court issued an Order on August 23, 2012 (Doc. # 99) which, *inter alia*, dismissed the FAC without prejudice for failure to comply with the requirement of FED. R. CIV. P. 8(a)(2) that "a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" The Court held that Plaintiffs had failed to comply with this Rule because the FAC was "neither short, nor plain," did "not show Plaintiffs are entitled to relief", and was "laden with extraneous material."  The Court granted Plaintiffs "leave to file a second amended complaint, within twenty days of entry of this order."  The Court further stated that "if the Court finds any new complaint fails to (1) state a claim, (2) comply with the Federal Rules, or the Local Rules of this Court, (3) comply with this order, or (4) meet general standards of legal professionalism, it will be subject to dismissal with prejudice."  (*Id.*)

7.    On September 11, 2012, Plaintiffs filed the SAC, which is 83 pages long, and contains 439 paragraphs.  The allegations of the SAC are discussed below.

### II.    The Allegations of the SAC

8.    While providing a complete statement of all of the allegations contained in the SAC would require a memorandum far in excess of this Court's page limits, ZeptoLab will attempt to provide a brief synopsis herein.  The SAC is a putative class action complaint which

seeks relief against sixteen separate defendants for a panoply of causes of action including, but not limited to, common law invasion of privacy and misappropriation, conversion, negligence, and violation of numerous Federal and state-law statutes including RICO, the Texas Wiretap Act, and the California Penal Code. The SAC alleges that eleven separate Apps were sold through Apple's iTunes store which allegedly contained programming features that allowed those Apps to allegedly gain unauthorized access to the "address books" of the iPads, iPods and iPhones of users who downloaded them, and to allegedly upload private information contained in those address books to the defendants' servers. Each of the named Plaintiffs claims that he or she downloaded some of the eleven Apps at issue. (SAC, ¶¶ 8-21.) One of these eleven Apps is a game entitled *Cut the Rope* which Plaintiffs allege ZeptoLab "authored". (*Id.*, ¶ 256.) Plaintiffs contend that personal data from *Cut the Rope* users' address books was allegedly "transferred to ZeptoLabs' and/or [defendant] Chillingo [Ltd.]'s computer servers." (*Id.*, ¶ 265.) Plaintiffs do not allege that ZeptoLab has any responsibility for, or connection to, any of the other ten Apps at issue.

9.     Importantly, none of the fourteen named Plaintiffs downloaded all eleven of the Apps at issue. For example, the first-named Plaintiff Marc Opperman does **not** allege that he downloaded the *Cut the Rope* App. (*Id.*, ¶ 18.) Indeed, only **six** of the fourteen named Plaintiffs are alleged to have downloaded *Cut the Rope*. (*Id.*, ¶¶ 8-21.)

10.     With respect to personal jurisdiction, Plaintiffs allege that ZeptoLab, along with the fifteen other defendants, "have transacted business within this judicial district and had sufficient minimum contacts with Texas and this judicial district so that they are amenable to service of process under the Texas long-arm statute . . . and Fed. R. Civ. P. Rule 4(e) . . . ." (SAC, ¶ 43.) The only jurisdictional allegation that Plaintiffs specifically and uniquely make

with respect to ZeptoLab is that it allegedly "submitted a proposed panel entitled *Cut the Rope: Mobile to Global* to the 2012 SXSWi festival."  (*Id.*, ¶ 44.)

### III.    ZeptoLab Has No Connection to the State of Texas

11.    ZeptoLab is a United Kingdom company that maintains its headquarters and principal place of business in London, United Kingdom.  (Zuy Dec., ¶ 3.)  ZeptoLab is the owner of intellectual property pertaining to the game application entitled *Cut the Rope*.  (*Id.*, ¶ 4.)  The business of ZeptoLab is to license that intellectual property to other corporations for exploitation. (*Id.*)

12.    ZeptoLab does not have any officers or employees in Texas.  (*Id.*, ¶ 12.)  It maintains no offices in Texas, or anywhere in the United States.  (*Id.*, ¶ 6.)  Zeptolab does not own or lease any property in Texas, or anywhere in the United States.  (*Id.*, ¶ 7.)  ZeptoLab has no bank accounts in Texas, and pays no taxes in Texas. (*Id.*, ¶¶ 8, 9.)  ZeptoLab is not registered to do business in Texas, and does not have an agent for service of process in Texas.  (*Id.*, ¶¶ 10-11.)

13.    The *Cut the Rope* game App was first released for Apple's iOS devices (such as iPhones) on or around October 4, 2010.  (*Id.*, ¶ 5.)  ZeptoLab does not directly sell the *Cut the Rope* game App to any consumer in Texas – or anywhere else in the world.  (*Id.*, ¶ 13.)  In fact, ZeptoLab does not directly sell any product whatsoever to any consumer anywhere in the world. (*Id.*)

14.    Defendant Chillingo Ltd. is the publisher of the *Cut the Rope* game App.  (*Id.*, ¶ 14.)  Chillingo Ltd. is unrelated to ZeptoLab.  (*Id.*)  Upon information and belief, Chillingo Ltd. has contracted with Apple Inc. ("Apple") to allow for the *Cut the Rope* App to be sold through Apple's iTunes Store.  (*Id.*, ¶ 15.)  Individual consumers purchase the *Cut the Rope* game application from Chillingo Ltd. through Apple's iTunes Store.  (*Id.*)

<u>**ARGUMENT**</u>

**I.      The SAC Should Be Dismissed With Prejudice Given Plaintiffs' Repeated Failure To Comply With Federal Rule of Civil Procedure 8**

15.      Beyond the jurisdictional defects of the Complaint that will be discussed in Section II, *infra*, the SAC's most obvious flaw is apparent just by counting its pages. Although it is shorter than the complaints which Plaintiffs previously filed in this action, the SAC, which consists of 439 paragraphs strewn over 83 pages, still entirely fails to comply with the dictates of FED. R. CIV. P. 8, which requires that a pleading contain "a short and plain statement" composed of "simple, concise, and direct" allegations. Plaintiffs' repeated failure to comply with this fundamental rule of pleading, and the Court's express warning regarding the consequences of such failure, provide basis enough for the Court to dismiss the SAC with prejudice.

16.      "Rule 8(a) provides that the Complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'  Rule 8(e)(1) provides that the averments in a Complaint must be 'simple, concise, and direct.'"  *James v. Harris County Sheriff's Dept.*, No. CIV.A. H-04-3576, 2006 WL 587596, at *1 (S.D. Tex. Mar. 8, 2006) (quoting FED. R. CIV. P. 8). Plaintiffs have again failed to meet their burden to provide a "short and plain statement" of their claims against the defendants in this action, including ZeptoLab. Rather than providing "simple, concise and direct" allegations, the SAC is a rambling and repetitive document[1] that includes extensive quotations allegedly taken from disparate sources including a "developer reference manual" and various press "reports" that are sometimes so lengthy that they have been set off in single-spaced block text. Neither the Court, nor the

---

[1] Many paragraphs in the SAC are nearly (and improperly) identical in verbiage and/or substance to other paragraphs in the same document.  To provide a few examples of this unnecessary repetition, *compare* Paragraph 62 *with* Paragraphs 182 and 202; Paragraph 88 *with* Paragraph 128, Paragraphs 277 and 278 *with* Paragraph 415 and Paragraph 271 *with* Paragraphs 272 through 274.

numerous defendants in this action, should be required to sift through the 439 paragraphs of the Complaint, just to extract the few factual matters than may actually pertain to any particular claim as stated against any particular defendant. *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) (Rule 8 violated if complaint "is argumentative, prolix, replete with redundancy, and largely irrelevant").

17.     The Fifth Circuit has recognized that "[t]here may be cases in which mere verbosity or repetition would justify final dismissal.'" *Jumonville v. Dep't of Treasury*, 50 F.3d 1033 (5th Cir. 1995) (citation omitted).  The sheer length of the SAC, which is replete with unnecessary detail, extraneous quotations and duplicative allegations, provides reason enough to dismiss it for failure to comply with Rule 8.  At 83 pages, Plaintiffs' SAC is longer than many pleadings that have been rejected by numerous courts – including the Fifth Circuit – as having violated Rule 8.  *Jumonville*, 50 F.3d 1033 (affirming dismissal of 36-page complaint for violating Rule 8); *McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) (affirming dismissal with prejudice of 53 page complaint); *Armstrong v. Tygart, et al.*, Case No. A-12-CA-606-SS, 2012 WL 2688774 (W.D. Tex. July 9, 2012) (Sparks, J.) (dismissing 80 page complaint for violating Rule 8); *Sefton v. Jew*, 204 F.R.D. 104, 105 (W.D. Tex. 2000) (noting plaintiff's 50-page complaint and 24-page response were in "no way 'short and plain,' nor [were] they 'simple, concise, and direct'" and that they "amount[ed] to little more than 74 pages of wasted paper."); *Kuehl v. FDIC*, 8 F.3d 905, 908-09 (1st Cir.1993) (affirming dismissal with prejudice of 43-page complaint).

18.     Additionally, the law is clear that the SAC can and should be dismissed with prejudice, given Plaintiffs' numerous, failed chances to file a proper pleading.  The Fifth Circuit's opinion in *Jumonville* is instructive.  In that decision, the appellate court affirmed the

dismissal of an action with prejudice for violating Rule 8 when "[t]he district court twice ordered [plaintiff] to amend her complaint to bring it into compliance with Rule 8; but she failed to do so, instead persisting in filling successive complaints, which although each was shorter than the preceding one, still contained excess verbiage and irrelevant, repetitious, unintelligible allegations." 50 F.3d at 1033.  The same analysis applies here.  *Accord*, *McHenry*, 84 F.3d 1172 (affirming district court's dismissal of plaintiff's amended complaint for violating Rule 8 without granting further leave to amend given that plaintiff had more than multiple chances to file a proper complaint); *Kuehl*, 8 F.3d 905 (same).

19.     As such, Plaintiffs' SAC should be dismissed with prejudice for its failure to comply with Federal Rule of Civil Procedure 8.

## II.     The Court Lacks Personal Jurisdiction Over ZeptoLab

20.     While the sheer length of Plaintiffs' SAC makes it difficult to tie any particular allegation therein to any particular defendant, it is nonetheless clear that Plaintiffs have failed to meet their burden to provide a sufficient factual basis for personal jurisdiction over ZeptoLab. Plaintiffs appear to allege that ZeptoLab is subject to personal jurisdiction in this Court under the Texas long-arm statute based on the alleged fact that "ZeptoLab submitted a proposed panel entitled *Cut the Rope: Mobile to Global* to the 2012 SXSWi festival."  (SAC, ¶ 44.)  ZeptoLab, however, is a United Kingdom company that is based in London, and which has no offices, employees, or other significant contacts in or with Texas.  (Zuy Dec., *passim*.)  Nor has ZeptoLab purposefully directed any activity to Texas, or specifically targeted any consumers in Texas.  (*Id.*)  It would be a clear violation of basic due process principles to find that this Court has personal jurisdiction over ZeptoLab.   Accordingly, to the extent that the SAC is not dismissed with prejudice for the reason stated in Section I above, ZeptoLab should be dismissed from the action on the ground of lack of personal jurisdiction.

A.   **The Standard of Review Under Rule 12(b)(2) and the Due Process Clause**

21.    On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists and is appropriate.  *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).  If a court does not hold an evidentiary hearing, the plaintiff must make a *prima facie* showing sufficient to support the exercise of personal jurisdiction.  *Id.*; *see also Dell Marketing, L.P. v. Incompass IT, Inc.*, 771 F. Supp. 2d 648, 652 (W.D. Tex. 2011) (Sparks, J.) ("The plaintiff has the burden of making a prima facie case that a defendant has sufficient 'minimum contacts' with the forum state to justify that state's exercise of . . . jurisdiction.").  In such a proceeding, the non-conclusory allegations of the complaint are taken as true, but only if they are not controverted by evidence the movant offers.  *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).  If a defendant offers evidence in support of its motion to dismiss, a plaintiff offers its own evidence, and there is a conflict between that evidence and the evidence the movant relies upon, then the conflict is resolved in favor of the plaintiff.  *Clemens v. McNamee*, 615 F.3d 374 (5th Cir. 2010).

22.    To exercise long-arm jurisdiction over a non-resident defendant, a court must first determine whether the exercise is authorized by the forum state's long-arm jurisdiction statute, and then decide whether the exercise of jurisdiction would comport with the Due Process Clause of the Fourteenth Amendment.  *Panda Brandywine Corp.*, 253 F.3d at 867; *see also Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012) ("The Due Process Clause of the Fourteenth Amendment protects a corporation, as it does an individual, against being made subject to the binding judgments of a forum with which it has established no meaningful 'contacts, ties, or relations.'") (citation omitted).  Texas' long-arm jurisdiction statute is coextensive with federal due process requirements, so the two inquiries coalesce.  *Id.*  Exercising personal jurisdiction over a nonresident defendant is consistent with due process

when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000) (citations omitted).

23.     "'Minimum contacts' can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." *Id.* (citations omitted).   "Specific jurisdiction over a nonresident [defendant] is appropriate when that [defendant] has purposefully directed its activities at the forum state and the 'litigation results from alleged injuries that "arise out of or relate to" those activities.'" *Id.* (citation omitted). General personal jurisdiction, in contrast, "will attach where the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are 'continuous and systematic.'" *Id.* (citation omitted).

24.     Plaintiffs cannot establish that ZeptoLab has contacts with Texas sufficient to allow this Court to exercise either general or specific jurisdiction over ZeptoLab.   Nor can Plaintiffs show that the assertion of jurisdiction over ZeptoLab is consistent with traditional notions of fair play and substantial justice.

**B.     ZeptoLab Does Not Have Sufficient Contacts With Texas To Subject It To <u>Personal Jurisdiction</u>**

**1.     ZeptoLab Is Not Subject To General Personal Jurisdiction**

25.     For ZeptoLab to be subject to general personal jurisdiction in Texas, Plaintiffs must demonstrate that ZeptoLab has "continuous and systematic" contacts with Texas independent of any contacts related to this suit that are sufficient to show that ZeptoLab is "essentially at home" in Texas.   Plaintiffs cannot carry this heavy burden.

26.     The Supreme Court has recently emphasized that the assertion of "general or all-purpose jurisdiction" over non-resident entities is only acceptable if "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, __ U.S. __, 131 S. Ct. 2846, 2851 (2011).  The "paradigm forum for the exercise of general jurisdiction" for a corporation is "one in which the corporation is fairly regarded as home," such as its place of incorporation or principal place of business.  *Id.* at 2853-54.  Lesser connections do not suffice.  A "corporation's 'continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'"  *Id.* at 2856 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)).

27.     The Fifth Circuit has similarly recognized that the general jurisdiction test is "a difficult one to meet."  *Johnson v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *see also id.* at 611 (noting the "high standard set by the Supreme Court").  The Circuit has thus held that the sale of over $250 million of products to seventeen Texas customers over a five year period was insufficient to allow for the assertion of general jurisdiction over an out-of-state company where the products were delivered in another state.  *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 373-76 (5th Cir. 1987).  In fact, the Fifth Circuit recently rejected the assertion of personal jurisdiction over an out-of-state company in Texas where the defendant-company had two employees who resided in Texas, had purchased millions of dollars of goods from Texas vendors, and entered into other contracts in Texas.  *Johnson*, 523 F.3d at 612-13.

28.     Based on this ample authority, it is beyond dispute that ZeptoLab is not subject to personal jurisdiction in Texas under a general jurisdiction theory.  ZeptoLab maintains no offices in Texas, has no employees in Texas, does not own or lease any property in Texas, has no bank

accounts in Texas, pays no taxes in Texas, is not registered to do business in Texas, and does not have an agent for service of process in Texas. (Zuy Dec., *passim*.) ZeptoLab is a United Kingdom corporation that maintains its headquarters and principal place of business in London, United Kingdom. (*Id.* at ¶ 3.) ZeptoLab does not maintain any employees or officers in Texas (*Id.* at ¶ 12.) It simply has no "continuous and systematic" affiliations with Texas, and there is therefore no basis for holding ZeptoLab subject to general personal jurisdiction in Texas.

### 2.     ZeptoLab Is Not Subject To Specific Personal Jurisdiction

29.     To subject a non-resident defendant to specific personal jurisdiction, a plaintiff must show that the non-resident defendant "has 'purposefully directed its activities at the forum state and [that] the litigation results from alleged injuries that arise out of or relate to those activities." *Alpine View Co.*, 205 F.3d at 215 (5th Cir. 2000) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *see also Goodyear Dunlop Tires*, 131 S. Ct. at 2851 (specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation") (citation omitted). Additionally, the relevant contacts must justify a conclusion that the "defendant's conduct and connection with the forum State [is] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Moreover,

> The unilateral activity of [a plaintiff] who claim[s] some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State . . . . [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'

*Pervasive Software, Inc.*, 688 F.3d at 222 (citations omitted).

30.     Plaintiffs cannot show that ZeptoLab has had the requisite affirmative intentional contacts with Texas that give rise to the claims against it that are necessary to allow the exercise of specific personal jurisdiction over ZeptoLab in this suit.  Notably, ZeptoLab is only the owner of the intellectual property associated with the *Cut the Rope* game; a separate, unrelated entity, Chillingo Ltd., is the game's publisher.  (Zuy Dec., ¶¶ 4, 14.)  ZeptoLab does not directly sell the *Cut the Rope* game App to any consumer in Texas (or anywhere else in the world, for that matter).  (*Id.*, ¶ 13.)  Individual consumers purchase the *Cut the Rope* game App from Chillingo Ltd. through Apple Inc.'s iTunes Store.  (*Id.*, ¶ 15.)  ZeptoLab simply does not engage in any significant commercial activity in Texas, and there is therefore no basis to assert specific personal jurisdiction over it.

31.     There mere fact that some of the named Plaintiffs are allegedly Texas residents and are alleged to have downloaded *Cut the Rope* through Apple's App Store cannot serve as a basis for jurisdiction.  First of all, it is black letter law that a plaintiff's unilateral acts – such as a Texas resident choosing to download an App on his or her smartphone – is insufficient to establish specific personal jurisdiction.  *See, e.g.*, *Pervasive Software Inc.*, 688 F.3d at 222 ("The 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the 'unilateral activity of another party or a third person.'") (citation omitted); *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1146-47 (5th Cir. 1985) (in making a minimum contacts determination, "the trial court [is] obliged to disregard [Plaintiffs'] actions, for '[t]he unilateral activities of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.'") (citation omitted).  Moreover, that some individuals that downloaded the *Cut the Rope* application – again, from Apple Inc., not

from Zeptolab – happened to reside in Texas is the very definition of a "random" or "fortuitous" contact.  Plaintiffs do not, because they cannot, allege that ZeptoLab specifically targeted these named plaintiffs, nor any other individual in Texas.

32.    The only allegation in Plaintiffs' SAC that even purports to tie ZeptoLab specifically (as opposed to as a member of a large group of unrelated defendants) to the state of Texas is the allegation that "ZeptoLab submitted a proposed panel entitled *Cut the Rope: Mobile to Global* to the 2012 SXSWi festival."  SAC, ¶ 44(iii)(b).  Plaintiffs do not allege – again, because they cannot do so – that any Texas resident ever saw this proposed panel, or that the panel ever even took place.  Nor could such a panel have influenced any of the named Plaintiffs' decisions to download *Cut the Rope*, as the SXSWi festival occurred in March 2012, at least one month after the named Plaintiffs are alleged to have downloaded the App.  (SAC, ¶ 23.)  Finally, Plaintiffs do not allege that the proposed panel has anything to do with the claims asserted against ZeptoLab.  As such, this isolated occurrence – even if it did occur – could not serve as a basis for specific jurisdiction over ZeptoLab.  *See Pervasive Software Inc.*, 688 F.3d at 220 ("Specific jurisdiction requires a plaintiff to show that . . . the plaintiff's cause of action arises out of or is related to the defendant's forum contacts.") (citation omitted).

33.    Plaintiffs have not alleged facts sufficient to allow this Court to exercise specific personal jurisdiction over ZeptoLab, and no such facts exist.

## C.    Exercising Personal Jurisdiction Over ZeptoLab Would Offend Traditional Notices of Fair Play and Substantial Justice

34.    Even if the Court concludes (which it should not) that ZeptoLab has minimum contacts with Texas sufficient to support the exercise of personal jurisdiction, the exercise of such jurisdiction would offend traditional notions of fair play and substantial justice.

35.    In determining whether the exercise of personal jurisdiction comports with

traditional notions of fair play and substantial justice, courts "consider (1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining effective relief; and (4) the shared interest of the several states." *Johnson*, 523 F.3d at 615.   These factors militate against a finding that the assertion of personal jurisdiction over ZeptoLab in this case is appropriate.

36.    ZeptoLab is a foreign entity based in the United Kingdom, and does not have offices or any presence in Texas.   (Zuy Decl., *passim.*)   As such, ZeptoLab would unquestionably suffer a burden were it to have to defend this suit in this forum. *See Auto Wax, Inc. v. Kasei Kogyo Co., Ltd.*, No. A 00-531 SS, 2001 WL 1891719, at *3 (W.D. Tex. Sept. 26, 2001) (Sparks, J.) ("The burden on a defendant is especially high when the defendant is located in a foreign country . . . ."); *see also Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").   Its witnesses would be required to travel great distances, despite the fact that ZeptoLab could have in no way reasonably anticipated being haled into court in Texas.   The other factors also point away from a finding of personal jurisdiction in Texas.   Texas cannot be said to have a significant interest in adjudicating this dispute.   The only connection this dispute has with Texas is the mere fortuity that some of the named Plaintiffs in this putative class action allegedly reside there – but it is a near certainty that the vast majority of the purported class resides elsewhere.   While we expect that Plaintiffs will contend they have an interest in obtaining effective relief in this Court, that reason alone cannot be enough to meet to the stringent requirements of the Constitution's Due Process clause. *See Auto Wax, Inc.*, 2001 WL 1891719, at *3 ("The state's interest in protecting its citizens from

injury is not significant enough to override the burden on everyone else in the case, particularly when [defendant's] connection to Texas is so attenuated.").

37.     In sum, ZeptoLab does not have sufficient contacts with Texas to allow this Court to exercise either general or specific jurisdiction over ZeptoLab, and requiring ZeptoLab to appear here to defend this suit would offend traditional notions of fair play and substantial justice.  For these reasons, the Court should dismiss Plaintiffs' claims against ZeptoLab.

### III.    ZeptoLab Should Be Dismissed from the Action on the Ground of Improper Joinder

38.     To the extent that this action is not dismissed on other grounds, ZeptoLab respectfully submits that all Plaintiffs other than the first-named Plaintiff Mr. Opperman should be dismissed from this action on the ground that their claims have been improperly joined with his.  Because Mr. Opperman has not asserted a claim against ZeptoLab[2], ZeptoLab should also be immediately dismissed from the action on this ground.

39.     FED. R. CIV. P. 21 provides that "a district court, 'on a motion or on its own, may at any time, on just terms, add or drop a party' on the ground of improper joinder.  A district court has discretion under Rule 20(a) to control the scope of a lawsuit by limiting the number of defendants a plaintiff may hail into court in a particular case." *Tuft v. Texas*, 397 Fed. Appx. 59, 61 (5th Cir. 2010) (citation omitted).  *Accord,  Stinnette v. Medtronic, Inc.*, No. H-09-03854, 2010 WL 767558 (S.D. Tex. March 3, 2010) (citing FED. R. CIV. P. 21; *Lampliter Dinner Theater, Inc. v. Liberty Mut.*, 792 F.2d 1036, 1045 (11th Cir. 1986)).

40.     When a district court determines that misjoinder exists in an action, that court has discretion to resolve the issue by dismissing without prejudice all claims against improperly joined parties.  *See, e.g., Stinnette v. Medtronic, Inc.*, No. H-09-03854, 2010 WL 767558, at *3 (S.D. Tex. March 3, 2010) (dismissing the claims of each plaintiff other than the first named

---

[2] As noted *supra*, the SAC does not allege that Mr. Opperman ever downloaded *Cut the Rope*.

plaintiff on the ground of improper joinder); *Aaberg v. ACandS Inc.*, 152 F.R.D. 498, 501 (D. Md. 1994) (same holding); *see also Acevedo v. Alsup's Conven. Stores, Inc.*, 600 F.3d 516, 520 (5th Cir. 2010) ("after the claims of misjoined parties are severed or dropped, at least one plaintiff typically remains to pursue his or her claims to a final judgment").

41.     The standard for determining whether joinder is proper is set forth in Rule 20(a). This Rule provides that, for joinder to be proper, all of the plaintiffs' claims must "arise out of the same transaction, occurrence, or series of transactions and occurrences" and there must be a common issue of fact or law.  *Acevedo*, 600 F.3d at 522 (quoting Rule 20).  Separate and apart from this test, district courts also have discretion to deny joinder "in the interest of avoiding prejudice and delay" and "[w]hen it would not facilitate judicial economy and when different witnesses and documentary proof would be required for plaintiffs' claims." *Acevedo*, 600 F.3d at 522.  Importantly, "[t]he burden rests with the plaintiffs to show proper joinder." *Stinnette v. Medtronic, Inc.*, No. H-09-03854, 2010 WL 767558, at *1 (S.D. Tex. March 3, 2010) (citing FED. R. CIV. P. 20(a)).  As set forth below, Plaintiffs cannot possibly meet this burden.

42.     *First,* all of the Plaintiffs' claims in this action simply do not arise out of the same transaction or occurrence, or series of transactions or occurrences.  To the contrary, each of the fourteen Plaintiffs **separately** and independently purchased an iPad, iPod and/or an iPhone (SAC ¶ 22) and then engaged in his or her own **separate** transactions to "acquire their . . . Apps from the [Apple] App store."  (*Id.*, ¶ 23.)  Critically, each named Plaintiff allegedly downloaded a **different** combination of Apps than his or her fellow Plaintiffs—and most of these Plaintiffs did not download *Cut the Rope*.[3]  Moreover, each of these different Apps is owned by a different

---

[3] For example, Plaintiff Alan Beuershasen allegedly downloaded *Twitter, Gowalla, Foursquare* and *Angry Birds Classic*, while Plaintiff Theda Sandiford allegedly downloaded *Angry Birds Classic, Cut the Rope*, *FoodSpotting*, *Gowalla*, *Instagram* and *Yelp!*  (SAC ¶¶ 8, 20.)

company and contains different software which was created by different persons from those who created the other Apps at issue. Simply put, the claims of named Plaintiffs such as Mr. Opperman who did not download *Cut the Rope* do not arise out of any alleged actions by ZeptoLab. Indeed, dozens of pages of the SAC address alleged transactions and occurrences that are entirely unrelated to ZeptoLab. For this reason, ZeptoLab is improperly joined in this action. *See, e.g., Norwood v. Raytheon Co.*, No. EP-04-CA-127-PRM, 2007 WL 2408480, at *4 (W.D. Tex. May 1, 2007) ("The Court does not believe that joinder of claims against different manufacturers of similar products is appropriate, even when, as here, the plaintiffs allege a similar defect and similar types of injuries.").

43.     *Second*, ZeptoLab's requested relief should be granted as a matter of judicial economy given the extreme logistical difficulties and delays that would be entailed in managing the **fourteen** Plaintiffs' claims against **sixteen** defendants pertaining to **eleven** separate Apps. If this action were to proceed on the merits, each separate Plaintiff would have to prove that he or she downloaded some of the eleven Apps at issue during the relevant time period, that the Apps in question caused him or her the alleged harm set forth in the SAC, and that one or more of the sixteen defendants named in the Complaint is responsible for causing that alleged harm. Moreover, each of the sixteen defendants may very well assert unique affirmative defenses and engage in its own motion practice with regard to discovery issues and dispositive matters. Because "different witnesses and documentary proof would be required for" each Plaintiff's individual claim against the each of the defendants allegedly responsible for each individual App, ZeptoLab should be dismissed from the action on the ground of misjoinder. *Acevedo*, 600 F.3d at 522.

/

**IV.     ZeptoLab Respectfully Joins in the Other Defendants' Forthcoming FED. R. CIV. P. 12(b)(6) Motions to Dismiss for Failure to State a Claim**

44.     The deadline for ZeptoLab to respond to the SAC in this lawsuit is earlier than the deadline for the other defendants to the action.  ZeptoLab understands that other defendants to this action may subsequently file a Rule 12(b)(6) motion to dismiss on the ground that each of the individual claims set forth in the SAC is defective as a substantive legal matter and therefore fails to state a claim upon which relief may be granted.  ZeptoLab respectfully joins in any such forthcoming motion to dismiss to the extent that it is not dismissed from this action on another ground.  *See* FED. R. CIV. P. 10(c); W.D. TEX. LOCAL CIV. R. 7(d)(2)(l) ("[l]egal authorities are not required to be cited in any of the following motions:  . . . joint motions to dismiss . . . .").[4]

## CONCLUSION

45.     For the reasons stated above, the Court should grant this Motion and dismiss Plaintiffs' SAC with prejudice for failure to comply with Federal Rule of Civil Procedure 8.  In the alternative, the Court should dismiss Plaintiffs' claims against ZeptoLab for lack of personal jurisdiction and/or on the ground of improper joinder.

/

/

/

/

---

4 In an abundance of caution, and to the extent necessary, ZeptoLab also respectfully reserves its right to later file a Rule 12(c) motion to dismiss the SAC for failure to state a claim upon which relief can be granted.  *See* FED. R. CIV. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) . . . , a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."), *and* FED. R. CIV. P.  12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)."); *see also Metro Premium Wines v. Bogle Vineyards, Inc.*, No. 11 C 911, 2011 WL 5403635, *5 (N.D. Ill. Nov. 8, 2011) (holding that defendant could file a Rule 12(c) motion for failure to state a claim upon which relief may be granted in succession to a Rule 12(b)(3) motion to dismiss for improper venue).

DATED:  September 28, 2012
    Austin, Texas

         Respectfully submitted,

         JACKSON WALKER L.L.P.

         By: */s/ Lawrence A. Waks*
           Lawrence A. Waks
           Texas State Bar No. 20670700
           Emilio B. Nicolas
           Texas State Bar No. 24058022
           100 Congress Avenue, Suite 1100
           Austin, Texas 78701
           (512) 236-2000 – Telephone
           (512) 236-2002 – Facsimile
           E-mail: lwaks@jw.com; enicolas@jw.com

         MITCHELL SILBERBERG & KNUPP LLP
           Christine Lepera (*pro hac vice*)
           New York State Bar No. 1849637
           Jeffrey M. Movit (*pro hac vice*)
           New York State Bar No. 4239778
           12 East 49th Street, 30th Floor
           New York, New York 10017-1028
           (212) 509-3900 – Telephone
           (212) 509-7239 – Facsimile
           E-mail:  ctl@msk.com; jmm@msk.com
           *Attorneys for Defendant ZeptoLab UK Limited*

## CERTIFICATE OF SERVICE

This is to certify that on this 28th day of September, 2012, a copy of the foregoing motion was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following:

*Attorneys for Plaintiffs and the Putative Class:*

Carl F. Schwenker
Texas State Bar No. 00788374
LAW OFFICES OF CARL F. SCHWENKER
The Bremond-Houston House
706 Guadalupe Street
Austin, Texas 78701
(512) 480-8427 – Telephone
(512) 857-1294 – Facsimile
E-mail:  cfslaw@swbell.net

Jeffrey S. Edwards
Texas State Bar No. 24014406
THE EDWARDS LAW FIRM
The Bremond-Houston House
706 Guadalupe Street
Austin, Texas 78701
(512) 623-7727 – Telephone
(512) 623-7729 – Facsimile
E-mail:  jeff@edwards-law.com

Dirk M. Jordan
Texas State Bar No. 00784359
JORDAN LAW FIRM
1717 West 6th Street, Suite 420
Austin, Texas 78703
(512) 469-7987 – Telephone
(512) 469-9408 – Facsimile
E-mail:  dirk@dirkjordan.com

*Attorneys for Defendant Path, Inc.:*

Gregory J. Casas
GREENBERG TRAURIG, LLP
300 West 6th Street, Suite 2050
Austin, Texas 78701
(512) 320-7238 – Telephone
(512) 320-7210 – Facsimile
Email: casasg@gtlaw.com

Jedediah Wakefield
Shane B. Witnov
Tyler G. Newby
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
(415) 875-2300 – Telephone
(415) 281-1350 – Facsimile
E-mail:  jwakefield@fenwick.com;
switnov@fenwick.com; tnewby@fenwick.com

/
/
/
/
/
/

/

***Attorneys for Defendant Twitter, Inc.:***

Tanya D. Henderson
PERKINS COIE LLP
2001 Ross Avenue, Suite 4225
Dallas, Texas 75201
(214) 965-7700 – Telephone
(214) 965-7799 – Facsimile
Email: thenderson@perkinscoie.com

Timothy L. Alger
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, California 94304
(650) 838-4300 – Telephone
(650) 838-4350 – Facsimile
E-mail:  talger@perkinscoie.com

Amanda J. Beane
Ryan T. Mrazik
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
(206) 359-8000 – Telephone
(206) 359-9000 – Facsimile
E-mail:  abeane@perkinscoie.com;
rmrazik@perkinscoie.com

***Attorneys for Defendants Apple, Inc.:***

Alan D. Albright
BRACEWELL & GIULIANI LLP
111 Congress Avenue, Suite 2300
Austin, Texas 78701
(512) 494-3620 – Telephone
(512) 472-9123 – Facsimile
Email: alan.albright@bgllp.com

William B. Dawson
Scott Howard Mellon
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201
(214) 698-3132 – Telephone
(214) 571-2919 – Facsimile
Email: wdawson@gibsondunn.com;
smellon@gibsondunn.com

***Attorneys for Defendants Facebook, Inc. and Kik Interactive, Inc.:***

Lori R. Mason
COOLEY, LLP
5 Palo Alto Square
3000 El Camino Real
Palo Alto, California 94306
(650) 843-5000 – Telephone
(650) 849-7400 – Facsimile
Email: lmason@cooley.com

Mazda K. Antia
Michael G. Rhodes
COOLEY, LLP
4401 Eastgate Mall
San Diego, California 92121
(858) 550-6000 – Telephone
(858) 550-6420 – Facsimile
Email: mantia@cooley.com;
mrhodes@cooley.com

/
/
/
/
/

/

**Attorneys for Defendants Yelp! Inc. and Foodspotting, Inc.:**

| | |
|---|---|
| Peter D. Kennedy | Michael Page |
| GRAVES, DOUGHERTY, HEARON & MOODY, PC | DURIE TANGRI LLP |
| 401 Congress Avenue, Suite 2200 | 217 Leidesdorff Street |
| Austin, Texas 78701 | San Francisco, California 94111 |
| (512) 480-5764 – Telephone | (415) 362-6666 – Telephone |
| (512) 536-9908 – Facsimile | (415) 236-6300 – Facsimile |
| Email: pkennedy@gdhm.com | Email: mpage@durietangri.com |

**Attorneys for Defendants Instagram, Inc. and Gowalla Incorporated:**

| | |
|---|---|
| Michael J. Biles | Daniel Weinberg |
| KING & SPALDING LLP | Indra Neel Chatterjee |
| 401 Congress Avenue, Suite 3200 | Morvarid Metanat |
| Austin, Texas 78701 | ORRICK, HERRINGTON & SUTCLIFFE, LLP |
| (512) 457-2000 – Telephone | 1000 Marsh Road |
| (512) 457-2100 – Facsimile | Menlo Park, California 94025 |
| Email: mbiles@kslaw.com | (650) 614-7400 – Telephone |
| | (650) 614-7401 – Facsimile |
| M. Leah Somoano | Email: dweinberg@orrick.com; |
| ORRICK, HERRINGTON & SUTCLIFFE, LLP | nchatterjee@orrick.com; |
| 2050 Main Street, Suite 1100 | mmetanat@orrick.com |
| Irvine, California 92614 | |
| (949) 567-6700 – Telephone | |
| (949) 567-6710 – Facsimile | |
| Email: lsomoano@orrick.com | |

**Attorneys for Defendant Foursquare Labs, Inc.:**

Keith Mason Henneke
MORRISON & FOERSTER LLP
555 West Fifth Street, 35th Floor
Los Angeles, California 90013
(213) 892-5200 – Telephone
(213) 892-5454 – Facsimile
Email:  khenneke@mofo.com

**Attorneys for Defendant Rovio Mobile Oy a/k/a Rovio Entertainment Ltd.:**

| | |
|---|---|
| Shannon W. Bangle | Christopher G. Kelly |
| BEATTY, BANGLE, STRAMA P.C. | HOLLAND & KNIGHT LLP |
| 400 West 15th Street, Suite 1450 | 31 West 52nd Street |
| Austin, Texas 78701 | New York, New York 10019 |
| (512) 879-5050 – Telephone | (212) 513-3200 – Telephone |
| (512) 879-5040 – Facsimile | (212) 385-9010 – Facsimile |
| Email: sbanble@bbsfirm.com | Email: christopher.kelly@hklaw.com |

/

***Attorneys for Defendants Electronic Arts, Inc. and Chillingo Ltd.:***

Hal L. Sanders, Jr.
Adam Hugh Sencenbaugh
HAYNES AND BOONE, LLP
600 Congress Avenue, Suite 1300
Austin, Texas 78701
(512) 867-8427 – Telephone
(512) 867-8667 - Facsimile
Email: hal.sanders@haynesboone.com;
adam.sencenbaugh@haynesboone.com