IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **Marc Opperman *et al*., for themselves and all others similarly situated,** | § § § § § | |
| **Plaintiffs,** | § § | |
| v. | § § | Case No. 1:12-00219-SS |
| **Path, Inc., *et al.*** | § § § | |
| **Defendants.** | § § | |

### DEFENDANT ROVIO ENTERTAINMENT LTD.'S
### MOTION TO SEVER BASED ON IMPROPER JOINDER

Pursuant to Fed. R. Civ. Proc. 21, Defendant Rovio Entertainment Ltd. ("Rovio") (s/h/a Rovio Mobile Oy) requests that the Court sever all claims asserted against Rovio. Rovio is the developer of the Angry Birds Classic App. These claims arise from transactions and occurrences that are different than those that form the basis of the claims asserted against other defendants. Accordingly, severance is appropriate to avoid any prejudice to Rovio and foster judicial efficiency.[1]

**I.     Background**

Plaintiffs filed this putative class action lawsuit against Apple, Inc. ("Apple") and 15 application software developers (or owners thereof) (the "App Defendants"), one of which is Rovio. Each App Defendant is alleged to be (or own) an App Developer, App Publisher, or intellectual property holder, with respect to applications ("Apps") that can be used on various

---

[1] Defendant Rovio contemporaneously moves to dismiss the SAC as part of the Application Developer Defendants' Joint Motion to Dismiss Plaintiffs' Second Amended Complaint. The Joint Motion to Dismiss seeks dismissal of the SAC on the grounds that Plaintiffs lack Article III standing, have failed to comply with Fed. R. Civ. P. 8 and 9, and fail to state a claim upon which relief may be granted. If the Court grants the Joint Motion to Dismiss, this motion to sever is moot.

mobile Apple devices, i.e., the iPad, iPhone, and iPod Touch (collectively, "iDevices"). SAC ¶¶ 1-2. Plaintiffs' general assertions include that they used a "built-in" application on their iDevices, referred to as "Contacts," to maintain their address book contacts (SAC ¶¶ 89-90), they installed certain third-party mobile apps that they obtained from Apple's App Store onto their iDevices, and that these Apps "copied, transmitted, uploaded, stored, used and disclosed" their address book data "without their consent." SAC ¶ 65. According to Plaintiffs, Apple "aided and abetted" in the App Defendants' alleged wrongful conduct and "taught" and "encouraged" the App Defendants to collect the address book data without consent (SAC ¶¶ 110-111, 133-135), and each App "stole" Plaintiffs' "address books" by "surreptitiously initiating unnoticeable Internet calls with Plaintiffs' [iDevices]." SAC ¶¶ 2, 56-57. [2]

The named Plaintiffs are 14 individuals who collectively installed more than a dozen different Apps on their mobile devices. The combination of downloaded Apps was unique to each Plaintiff. Only eight of the fourteen named Plaintiffs downloaded the Angry Birds Classic App.

As evidenced by the SAC, the transactions and occurrences arising from any alleged actions by the App Defendants are necessarily different because each App Defendant has either created or owns a different App with unique features. Each App has its own download and sign in process, and its own navigation prompts and menu screens. Each App has distinct terms of use and disclosures to consumers that are different from all others. As alleged by Plaintiffs, each App has either no process or a distinct process for obtaining user consent to access address book data. For example, Plaintiffs claim that certain Apps accessed their address book data *before* the

---

[2] Plaintiffs allege a hodgepodge of state and federal law claims ranging from negligence, conversion and invasion of privacy to federal causes of action under the Computer Fraud and Abuse Act, federal and state Wiretap Taps Acts, and RICO. As set forth in the Joint Motion to Dismiss, none of these claims has any merit.

user had an opportunity to make a menu selection prompting the app to find or search for a contact. SAC at 31, ¶ 153; SAC at 35, ¶ 176. Other Apps, however, would not access the contact information until Plaintiffs voluntarily made a menu selection, for example, to "Invite from Contacts" or "Find friends via contacts." SAC ¶¶ 247, 261.

As acknowledged by the SAC, the Angry Birds Classic App is uniquely situated as compared to the other Apps at issue in the lawsuit. The gravamen of the claim involving the Angry Birds Classic App is that by allegedly accessing or uploading Plaintiffs' contacts in order to effectuate Plaintiffs' requests that their own contacts be invited, the scope of Plaintiffs' consent as to those very contacts was exceeded. *Id.* ¶¶ 248-249. Other Apps do not have similar menus and prompts before reviewing content in a user's address book, and do not disclose this review in their terms of service. *See, e.g.,* SAC ¶¶ 177-80, 198-99, 206-07, 217-18.

The process by which Angry Birds Classic permits users to connect with one another is through co-defendant Chillingo Ltd.'s *Crystal* platform. SAC ¶¶ 244, 247. Players wishing to connect with others must navigate through the application and register with *Crystal*. SAC ¶¶ 244, 247. Plaintiffs recall that after registering, they navigated to the "Send an invite screen," which contained the subheading "Invite your friends to Angry Birds." *Id.* Plaintiffs then had to press a button bar labeled "Invite from contacts" with the subheading "Send an invite from your local Contacts." *Id.* After doing so, the application accessed Plaintiffs' address book in order to identify potential contacts that were using or could be invited to use the Crystal network. SAC ¶ 249. The SAC further alleges that "these functions may have been enabled by App components provided by Chillingo." *Id.* ¶ 249.

The SAC acknowledges, with respect to Angry Birds Classic, that the eight Plaintiffs who downloaded the App *affirmatively requested* Crystal to invite their contacts from the very

"contacts app" that was supposedly "surreptitiously" accessed by the App. Significantly, it is not alleged that any of the other Apps (other than Cut the Rope, which also used the *Crystal* platform) utilized this platform or the method of "consent" described with respect to Angry Birds Classic. Thus, even where the Plaintiffs allege that "consent" is requested by other Apps, the process by which consent is sought is different than that of Angry Birds Classic.

## II.   ARGUMENT

Fed. R. Civ. P. 21 states that a district court "[o]n motion or on its own, … may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Rule 21 grants a district court considerable discretion to determine "the scope of a lawsuit by limiting the number of defendants a plaintiff may hail into court in a particular case." *Tuft v. Texas*, 397 Fed. Appx. 59, 61 (5th Cir. 2010) (citation omitted). "The purpose of the rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Norwood v. Raytheon Co.,* No. EP-04-CA-127-PRM, 2007 WL 2408480, at *2 (W.D. Tex. May 1, 2007) (*quoting* 7 Charles Alan Wright et al., *Federal Practice & Procedure* § 1652 (3d ed. 2001)).

Because Rule 21 does not provide any standards by which a district court can determine if parties are misjoined, courts have looked to Rule 20 for guidance. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010). Under Rule 20, persons may join in one action as plaintiffs provided that their claims arise from the same transaction or occurrence, and a common question of law and fact will arise in the case. Fed. R. Civ. P. 20(a)(2)(A), (B); *see Tuft*, 397 Fed. Appx. at 61; *Norwood*, 2007 WL 240840, at *2. And, even when the claims do arise from the same transaction, courts may deny joinder to avoid prejudice and delay, enforce judicial economy and promote fundamental fairness. *Acevedo,* 600 F.3d at 521;

*Tompkins v. Able Planet Inc.*, No. 6:10-CV-58, 2011 WL 7718756, at *1 (E.D. Tex. Feb. 17, 2011) (even if joinder test is satisfied, court has discretion to sever).

A.  **The Allegations Against Rovio Do Not Arise Out of the Same "Transaction or Occurrence" That Form the Basis for the Allegations Against Other Defendants**

In deciding whether a cause of action arises out of the same transaction or occurrence, courts will analyze whether there is "logical relationship" between the transactions or occurrences.  *Tompkins*, 2011 WL 7718756, at *2; *Norwood*, 2007 WL 2408480, at *2-3.  This is demonstrated when there is a "common nucleus of operative facts or law."  *Tompkins*, 2011 WL 7718756, at *2.

Here, there is no such "logical relationship" among the Plaintiffs' transactions in downloading the Angry Birds Classic App and other App Defendants' Apps.  Each Plaintiff has installed a different combination of Apps, and each App Defendant has a different process regarding the installation and navigation of their App. Likewise, each App Defendant has different technology, terms of service, disclosures, representations, and consent processes.  The common allegation as to all of the allegedly offending Apps - *i.e.,* that they were downloaded from Apple's App Store - is not a permissible basis for joinder.  *See, e.g., Stinnette v. Medtronic, Inc*, No. H-09-0384, 2010 WL 767558, at *2 (S.D. Tex. Mar. 3, 2010) (noting that joinder generally held improper when the "only common link among them was a defective drug or medical device"); *Norwood*, 2007 WL 2408480, at *4 ("The Court does not believe that joinder of claims against different manufacturers of similar products is appropriate, even when, as here, the plaintiffs allege a similar defect and similar types of injuries"); *Wynn v. NBC*, 234 F. Supp. 2d 1067, 1080 (C.D. Cal. 2002) (the "mere assertion that [defendants] are members of a common

industry is not sufficient to satisfy the requirement that the right to relief against all Defendants arises out of the same transaction or occurrence").[3]

Here, the SAC individually addresses the scope, nature, and mechanism of how each Plaintiff recalls downloading and navigating through each App. Any attempt by Plaintiffs to satisfy joinder based on a conspiracy theory should be rejected. Plaintiffs' claims concerning the App Defendants' "enterprise" to commit wire fraud, transport stolen property and a "conspire" to make money are all unfounded and unsupported by the factual allegations, and are subject to dismissal. SAC ¶ 363.[4]

## B.  Severance Is Warranted to Avoid the Risk of Prejudice to Rovio and to Foster Judicial Efficiency

Severance will prevent any prejudice to Rovio resulting from the improper correlation of the acts of other defendants with Rovio's acts. Plaintiffs, for example, allege that some applications accessed the address book data "before the user made any menu selection" on the defendants obtained no consent to access or invite contacts from the users of their applications. *See, e.g.*, SAC ¶¶ 153, 176. In contrast, the allegations concerning the Angry Birds Classic App plainly demonstrate that Plaintiffs voluntarily made a menu selection before any address book was accessed in order to contact another Angry Birds Classic player. *Id.* at ¶¶ 247, 249.

Severance is especially appropriate here to avoid the inefficiencies that necessarily result from a case with a large number of disparate defendants. Even issues such as forum, jurisdiction, and choice-of-law may quickly diverge because several App Defendants are seeking

---

[3] *See also PPV Connection, Inc. v. Melendez*, 679 F. Supp. 2d. 254, 256-58 (D.P.R. 2010) (severing defendants where each was alleged to wrongfully broadcast the same boxing match but defendants did not have any relationship with each other, were likely to invoke different defenses and be confronted with different evidence, and the only connection was that they allegedly violated the same federal law).

[4] *See Rappaport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481, 497 (D.N.J. 1998) (holding that a "far-fetched allegation" that defendants were part of a "strategic umbrella collusion" did not justify joinder under Rule 20).

to enforce their forum selection clauses and four of the sixteen defendants, including Rovio, are non-U.S. entities. It is likely that each of the sixteen App Defendants will invoke distinct procedural and substantive defenses, engage in its own motion practice with regard to discovery issues and dispositive matters, and that "different witnesses and documentary proof would be required for" each Plaintiffs' individual claim. *Acevedo,* 600 F.3d 522; *see Advamtel, LLC v. AT&T Corp*, 105 F. Supp. 2d 507, 513-14 (E.D. Va. 2000) (holding joinder of defendants inappropriate because cases against each defendant would proceed differently, which would not "streamline the resolution of the case" and "indeed may lead to confusion at trial"). In the context of a purported class action, such variations in factual and legal theories are inefficient not only to Rovio but to all the defendants.

### III.   CONCLUSION

For the reasons stated above, Rovio, the developer of the Angry Birds Classic App, respectfully requests that this Court sever Plaintiffs' claims against Rovio and permit them to proceed separately from this action.

Dated:  October 12, 2012                    Respectfully submitted,

                                                  BEATTY BANGLE STRAMA, P.C.

By: */s/ Shannon W. Bangle /s/*
    Shannon W. Bangle
Texas Bar No. 24006789
sbangle@bbsfirm.com
400 West 15th Street, Suite 1450
Austin, Texas  78701
Tel: (512) 879-5052
Fax: (512) 879-5040

Christopher G. Kelly (*admitted pro hac vice*)
christopher.kelly@hklaw.com
Judith R. Nemsick (*pro hac vice pending*)
judith.nemsick@hklaw.com
HOLLAND & KNIGHT LLP
31 W 52nd Street
New York, NY 10019
Tel: (212) 513-3200
Fax: (212) 385-9010

ATTORNEYS FOR DEFENDANT
ROVIO ENTERTAINMENT LTD.
S/H/A ROVIO MOBILE OY