IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MARC OPPERMAN, RACHELLE KING, CLAIRE MOSES, GENTRY HOFFMAN, STEVE DEAN, ALICIA MEDLOCK, ALAN BEUESHASEN, SCOTT MEDLOCK, GREG VARNER, JUDY LONG, GUILI BIONDI, JASON GREEN and NIRALI MANDAYWALA, for themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>vs.<br><br>PATH, INC., TWITTER, INC., APPLE, INC., FACEBOOK, INC., BELUGA, INC., YELP! INC., BURBN, INC., INSTAGRAM, INC., FOURSQUARE LABS, INC., GOWALLA INCORPORATED, FOODSPOTTING, INC., HIPSTER, INC., LINKEDIN CORPORATION, ROVIO MOBILE OY, ZEPTOLAB UK LIMITED AKA ZEPTOLAB, CHILLINGO LTD., ELECTRONIC ARTS INC., and KIK INTERACTIVE, INC.,<br>Defendants. | Civil Action No. 1:12-cv-00219-SS<br><br>**CLASS ACTION** |

**DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE TRANSFER**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................1

II.    ARGUMENT .......................................................................................2

    A.    Contractual Venue Provisions Require Dismissal ...................2

    B.    In the Alternative, This Case Should be Transferred to the Northern District of California ...................................................6

        1.    The Moving Defendants, Witnesses, and Documents are Located in Northern California or Outside the Country ...........................7

            a.    Foodspotting ........................................7

            b.    Yelp......................................................8

            c.    Path ......................................................8

            d.    Electronic Arts/Chillingo ....................8

            e.    Facebook .............................................9

             f.    Gowalla .............................................10

            g.    Instagram/Burbn ...............................10

            h.    Kik Interactive .................................11

        2.    The Case Could Have Been Brought in the Transferee District ...............11

        3.    Transfer is Warranted Because the Witnesses and Evidence are Concentrated in Northern California and There are no Witnesses in this District .............................................12

        4.    All Private Interest Factors Favor Transfer .........................13

            a.    The relative ease of access to proof favors transfer ......................13

            b.    The concentration of non-party witnesses and availability of compulsory process favors transfer ............................14

            c.    The cost of witness attendance overwhelmingly favors transfer ............................14

            d.    No delay or prejudice is caused by transfer ...................15

        5.    The Balance of Public Interest Factors Favors Transfer to Northern California.............................................16

    a.  Northern California has a greater interest in this case....................16

    b.  The remaining public interest factors favor transfer ......................17

III.  CONCLUSION.............................................................................................................17

# **TABLE OF AUTHORITIES**

**Page(s)**

<u>**Cases**</u>

*Alliance Health Group, LLC v. Bridging Health Options, LLC*,
  553 F.3d 397 (5th Cir. 2008) ................................................................. 2

*Barnett v. Network Solutions, Inc.*,
  38 S.W.3d 200 (Tex. App.—Eastland 2001, pet. denied) ....................... 6

*Burcham v. Expedia, Inc.*,
  No. 4:07CV1963 CDP, 2009 WL 586513 (E.D. Mo. Mar. 6, 2009)........................ 6

*Carnival Cruise Lines v. Shute*,
  499 U.S. 585 (1991)................................................................. 3

*eTool Dev., Inc. v. Nat'l Semiconductor Corp.*,
  No. 2:08-cv-196-TJW, 2010 WL 1000790 (E.D. Tex. Mar. 12, 2010)........................... 12, 15

*Feldman v. Google, Inc.*,
  513 F. Supp. 2d 229 (E.D. Pa. 2007) ........................................ 6

*Fteja v. Facebook, Inc.*,
  841 F. Supp. 2d 829 (S.D.N.Y. 2012)........................................ 6

*Ginter ex rel. Ballard v. Belcher, Prendergast & Laport*,
  536 F.3d 439 (5th Cir. 2008) ................................................ 2

*Hanby v. Shell Oil Co.*,
  144 F. Supp. 2d 673 (E.D. Tex. 2001).................................... 7

*Haynsworth v. The Corporation*,
  121 F.3d 956 (5th Cir. 1997) ............................................. 2, 3

*Hernandez v. Path, Inc.*,
  No. 4:12-CV-1515-YGR (N.D. Cal. May 22, 2012) ............................ 17

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009)........................................ 12, 14

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009)........................................ 12

*In re Horseshoe Entm't*,
  337 F.3d 429 (5th Cir. 2003) ........................................ 7, 15

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009)........................................ 12, 13

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008)........................................ passim

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ........................................................................ 7

*In re Volkswagen of America, Inc.*,
   545 F.3d 304 (5th Cir. 2008) ........................................................................ 6

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) .......................................................................................... 2

*Neil Bros. Ltd. v. World Wide Lines, Inc.*,
   425 F. Supp. 2d 325 (E.D.N.Y. 2006) ........................................................ 14

*Network Protection Svcs., LLC v. Juniper Networks, Inc.*,
   No. 2:10-cv-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) ......... 11, 13

*Noble Drilling Svcs., Inc. v. Certex USA, Inc.*,
   620 F.3d 469 (5th Cir. 2010) ........................................................................ 1

*One Beacon Ins. Co. v. Crowley Marine Svcs., Inc.*,
   648 F.3d 258 (5th Cir. 2011) ........................................................................ 6

*Pirozzi v. Apple, Inc.*,
   Case No. 4:12-CV-01529-YGR (N.D. Cal. May 11, 2012) ....................... 17

*Rassoli v. Intuit Inc.*,
   No. H-11-2827, 2012 WL 949400 (S.D. Tex. Mar. 19, 2012) ................... 6

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ...................................................................................... 6

*Voxpath RS, LLC v. LG Electronics U.S.A., Inc.*,
   No. 2:10-cv-160-JRG, 2012 WL 194370 (E.D. Tex. Jan. 23, 2012) ......... 11, 13

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
   Nos. 2:10-cv-364-JRG; 2:10- cv-365-JRG; 2:10-cv-577-JRG;
   2:10- cv-578-JRG, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ............. 11, 13

## **Statutes**

28 U.S.C. § 1391 .............................................................................................. 11

28 U.S.C. § 1391(c) .......................................................................................... 11

28 U.S.C. § 1404 ............................................................................................ 1, 2

28 U.S.C. § 1404(a) ...................................................................................... 6, 11

## **Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................... 1

Fed. R. Civ. P. 12(b)(3) .................................................................................... 1

Defendants Yelp Inc. ("Yelp"), Foodspotting, Inc. ("Foodspotting"), Path, Inc. ("Path"), Electronic Arts, Inc. ("EA"), Chillingo Ltd. ("Chillingo"), Facebook, Inc. ("Facebook"), Gowalla Incorporated ("Gowalla"), Kik Interactive, Inc. ("Kik"),[1] and Instagram, Inc. ("Instagram") (collectively, "Movants")[2] move to dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) or 12(b)(3)[3] based on contractual venue provisions requiring that the instant claims be brought only in California, or in the alternative to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404.

## I.  INTRODUCTION

This case should not have been filed in Texas.  Plaintiffs have sued sixteen separate companies.  The claims against fifteen of them are based on the various computer programs ("Apps") created or marketed by them and allegedly downloaded by the Plaintiffs from the sixteenth defendant's (Apple's) App Store.[4]  Those downloads were all subject to Apple's terms and conditions, including a mandatory Northern California venue provision.  That provision alone mandates dismissal, and is addressed in Apple's own motion to dismiss, in which Movants hereby join.

In addition to the App Store agreement, however, many of the Defendants have their own contractual user agreements with each of the Plaintiffs who claim to have used their products. Those contracts similarly contain mandatory venue provisions which also mandate dismissal of

---

[1] Kik has separately filed a motion to dismiss for lack of personal jurisdiction.  Kik joins this motion only in the event that the Court denies its motion to dismiss for lack of personal jurisdiction.

[2] Plaintiffs have also named Burbn (a prior name of Instagram) as a separate defendant.  To the extent relevant, Burbn is included in its successor's motion herein.

[3] The Fifth Circuit has declined to decide whether a dismissal based on a forum selection clause is one for improper venue or lack of subject matter jurisdiction.  *See Noble Drilling Svcs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n.3 (5th Cir. 2010) ("Our court has not previously definitively decided whether Rule 12(b)(1) or Rule 12(b)(3) is the proper rule").

[4] The claims against Facebook relate to its alleged acquisition of co-Defendant Gowalla.

each Plaintiff's claims against each of those Defendants.  In addition to Apple and Twitter, whose contractual provisions and ties to the Northern District are addressed in their own motions, each of Movants Yelp, Foodspotting, Chillingo (and thus its successor EA), and Gowalla have valid, enforceable mandatory venue clauses to which the Plaintiffs assented.

Finally, should this Court determine that venue in this District is proper as to some of the Defendants, it is nonetheless inconvenient for virtually every Defendant, most of whom are based in the Northern District of California, and none of whom have any significant contacts with this District.  Accordingly, all Movants move in the alternative for transfer to the Northern District of California pursuant to 28 U.S.C. § 1404.

## II.     ARGUMENT

### A.     Contractual Venue Provisions Require Dismissal

As set forth in several Movants' accompanying declarations, the Plaintiffs in this action are subject to binding, enforceable venue provisions that require his or her claims to be brought not in Texas but in the Northern District of California.  "Federal law applies to determine the enforceability of forum selection clauses in both diversity and federal question cases." *Alliance Health Group, LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399 (5th Cir. 2008). "Under federal law, forum-selection clauses are presumed enforceable, and the party resisting enforcement bears a heavy burden of proof." *Ginter ex rel. Ballard v. Belcher, Prendergast & Laport*, 536 F.3d 439, 441 (5th Cir. 2008) (citing M*/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972)).  That presumption may only be overcome "by a clear showing that the clause is unreasonable under the circumstances." *Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *M/S Bremen*, 407 U.S. at 10).[5]

---

[5] "Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave

As set forth in Apple's own motion, which Movants join, each Plaintiff is subject to Apple's App Store Terms of Service, which provides that courts of the State of California shall have "exclusive jurisdiction for any claim or dispute with Apple or relating in any way to [his or her] use of the App and Book Services."  Defendant Apple Inc.'s Motion to Dismiss at 3.

In addition to the App Store forum selection clause, each Plaintiff also affirmatively agreed to mandatory venue selection provisions with at least one of Yelp, Foodspotting, Twitter, Chillingo (and thus its successor EA), and Gowalla.

For example, six of the Plaintiffs plead that they downloaded the Yelp App and that they "recall" using the Add Friends function that is the focus of their complaints.  In order to do so, each of them had to first create a Yelp account, which in turn required them to affirmatively agree to be bound by the Terms of Service, which include the following venue provision:

### 13. CHOICE OF LAW AND VENUE

> California law will govern these Terms, as well as any claim, cause of action or dispute that might arise between you and Yelp (a "Claim"), without regard to conflict of law provisions.  FOR ANY CLAIM BROUGHT BY EITHER PARTY, YOU AGREE TO SUBMIT AND CONSENT TO THE PERSONAL AND EXCLUSIVE JURISDICTION IN, AND THE EXCLUSIVE VENUE OF, THE STATE AND FEDERAL COURTS LOCATED WITHIN SAN FRANCISCO COUNTY, CALIFORNIA.

Declaration of Ivan Leichtling in Support of Motion to Dismiss, or in the Alternative Transfer ("Leichtling Decl.") ¶ 13 & Ex. A.[6]

---

inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state."  *Id.* (citing *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595 (1991)).  No such factors are present here.

[6] As set forth in the Leichtling Declaration, Yelp has multiple accounts with names matching two of the Plaintiffs, and cannot confirm an account for one.  *Id.* ¶ 4.  Plaintiffs have refused to provide their account names without service of formal discovery requests, which limits Defendants to matching non-unique proper names to cities.  However, this uncertainty caused by the Plaintiffs is immaterial because a Yelp user must assent to Yelp's Terms of Service to establish a user account.  *Id.* ¶ 2.  As also set forth in that declaration, previous versions of

Similarly, each Foodspotting user, before being able to use the Find iPhone Contacts feature, must agree to Terms of Service that contain the following provision:

### Controlling Law and Jurisdiction

> These Terms and any action related thereto will be governed by the laws of the State of California without regard to or application of its conflict of law provisions or your state or country of residence. All claims, legal proceedings or litigation arising in connection with the Services will be brought solely in San Francisco County, California, and you consent to the jurisdiction of and venue in such courts and waive any objection as to inconvenient forum.

Declaration of Alexa Andrzejewski in Support of Motion to Dismiss, or in the Alternative Transfer ("Andrzejewski Decl.") ¶ 3 & Ex. A.[7]

Likewise, for the Cut the Rope and Angry Birds Classic Apps, users that wished to connect with friends using the Apps' social networking features had to create an account and register with the Crystal social network operated by Defendant Chillingo, which was acquired by Defendant EA in 2010.  Declaration of Gareth Reese in Support of Motion to Dismiss, or in the Alternative Transfer ("Reese Decl.") ¶ 7.[8]  In order to register for the Crystal social network, users were required to agree to the applicable Terms of Service and Privacy policy by checking a box indicating assent to those terms as part of the registration process.  *Id.* ¶ 3.  Throughout the class period, terms and conditions for the Crystal social network implemented in the Cut the Rope and Angry Birds Classic Apps had choice of law and venue provisions for the law and

---

Yelp's Terms of Service contained the same provisions, and each of the plaintiff Yelp account holders were required to agree to those terms.  *Id.* ¶ 6.

[7] Prior versions of the Foodspotting Terms of Service contained the same provision.  *Id.* ¶ 6 & Exs. D-E.  Foodspotting is unable to find an account for Plaintiff Theda Sandiford, either because she did not create one, or because she used a different name:  again, Plaintiffs' refusal to identify their account names leaves Defendants guessing.  But she could not have used the Find iPhone Contacts feature without opening an account and agreeing to the Terms of Service.  *Id.* ¶ 8.

[8] The allegations against EA are derivative of its subsidiary Chillingo's conduct.  Declaration of Joseph Wilson in Support of Motion to Dismiss, or in the Alternative Transfer ("Wilson Decl.") ¶ 3.  As such, claims against EA should also be dismissed for improper venue.

courts of England or California.  Reese Decl. ¶ 5 & Ex. A.  Neither application's terms have ever

provided for a choice of law or venue in the State of Texas.  *Id.*

The same is true for Gowalla.  Prior to using the "Find Friends" feature of the

application, users were required to agree to Terms of Service that provide as follows:

**15) General**

A. **Governing Law**.  You agree that: (i) the Service shall be
deemed solely based in California; and (ii) the Service shall be
deemed a passive one that does not give rise to personal
jurisdiction over Gowalla, either specific or general, in
jurisdictions other than California.  This Agreement shall be
governed by the internal substantive laws of the State of
California, without respect to its conflict of laws principles.  The
application of the United Nations Convention on Contracts for the
International Sale of Goods is expressly excluded.  Any claim or
dispute between you and Gowalla that arises in whole or in part
from the Service shall be decided exclusively by a court of
competent jurisdiction located in Santa Clara County, California,
unless submitted to arbitration as set forth in the following
paragraph.

Declaration of Joshua Williams in Support of Defendants' Motion to Dismiss, or in the

Alternative Transfer ("Williams Decl.") ¶ 7 & Ex. A.

Thus, because each Plaintiff claims to have downloaded more than one Defendant's app

from the App Store, *each* of the Plaintiffs is subject to not just one, but multiple contractual

venue provisions:  the Apple venue provision to which all of them agreed, and the individual

venue provisions with Yelp, Foodspotting, Twitter, Chillingo (and thus its successor EA), and

Gowalla to which they also agreed.[9]

Courts routinely enforce so-called "clickwrap" mandatory venue provisions similar to

those present in this case.  *See Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y.

_____

[9] Plaintiffs' Second Amended Class Action Complaint identifies the individual Apps each
Plaintiff claims to own and use.  *Id.* ¶¶ 2-4.  Each Plaintiff owns one or more Apps with a
mandatory venue provision specifying venue in California.  *Id.*

2012) (explaining that "numerous courts . . . have enforced forum selection clauses in clickwrap agreements" and ordering transfer of a Facebook user's lawsuit to the Northern District of California); *Burcham v. Expedia, Inc.*, No. 4:07CV1963 CDP, 2009 WL 586513, at *2-3 (E.D. Mo. Mar. 6, 2009) (explaining that "[clickwrap] agreements have been routinely upheld by circuit and district courts" and dismissing plaintiff's lawsuit outside the contractual forum on improper venue grounds); *Rassoli v. Intuit Inc.*, No. H-11-2827, 2012 WL 949400, at *2 (S.D. Tex. Mar. 19, 2012) (noting that "[b]oth California law . . . as well as Texas law, recognize 'clickwrap agreements'" and ordering dismissal for improper venue).[10]

**B.    In the Alternative, This Case Should be Transferred to the Northern District of California**

Pursuant to § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The goals of § 1404(a) are to prevent waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  The party seeking transfer of venue must show good cause for the transfer and that transfer is "clearly more convenient."[11] Ultimately, it is within a district court's discretion to transfer venue under § 1404(a), in light of

---

[10] Although the Fifth Circuit has not directly addressed the issue, the court has approvingly cited cases confirming enforceability of clickwrap agreements.  *See One Beacon Ins. Co. v. Crowley Marine Svcs., Inc.*, 648 F.3d 258, 268 (5th Cir. 2011) (citing with approval *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 236 (E.D. Pa. 2007), which applied "traditional principles of contract law" to determine enforceability of terms and conditions governing a clickwrap agreement, ordering transfer of venue in an action against Google to Northern District of California, and *Barnett v. Network Solutions, Inc.*, 38 S.W.3d 200, 204 (Tex. App.—Eastland 2001, pet. denied), which held that a party with notice of and opportunity to review contract terms is bound by those terms even where the party has not read them, explaining that "[t]he same rule applies to contracts which appear in an electronic format" in affirming dismissal based on clickwrap forum selection clause).

[11] *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). Note, however, that the user agreements of several of the Defendants, as quoted above, waive any objection to inconvenience of forum.

6

the particular circumstances of the case.  *See, e.g.*, *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001).  Although district courts have discretion in deciding whether to transfer venue, the Fifth Circuit has set limits on how that discretion may be exercised.  Several of those limits are important in this case.  First, the Court may not weigh in the balance of equities the location of the parties' counsel, which the Fifth Circuit has described as "irrelevant and improper for consideration."  *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003).  In fact, to allow the location of counsel to enter into the inquiry has been described by the Fifth Circuit as reversible error.  *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004).  Second, while the plaintiff's choice of forum may be considered in the transfer analysis, it can be error to give that choice "decisive weight."  *See Horseshoe Entm't*, 337 F.3d at 434.  Indeed, a transfer of venue can be required as a matter of law, for instance, where the plaintiff's choice of forum is the only substantial factor warranting retention of the case.  *Id*. at 435 (issuing a writ of mandamus directing a venue transfer where "the factors favoring transfer substantially outweigh the single factor of the place where plaintiff chose to file the suit.").

1.     **The Moving Defendants, Witnesses, and Documents are Located in Northern California or Outside the Country**

Each of the Movants is located in Northern California (other than Kik, in Canada or Chillingo in the UK), conducts all or most of its business there, maintains its records there, and has little meaningful connection with this District.  Indeed, for most of the Defendants the only nexus with this District is that, just as with every other district in America, the Defendants' Apps can be downloaded from the Internet.  The relevant information for each Defendant is as follows:

a.     **Foodspotting**

Foodspotting is a small "startup" with a total of eight employees, all located in its single office in San Francisco.  Andrzejewski Decl. ¶ 10.  All of its corporate records and other

documents are located there, and all of its development work was done there. *Id.* ¶ 11. Any Foodspotting witness with knowledge relevant to this case is located in San Francisco. *Id.* Foodspotting has no offices, employees, or records in this District, and never has. *Id.* ¶ 12.

  **b.**   **Yelp**

   Yelp's headquarters and principal place of business is also in San Francisco. Leichtling Decl. ¶ 8. Yelp's engineering and product development teams, including all witnesses who possess the relevant knowledge concerning the operation of the software at issue, are located in San Francisco. *Id.* ¶¶ 11-12. Yelp's documentation of the design and implementation of Yelp's website are located in San Francisco. *Id.* ¶ 13. Yelp's information technology infrastructure, including electronic document storage, is in San Francisco. *Id.* ¶ 10. Yelp has four employees in this District, none of whom would be relevant Yelp witnesses in this lawsuit, and 526 employees in California. *Id.* ¶ 15. Yelp does not have any offices in Texas. No member of Yelp's management team is located in Texas. *Id.* ¶ 14. Yelp maintains no technology infrastructure or electronic document storage in Texas. *Id.*

  **c.**   **Path**

   Path has fewer than 50 employees, all of whom are located at Path's sole office in San Francisco. Declaration of Matt Van Horn in Support of Defendant Path, Inc.'s Motion to Transfer Venue ¶ 3. All documents and information concerning the design, development, and operation of Path's application are maintained in Path's San Francisco office. *Id.* ¶ 4. All data possessed by Path is located there. *Id.* Path has no employees or offices in this District and maintains no documents or data here. *Id.* ¶ 6.

  **d.**   **Electronic Arts/Chillingo**

   EA's headquarters and principal place of business is in Redwood City, California. Wilson Decl. ¶ 3. EA has 1,489 employees in Redwood City, and 2,706 employees in the State

of California.  *Id.*  EA acquired Chillingo in October 2010, and operates it as a subsidiary.  *Id.* ¶¶ 7-8.  All EA employees responsible for the relationship between Chillingo and EA are located in the United Kingdom, California, or Oregon.  *Id.*. ¶ 9.  All of EA's United States-based employees who are likely to have relevant information regarding the actions alleged in the complaint are thus based in California, or in states other than Texas.  *Id.* ¶ 11.  EA's corporate records, as well as documentation regarding its relationship with Chillingo, are located in the United Kingdom or California.  *Id.* ¶ 10.  While EA has employees in Austin, Texas, none are involved with Chillingo or the Crystal network, and no member of EA's senior corporate executive team is located in Texas.  *Id.* ¶¶ 4, 6.

Chillingo's principal place of business is in Macclesfield, United Kingdom.  Reese Decl. ¶ 2.  Chillingo does not have and has not had any employees or offices in the State of Texas.  Wilson Decl. ¶ 5.  Documents in Chillingo's possession and control are located in the United Kingdom.  Reese Decl. ¶ 6.

### e.      Facebook

Facebook's headquarters and principal place of business is in Menlo Park, California, where the majority of its employees work.  Declaration of Sandeep Solanki in Support of Joint Motion to Transfer Venue  ¶ 2.  Plaintiffs seek to hold Facebook jointly and severally liable for certain actions of Gowalla and the operation of the Gowalla App.  *Id.* ¶ 3.  Current Facebook employees who were primarily involved in the Gowalla transaction and any subsequent decisions regarding the Gowalla App all work and/or reside in the Northern District of California.  *Id.* ¶ 4.  Further, almost all of the significant decisions and conduct relevant to the present litigation took place in the Northern District of California, and nearly all relevant documents and records are located there.  *Id.*

**f.      Gowalla**

Gowalla stopped offering its service in March 2012.  Williams Decl. ¶ 2.  Gowalla presently exists only in corporate form and it does not have any business operations in Texas or anywhere else for that matter.  *Id*.  Gowalla does not maintain any offices, technology infrastructure, servers, files, or employees in Texas.  *Id.* ¶ 6.  The vast majority of Gowalla's corporate records and other documents as well as many of its former employees, including key witnesses who possess relevant information to this case, are located in Northern California.  For example, Gowalla's founder and former CEO, Joshua Williams, co-founder Scott Raymond, as well as Gowalla's former Chief Technology Officer, reside in San Francisco California.  *Id.* ¶ 4.  In addition, Gowalla's investors reside in Northern California and its corporate records and other documents related to the former business activities of Gowalla are located in San Francisco, California.  *Id*. ¶¶ 4-5.

**g.      Instagram/Burbn**

Instagram, Inc. (known as Burbn, Inc. prior to January 2012) had its headquarters, principal place of business and sole office in San Francisco, California.  Declaration of Kevin Systrom in Support of Joint Motion to Transfer Venue ¶¶ 2, 3.  On August 30, 2012 Instagram, Inc. was acquired by Facebook, Inc., and ceased to exist as a separate corporation.  *Id*. ¶ 2.  As a result of the acquisition, the new entity Instagram LLC was formed, which is a wholly owned subsidiary of Facebook, Inc.  *Id*.  Instagram LLC's offices and all of it employees and records are located in either San Francisco or Menlo Park, California.  *Id*. ¶ 4.  All of Instagram, Inc. and Instagram LLC's corporate records and documents, were or are located in either San Francisco or Menlo Park, California.  *Id*. ¶ 6.  Further, current or former employees of Instagram, Inc. and/or Instagram LLC who have knowledge about the App at issue are located in the Northern District of California.  *Id*. ¶ 7.  Instagram, Inc. and Instagram LLC have never had any offices or

employees permanently based in Texas nor maintained any permanent corporate records, data, servers, or other documents in Texas.  *Id.* ¶ 8.

### h.   Kik Interactive

Kik is a Canadian corporation with its headquarters, principal place of business and sole office in Ontario, Canada.  Declaration of Peter Heinke in Support of Joint Motion to Transfer Venue  ¶ 3.  All of Kik's 25 employees are located in Ontario, Canada.  *Id.* ¶ 4.  Kik neither has offices or employees in Texas.  *Id.* ¶¶ 5-6.  Kik maintains no corporate records, data, servers or other documents in Texas.  *Id.* ¶ 7.  There are no witnesses who have knowledge about the operation and implementation of the App at issue who are located in Texas.  *Id.* ¶ 8.

### 2.   The Case Could Have Been Brought in the Transferee District

A threshold question in a motion to transfer under § 1404(a) is whether the suit could have been brought in the proposed transferee district.[12]  Under 28 U.S.C. § 1391, venue is proper in any judicial district where a defendant "resides" or where a substantial part of the events giving rise to the claim occurred.  In addition, a corporate defendant "resides" in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced pursuant to 28 U.S.C. § 1391(c).

This action could have been brought in Northern California.  Apple, Twitter, Facebook, Yelp, Foodspotting, Path, EA, and Instagram are or were all headquartered in Northern California and subject to personal jurisdiction there under 28 U.S.C. § 1391(c).  In contrast, **none**

---

[12] *See Voxpath RS, LLC v. LG Electronics U.S.A., Inc.*, No. 2:10-cv-160-JRG, 2012 WL 194370, at *2 (E.D. Tex. Jan. 23, 2012); *Network Protection Svcs., LLC v. Juniper Networks, Inc.*, No. 2:10-cv-224-JRG, 2012 WL 194382, at *2-3 (E.D. Tex. Jan. 23, 2012); *Wireless Recognition Techs. LLC v. A9.com, Inc.*, Nos. 2:10-cv-364-JRG; 2:10- cv-365-JRG; 2:10-cv-577-JRG; 2:10-cv-578-JRG, 2012 WL 506669, at *2 (E.D. Tex. Feb. 15, 2012).

of the Defendants is headquartered in this District.[13]  And as to the few Defendants headquartered in foreign countries or states other than Texas or California, their contacts with this District are less than the contacts they have with Northern California—while they each make their Apps available to customers in both districts, all of the apps at issue are sold exclusively through California-based Apple's App Store.  Thus, to the extent these Defendants were likely to be subject to personal jurisdiction here, they were equally or more likely to be subject to personal jurisdiction in California when this action was filed.

### 3.   Transfer is Warranted Because the Witnesses and Evidence are Concentrated in Northern California and There are no Witnesses in this District

The proposed transferee forum is "clearly more convenient" when the relevant evidence is concentrated around one district and there are few or no witnesses or evidence in the district deciding the transfer motion.  *See, e.g., In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198-1200 (Fed. Cir. 2009) (applying Fifth Circuit law); *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (same); *In re Genentech, Inc.*, 566 F.3d 1338, 1348 (Fed. Cir. 2009) (same); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (same).  This is true even if the plaintiff's chosen venue may be more geographically "central" regarding some witnesses and evidence.  "[T]he centrality of the Court's location is irrelevant to the analysis" when there are no witnesses residing in the district.  *eTool Dev., Inc. v. Nat'l Semiconductor Corp.*, No. 2:08-cv-196-TJW, 2010 WL 1000790, at *2 (E.D. Tex. Mar. 12, 2010).

---

[13] Four of the Defendants are based in foreign countries (Rovio, Zepto Labs, Chillingo, and Kik Interactive).  One (Gowalla) has ceased operations, and is alleged "on information and belief" to have been acquired by Facebook, and another (Burbn) is the prior name of Movant Instagram. Ten are active domestic companies.  Nine of those are located in Northern California, and one (Foursquare) is located in New York.

### 4.      All Private Interest Factors Favor Transfer

After determining that the case could have been brought in the transferee forum, the

Court then considers the following four private interest factors: (1) the relative ease of access to

sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses;

(3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a

trial easy, expeditious, and inexpensive.  *See TS Tech*, 551 F.3d at 1319.  "[T]he Fifth Circuit

forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer."

*Nintendo*, 589 F.3d at 1200.

The private interest factors favor transfer.  Most relevant witnesses are in Northern

California, and no known relevant witnesses (other than putative plaintiff class representatives,

whose location is not legally significant, as shown below) are in this District or within the

Court's absolute subpoena power.  Most relevant evidence is maintained or accessible in

Northern California.  No known evidence regarding the development, distribution, functionality

or operation of the apps is located in this District.

### a.      The relative ease of access to proof favors transfer

No known documents or other evidence relating to Plaintiffs' claims and Defendants'

defenses are in this District.  Rather, the majority of the documents are concentrated in Northern

California—over 1,500 miles away from this Court.  Thus, the burden associated with accessing

and transporting documentary and other evidence is far greater if the case remains here.

Advances in the technology of data storage and transfer do not change this conclusion.  *TS Tech*,

551 F.3d at 1321.  Because the "physical accessibility to sources of proof" is a particularly

important factor, even with modern advances in the electronic transportation of documents, this

factor weighs in favor of transfer.  *See Voxpath*, 2012 WL 194370, at *5; *Network Protection*,

2012 WL 194382, at *3; *Wireless Recognition Techs.*, 2012 WL 506669, at *3-4.

### b.   The concentration of non-party witnesses and availability of compulsory process favors transfer

The primary consideration for this factor is the location of non-party witnesses.  No non-party relevant witnesses have been identified.  To the extent testimony is sought from non-officer employees of one or more Defendants, they are overwhelmingly concentrated in Northern California, beyond the subpoena power of this Court.  No apparent non-party percipient witnesses live in Texas and therefore none would be subject to this Court's compulsory process.  Thus, this factor favors transfer.

### c.   The cost of witness attendance overwhelmingly favors transfer

"The convenience of the witnesses is probably the single most important factor in transfer analysis."  *Genentech*, 566 F.3d at 1343 (citing *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006).  Because Northern California is more convenient for the majority of the known nonparty and party witnesses, this important factor weighs heavily in favor of transfer.  "It goes without saying that '[a]dditional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.'"  *TS Tech*, 551 F.3d at 1320 (citation omitted).  "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established [ ] a '100-mile' rule, which requires that when the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Id.*  The 100-mile rule applies here.

The likely party witnesses are in Northern California, or in locations other than this District.  As set forth above, each of the still-operating Movants (other than Kik, in Canada or Chillingo in the UK) is headquartered in Northern California, and all of their documents and relevant witnesses are located there.  By contrast, not a single Movant has a single relevant witness or document in this District.  If the case proceeds in this District, the California witnesses will travel over 1,500 miles to attend trial.  Accordingly, Northern California is more convenient for the party witnesses.

There are unlikely to be many, if any, relevant non-party witnesses outside of Northern California, and none have been identified in this District.  To the extent such witnesses are found in districts other than this District or Northern California, such witnesses cannot support keeping this case in this District on the theory that this District is more "central" than Northern California—when there are no witnesses in the district, "the centrality of the Court's location is irrelevant to the analysis."  *eTool*, 2010 WL 1000790, at *2.

Finally, the Plaintiffs are represented by experienced California trial counsel (or were, until counsel's unexplained withdrawal shortly before the most recent status conference).  Although the Plaintiffs' Original and First Amended Complaint alleged claims only under federal and Texas law, the Plaintiffs' Second Amended Complaint now includes claims under California law.

### d.      No delay or prejudice is caused by transfer

This factor applies only in "rare and special circumstances" and therefore is most often neutral.  *Horseshoe Entm't*, 337 F.3d at 434.  No rare or special circumstances are present.  The case is in its earliest stages, no discovery has occurred, and no risks of delay or prejudice are likely.  And to the extent transfer entails a brief delay, Plaintiffs can hardly be heard to object, having delayed service of their Complaint for months.

**5.     The Balance of Public Interest Factors Favors Transfer to Northern California**

In addition to the private factors, the Court also considers the following public interest factors: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law or in the application of foreign law. *TS Tech*, 551 F.3d at 1319. Here, the balance of the public interest factors favor transfer.

**a.     Northern California has a greater interest in this case**

Local interests favor adjudication of this case in Northern California. "[T]he vast majority of identified witnesses, evidence, and events leading to this case" are in or near Northern California. *Id.* at 1321. There is no unique connection between this case and this District; the Plaintiffs may be Austin residents, but the Defendants' apps were distributed throughout the United States, and the Plaintiffs seek to represent a nationwide class. By definition, the Plaintiffs' claims do not vary from the claims they seek to assert on behalf of persons all across the country. The Western District of Texas thus has little independent interest in having the case tried locally. Conversely, Northern California's connection to this case precedes this litigation and is substantial. The majority of the Defendants' Apps were principally researched, designed, or developed in Northern California. Northern California's interest in this case is significant because Plaintiffs' allegations assert that over a dozen technology companies located in the Northern District of California committed a host of legal wrongs and, indeed, engaged in a "racketeering" conspiracy.

Any argument that the citizens of this District have a "substantial interest" in having the case tried locally because the accused Apps were downloaded in this District has been "unequivocally rejected" by appellate authority. As in *TS Tech*, the accused Apps were sold

"throughout the United States" and thus "the citizens of the [Western] District of Texas have no more or less of a meaningful connection to this case than any other venue." *TS Tech*, 551 F.3d at 1321. Accordingly, this factor weighs heavily in favor of transfer.

**b.**     **The remaining public interest factors favor transfer**

The remaining public interest factors favor transfer. Both courts are familiar with the substance and application of the federal law governing this case, and the Complaint states both California and Texas state law claims. However, as detailed in Section III(D)(3) of Apple's Motion to Dismiss, two cases stating similar claims against both Apple and Path, also brought on behalf of a putative nationwide class, are already pending in the Northern District of California. *Hernandez v. Path, Inc.*, No. 4:12-CV-1515-YGR (N.D. Cal. May 22, 2012); *Pirozzi v. Apple, Inc.*, Case No. 4:12-CV-01529-YGR (N.D. Cal. May 11, 2012). Path's motion to dismiss in *Hernandez* has been fully submitted since July 31, 2012, and is awaiting a ruling.

## III.   CONCLUSION

For the foregoing reasons, Defendants request that the Court grant this motion, dismissing all claims asserted in the Complaint, or in the alternative transfer this case to the Northern District of California.

Dated:  October 12, 2012

Respectfully submitted,

DURIE TANGRI LLP

By:  ___*/s/ Michael H. Page*_____
    Michael H. Page (admitted *pro hac vice*)
    217 Leidesdorff Street
    San Francisco, CA 94111
    Telephone:  415-362-6666
    Facsimile:  415-236-6300
    mpage@durietangri.com

    Peter D. Kennedy
    GRAVES DOUGHERTY HEARON
    & MOODY, PC
    401 Congress Avenue, Suite 2200
    Austin, Texas 78701
    Telephone:  512-480-5764
    Facsimile:  512-536-9908
    pkennedy@gdhm.com

    Attorneys for Defendants
    YELP INC. and FOODSPOTTING, INC.

Dated:  October 12, 2012

COOLEY LLP

By:  ___*/s/ Mazda K. Antia*_____
    Michael G. Rhodes (*pro hac vice*)
    Mazda K. Antia (*pro hac vice*)
    4401 Eastgate Mall
    San Diego, CA 92101-1909
    Phone: (858) 550-6000
    Fax: (858) 550-6420
    Email: mrhodes@cooley.com
    Email: mantia@cooley.com

    Lori R. Mason (Tex. Bar No. 00791455)
    5 Palo Alto Square
    3000 El Camino Real
    Palo Alto, CA 94306
    Phone: (650) 846-5000
    Fax: (650) 549-7400
    Email: lmason@cooley.com

    Attorneys for Defendants
    FACEBOOK, INC., INSTAGRAM, INC., and
    KIK INTERACTIVE, INC.

Dated:  October 12, 2012 ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____*/s/ I. Neel Chatterjee*_____

I. Neel Chatterjee (*admitted pro hac vice*)
nchatterjee@orrick.com
Daniel J. Weinberg (*admitted pro hac vice*)
dweinberg@orrick.com
M. Leah Somoano (*admitted pro hac vice*)
lsomoano@orrick.com
Morvarid Metanat (*admitted pro hac vice*)
mmetanat@orrick.com
1000 Marsh Road
Menlo Park, California  94025
Telephone:  +1-650-614-7400
Facsimile:  +1-650-614-7401

KING & SPALDING LLP
Michael J. Biles
Texas Bar No. 24008578
mbiles@kslaw.com
Yusuf Bajwa
Texas Bar No. 24047754
ybajwa@kslaw.com
401 Congress Avenue, Suite 3200
Austin, TX  78701
Telephone:  512.457.2000
Facsimile:  512.457.2100

Attorneys for Defendant
GOWALLA, INC.

Dated:  October 12, 2012                          GREENBERG TRAURIG, LLP

By:   */s/ Gregory J. Casas*
     Gregory J. Casas
     casasg@gtlaw.com
     Texas State Bar No. 00787213
     300 West 6th Street, Suite 2050
     Austin, Texas 78701
     Telephone: 512-320-7200
     Facsimile: 512-320-7210

FENWICK & WEST LLP

By:   */s/ Jedediah Wakefield*
     Jedediah Wakefield (CA 178058)
     jwakefield@fenwick.com
     Tyler G. Newby (CA 205790)
     tnewby@fenwick.com
     555 California Street, 12th Floor
     San Francisco, CA 94104
     Telephone: 415-875-2300
     Facsimile: 415-281-1350
     *Admitted Pro Hac Vice*

     Attorneys for Defendant
     PATH, INC.

Dated:  October 12, 2012                          HAYNES AND BOONE, LLP

By:   */s/ Hal Sanders*
     Hal Sanders
     Texas Bar No. 17607500
     Adam Sencenbaugh
     Texas Bar No. 24060584
     600 Congress Ave., Suite 1300
     Austin, TX  78701
     Telephone: (512-867-8427
     Telefax: (512) 867-8667

     Marc Zwillinger (*Pro Hac Vice Motion Pending*)
     Jake Sommer (*Pro Hac Vice Motion Pending*)
     ZWILLGEN PLLC
     1705 N St. NW
     Washington, DC 20036
     (202) 706-5205

     Attorneys for Defendants
     ELECTRONIC ARTS, INC. and CHILLINGO,
     LTD.

## **FILER'S ATTESTATION**

Pursuant to Section 14(c) of the Administrative Policies and Procedures for Electronic Filing in Civil and Criminal Cases for the United States District Court for the Western District of Texas, regarding signatures, I, Michael H. Page, attest that concurrence in the filing of this document has been obtained.

*/s/ Michael H. Page*
Michael H. Page

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 12, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all non-CM/ECF participants.

*/s/ Michael H. Page*

Michael H. Page