**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| MARC OPPERMAN, *et al.*, on behalf of themselves and all others similarly situated, | § § § | |
| Plaintiffs | § § | |
| v. | § § § | No. 1-12-cv-00219-SS |
| PATH, INC., TWITTER, INC., APPLE, INC., FACEBOOK, INC., BELUGA, INC., YELP, INC., BURBN, INC., INSTAGRAM, INC., FOURSQUARE LABS, INC., GOWALLA, INC., FOODSPOTTING, INC., HIPSTER, INC., ROVIO MOBILE OY, ZEPTOLAB UK LIMITED (aka ZEPTOLAB), CHILLINGO LTD., ELECTRONIC ARTS, INC., AND KIK INTERACTIVE, INC., | § § § § § § § § § § § § § § | **CLASS ACTION** |
| Defendants. | § § | |

**APPLICATION DEVELOPER DEFENDANTS' JOINT MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND .................................................................................................. 2

    A.    The SAC's Factual Allegations ........................................................... 2

        1.    Plaintiffs' use of the applications............................................. 3

        2.    Defendants' alleged violations................................................. 3

        3.    Plaintiffs' alleged harm........................................................... 4

III.   PLAINTIFFS LACK ARTICLE III STANDING .............................................. 5

IV.    THE SAC FAILS TO SATISFY THE PLEADING REQUIREMENTS OF RULE 8........................................................................................................................... 7

V.     PLAINTIFFS FAIL TO STATE A CLAIM ....................................................... 8

    A.    12(b)(6) Standard ................................................................................. 8

    B.    Plaintiffs Fail To State A Claim For Invasion Of Privacy.................... 9

        1.    Elements of a claim based on public disclosure of private facts ............ 10

            a.    Defendants did not disclose private facts to the public at large.............................................................................. 10

            b.    Address book data does not constitute "highly intimate" or "embarrassing" facts about "private affairs" ............................... 11

        2.    Elements of a claim based on intrusion upon seclusion ......................... 12

            a.    Accessing address book data is not "highly offensive".............. 12

            b.    No "physical invasion" occurred ................................. 13

    C.    Plaintiffs Fail To State A Claim For Common Law Misappropriation .............. 14

    D.    Plaintiffs Fail To State A Claim For Conversion ................................ 16

    E.    Plaintiffs Fail To State A Claim For Trespass To Personal Property/Chattels................................................................................. 17

    F.    The SAC Fails To State A Claim For Misappropriation Of Trade Secrets And Proprietary Information................................................. 19

        1.    No trade secret is alleged ....................................................... 19

        2.    The contents of Plaintiffs' address book were acquired and used with Plaintiffs' consent ................................................. 21

    G.    Plaintiffs Fail To State A Claim For Negligence, Gross Negligence And Negligence Per Se ....................................................................... 21

        1.    Defendants do not owe a legal or statutory duty to Plaintiffs................. 21

-i-

**TABLE OF CONTENTS**
(continued)

Page

|     | 2. | Plaintiffs' claim for gross negligence also fails | 22 |

H. Plaintiffs Fail To State A Claim For Violations Of The Federal, Texas and California Wiretap Acts ... 23

1. The Electronic Communications Privacy Act ... 24

2. The Texas and California Wiretap Statutes ... 24

3. The SAC fails to allege defendants intercepted the contents of an electronic communication contemporaneous with transmission ... 25

    a. Meaning of "intercept" ... 26

    b. Acquiring stored data on an iDevice does not constitute an "interception" ... 27

    c. Plaintiffs also fail to allege the acquisition of "content" of a communication by defendants ... 28

I. Plaintiffs Fail To State A Claim Under 18 U.S.C. § 1030(g) For Fraud And Related Activity In Connection with Computers ... 29

1. Plaintiffs have not alleged unauthorized access to their devices ... 30

2. Plaintiffs did not suffer any damage and cannot maintain a civil action against defendants ... 30

J. Plaintiffs Fail To State A RICO Claim ... 32

1. Plaintiffs fail to establish the existence of a RICO enterprise ... 32

2. There is no viable claim of racketeering activity ... 35

3. Plaintiffs fail to plead predicate acts of wire fraud or transportation of stolen property ... 37

4. Plaintiffs lack standing because they have not sustained a RICO injury ... 39

5. Plaintiffs' conspiracy claim is entirely dependent on their deficient RICO claim ... 40

K. Plaintiffs Fail To State A Claim Under The Texas Theft Liability Act ... 40

1. No appropriation occurred ... 41

2. Plaintiffs were not deprived of property ... 41

L. Plaintiffs Fail To State A Claim Under California Penal Code § 502 ... 42

1. Defendants did not act "without permission" under the statute ... 43

2. Plaintiffs have not alleged any "computer contaminant" under § 502(c)(8) ... 44

**TABLE OF CONTENTS**
(continued)

**Page**

M.    Plaintiffs Fail To State A Claim For Unjust Enrichment.................................... 45

N.    Plaintiffs Fail To State A Claim For Constructive Trust .................................... 45

VI.   CONCLUSION............................................................................................................ 46

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Aldridge v. Sec'y, Dep't of the Air Force*,
    No. Civ. 7:05-CV-00056-R, 2005 WL 2738327 (N.D. Tex. Oct. 24, 2005)....................10, 13

*Allstate Ins. Co. v. Donovan*,
    No. H-12-0432, 2012 WL 2577546 (S.D. Tex. July 3, 2012) ................................................38

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................................9, 28

*Atel Mar. Investors, LP v. Sea Mar Mgmt., L.L.C.*,
    No. 08-1700, 2012 WL 2994337 (E.D. La. July 20, 2012) ....................................................36

*Atkinson v. Anadarko Bank & Trust Co.*,
    808 F.2d 438 (5th Cir. 1987) .................................................................................................33

*Beck v. Manufactures. Hanover Trust Co.*,
    820 F.2d 46 (2d Cir. 1987)......................................................................................................39

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................................9, 28

*Bohnsack v. Varco, L.P.*,
    668 F.3d 262 (5th Cir. 2012) .................................................................................................19

*Borninski v. Williamson*,
    No. 3:02-CV-1014-L, 2005 WL 1206872 (N.D. Tex. May 17, 2005) ....................................26

*Bose v. Interclick, Inc.*,
    No. 10 Civ 9183(DAB), 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) ................................31

*Boyle v. United States*,
    556 U.S. 938 (2009)........................................................................................................33, 34

*Brown v. Protective Life Ins. Co.*,
    353 F.3d 405 (5th Cir. 2003) .................................................................................................39

*Calcasieu Marine Nat'l. Bank v. Grant*,
    943 F.2d 1453 (5th Cir. 1991) ...............................................................................................36

*Carroll v. Fort James Corp.*,
    470 F.3d 1171 (5th Cir. 2006) ..................................................................................................8

**TABLE OF AUTHORITIES**
(continued)

Page

*Carson v. Dynegy, Inc.*,
   344 F.3d 446 (5th Cir. 2003) ....................................................................................16

*City of Waco v. Schouten*,
   385 F. Supp. 2d 595 (W.D. Tex. 2005)......................................................................22

*Cont'l Petroleum Corp., Inc. v. Corporation Funding Partners, LLC*,
   No. 11 Civ. 7801 (PAE), 2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012)..................34

*Cornhill Ins. PLC v. Valsamis, Inc.*,
   106 F.3d 80 (5th Cir. 1997) .......................................................................................13

*Crenshaw-Logal v. City of Abilene, Tex.*,
   436 F. App'x 306 (5th Cir. 2011) ................................................................................5

*Cuvillier v. Taylor*,
   503 F.3d 397 (5th Cir. 2007) .......................................................................................9

*Del Vecchio v. Amazon.com Inc.*,
   No. C11-366-RSL, 2011 WL 1585623 (W.D. Wash. Dec. 1, 2011) ...........................5

*Delta Truck & Tractor, Inc. v. J.I. Case Co.*,
   855 F.2d 241 (5th Cir. 1988) .............................................................................36, 37

*Devon Energy Corp. v. Westacott*,
   No. H-09-1689, 2011 WL 1157334 (S.D. Tex. Mar. 24, 2011) ...............................16

*Elliott v. Foufas*,
   867 F.2d 877 (5th Cir. 1989) ..............................................................................32, 37

*Facebook, Inc. v. Power Ventures, Inc.*,
   No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010) ........................42

*FMC Corp. v. Capital Cities/ABC, Inc.*,
   915 F.2d 300 (7th Cir. 1990) ....................................................................................17

*Garza v. Bexar Metro. Water Dist.*,
   639 F. Supp. 2d 770 (W.D. Tex. 2009)......................................................................25

*Guillen v. Calhoun Cnty.*,
   No. V-11-48, 2012 WL 1802617 (S.D. Tex. May 16, 2012)....................................12

*Guy Carpenter & Co. v. Provenzale*,
   334 F.3d 459 (5th Cir. 2003) ....................................................................................20

**TABLE OF AUTHORITIES**
(continued)

**Page**

*H.J., Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1988)...............................................................................................35, 36

*Hall v. Civil Air Patrol, Inc.*,
    193 F. App'x 298 (5th Cir. 2006) ..............................................................................7

*Handeen v. Lemaire*,
    112 F.3d 1339 (8th Cir. 1997) .................................................................................34

*Hill v. Anderson*,
    420 F. App'x 427 (5th Cir. 2011) ............................................................................16

*Hughes v. Tobacco Institute, Inc.*,
    278 F.3d 417 (5th Cir. 2001) ..................................................................................39

*In re Apple & ATTM Antitrust Litig.*,
    No. C 07-05152 JW, 2010 WL 3521965 (N.D. Cal. Jul. 8, 2010) .........................18

*In re Burzynski*,
    989 F.2d 733 (5th Cir. 1993) .............................................................................36, 40

*In re DirectTV Early Cancellation Litig.*,
    738 F. Supp. 2d 1062 (C.D. Cal. 2010) ..................................................................45

*In re Facebook Privacy Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011) .........................................................27, 43, 44

*In re iPhone App. Litig*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................ passim

*In re iPhone App. Litig.*,
    No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)..............5, 21, 43, 44

*In re JetBlue Airways Corp., Privacy Litig.*,
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) .....................................................................6

*In re MasterCard Int'l Inc., Internet Gambling Litig.*,
    132 F. Supp. 2d 468 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002) ...........33

*In re Taxable Mun. Bond Sec. Litig.*,
    51 F.3d 518 (5th Cir. 1995) ....................................................................................40

*Jasper v. Hardin Cnty. Sheriff's Dep't*,
    No. 1:11-CV-408, 2012 WL 4480713 (E.D. Tex. Sept. 5, 2012)............................8

# TABLE OF AUTHORITIES
(continued)

Page

*Johnson v. Sawyer*,
    47 F.3d 716 (5th Cir. 1995) ....................................................................................10, 11, 13

*Johnston v. Wilbourn*,
    760 F. Supp. 578 (S.D. Miss. 1991)........................................................................................36

*Jumonville v. Dep't of Treasury*,
    No. 94-30583, 1995 WL 136507 (5th Cir. 1995) ....................................................................8

*Kan v. OneWest Bank, FSB*,
    823 F. Supp. 2d 464 (W.D. Tex. 2011)..................................................................................8, 9

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) .................................................................................................26

*La. ACORN Fair Hous. v. LeBlanc*,
    211 F.3d 298 (5th Cir. 2000) ...................................................................................................7

*LaCourt v. Specific Media, Inc.*,
    No. SACV 10-1256-GW(JCGx), 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011)....................5

*Landry v. Air Line Pilots Assoc.*,
    901 F.2d 404 (5th Cir. 1990) .............................................................................................34, 35

*Little v. KPMG LLP*,
    No. SA-07-CA-621-FB, 2008 WL 576226 (W.D. Tex. Jan. 22, 2008), *aff'd*, 575 F.3d
    533 (5th Cir. 2009)....................................................................................................................9

*Low v. LinkedIn Corp.*,
    No. 11-CV-01468-LHK, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011)................................5

*Low v. LinkedIn Corp.*,
    No. 11-CV-01468-LHK, 2012 WL 2873847 (N.D. Cal. July 12, 2012) ................................14

*Lowe v. Hearst Commc'ns, Inc.*,
    487 F.3d 246 (5th Cir. 2007) .................................................................................................10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..................................................................................................................5

*Marriott Bros. v. Gage*,
    704 F. Supp. 731 (N.D. Tex. 1988) .......................................................................................39

*McCann v. McCann*
    268 F. App'x. 359 (5th Cir. 2008) .........................................................................................35

**TABLE OF AUTHORITIES**
(continued)

*Montemayor v. Miller*,
No. SA-11-CV-24-XR, 2011 WL 3902764 (W.D. Tex. Sept. 6, 2011) ................................10

*Montesano v. Seafirst Commercial Corp.*,
818 F.2d 423 (5th Cir. 1987) ................................................................................................32

*O'Malley v. O'Neill*,
887 F.2d 1557 (11th Cir. 1989) ............................................................................................38

*Orthoflex, Inc. v. ThermoTek, Inc.*,
No. 11-cv-0870-D, 2012 WL 2864510 (N.D. Tex. July 12, 2012) ........................................36

*Powell v. Union Pac. R.R. Co.*,
F. Supp. 2d 2012 WL 1081474 (E.D. Cal. Mar. 31, 2012) ...................................................25

*Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp.*,
986 F.2d 1208 (8th Cir. 1993) ..............................................................................................36

*Quantlab Techs. Ltd. (BVI) v. Godlevsky*,
719 F. Supp. 2d 766 (S.D. Tex. 2010) ..................................................................................16

*Quemado v. Exxon Mobil Corp.*,
No. DR-03-CA-19-OG, 2005 WL 3591912 (W.D. Tex. Mar. 31, 2005) ...............................22

*Reves v Ernst & Young*,
507 U.S. 170 (1993)...............................................................................................................33

*Rivera v. Wyeth-Ayerst Labs.*,
283 F.3d 315 (5th Cir. 2002) ..................................................................................................6

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985)...............................................................................................................32

*Sefton v. Jew*,
204 F.R.D. 104 (W.D. Tex. 2000) ...........................................................................................7

*Steele v. Hosp. Corp. of Am.*,
36 F.3d 69 (9th Cir. 1994) .....................................................................................................40

*Steve Jackson Games, Inc. v. U.S. Secret Serv.*,
36 F.3d 457 (5th Cir. 1994) ..................................................................................................26

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*,
932 F.2d 1113 (5th Cir. 1991) ..............................................................................................20

**TABLE OF AUTHORITIES**
(continued)

Page

*Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*,
   637 F.3d 604 (5th Cir. 2011) ............................................................................................19, 20

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004) ...............................................................................................26

*Tipton v. Northrop Grumman Corp.*,
   No. 08-1267, 2009 WL 2914365 (E.D. La. Sept. 2, 2009)......................................................35

*Tomblin v. Trevino*,
   No. SA-01-CA-1160-OG, 2002 WL 32857194 (W.D. Tex. June 17, 2002)..........................13

*Trugreen Landcare LLC v. Scott*,
   512 F. Supp. 2d 613 (N.D. Tex. 2007) ..................................................................................40

*Tuchman v. DSC Commc'ns's Corp.*,
   14 F.3d 1061 (5th Cir. 1994) .................................................................................................39

*United States v. Delgado*,
   401 F.3d 290 (5th Cir. 2005) .................................................................................................40

*United States v. Forrester*,
   512 F.3d 500 (9th Cir. 2008) .................................................................................................29

*United States v. Herron*,
   825 F.2d 50 (5th Cir. 1987) ...................................................................................................37

*United States v. Indelicato*,
   865 F.2d 1370 (2d Cir. 1989)................................................................................................39

*United States v. Nguyen*,
   504 F.3d 561 (5th Cir. 2007) .................................................................................................38

*United States v. Onyiego*,
   286 F.3d 249 (5th Cir. 2002) .................................................................................................39

*United States v. Steiger*,
   318 F.3d 1039 (11th Cir. 2003) .............................................................................................26

*United States v. Turkette*,
   452 U.S. 576 (1981)...............................................................................................................33

*VanDenBroeck v. CommonPoint Mortg. Co.*,
   210 F.3d 696 (6th Cir. 2000) .................................................................................................34

TABLE OF AUTHORITIES
(continued)

Page

*We-Flex, LLC v. NBSP, Inc.*,
    No. H-11-1078, 2012 WL 1440439 (S.D. Tex. Apr. 25, 2012).................................................5

*Whelan v. Winchester Prod. Co.*,
    319 F.3d 225 (5th Cir. 2003) ........................................................................................32, 33

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) .................................................................................................37

*Word of Faith World Outreach Center Church, Inc. v. Sawyer*,
    90 F.3d 118 (5th Cir. 1996) ..................................................................................35, 36, 40

*Young v. Scruggs*,
    No. 09-cv-669KS-MTP, 2010 WL 2301641 (S.D. Miss. June 7, 2010) ................................35

STATE CASES

*Aguilar v. Morales*,
    162 S.W.3d 825 (Tex. App.—El Paso 2005, pet. denied.) .....................................................21

*Batt v. City and County of San Francisco*,
    155 Cal. App. 4th 65 (Cal. App. 2007) .................................................................................45

*Carpenter v. Carpenter*,
    No. 02-11-00266-CV, 2012 WL 2579498 (Tex. App.—Fort Worth July 5, 2012, pet.
    filed).......................................................................................................................................17

*Castillo v. Texas*,
    810 S.W.2d 180 (Tex. Crim. App. 1990)........................................................................25, 27

*Chrisman v. City of Los Angeles*,
    155 Cal. App. 4th 29 (2007) ...........................................................................................42, 43

*City of Corpus Christi v. Heldenfels Bros., Inc.*,
    802 S.W.2d 35 (Tex. App.—Corpus Christi 1990), *aff'd,* 832 S.W.2d 39 (Tex. 1992) .........45

*D. Houston, Inc. v. Love*,
    92 S.W.3d 450 (Tex. 2002)....................................................................................................22

*Dominguez v. Walgreen Co.*,
    No. 11-08-00045-CV, 2009 WL 3155041 (Tex. App.—Eastland Oct. 1, 2009, no pet.)........21

*Fennessey v. PG&E*,
    20 Cal. 2d 141 (1942) ...........................................................................................................22

**TABLE OF AUTHORITIES**
(continued)

Page

*Folgelstrom v. Lamps Plus, Inc.*,
    195 Cal. App. 4th 986 (2011) ............................................................13

*Heldenfels Bros. v. City of Corpus Christi*,
    832 S.W.2d 39 (Tex. 1992).................................................................45

*Hill v. NCAA*,
    7 Cal. 4th 1 (1994) ......................................................................10, 14

*Horton v. Jack*,
    126 Cal. 521 (1899) ...........................................................................16

*Hoyem v. Manhattan Beach City Sch. Dist.*,
    22 Cal. 3d 508 (1978) .........................................................................22

*Hudspeth v. Stoker*,
    644 S.W.2d 92 (Tex.App.—San Antonio 1982, writ ref'd) ...................45

*In re Bass*,
    113 S.W.3d 735 (Tex. 2003)................................................................20

*In re Union Pac. R.R. Co.*,
    294 S.W.3d 589 (Tex. 2009)................................................................20

*Intel Corp. v. Hamidi*,
    30 Cal. 4th 1342 (2003) .................................................................18, 42

*J.P. Morgan Chase Bank, N.A. v. Tex. Contract Carpet, Inc.*,
    302 S.W.3d 515 (Tex. App.—Austin 2009, no pet.) ............................16

*Jamgotchian v. Slender*,
    170 Cal. App. 4th 1384 (2009) ...........................................................17

*Jones v. Boswell*,
    250 S.W.3d 140 (Tex. 2008)...............................................................17

*Lowther et ux v. Lowther, Jr. et ux*,
    578 S.W.2d 560 (Tex. Civ. App.—Waco, 1979, writ ref'd n.r.e) .........45

*Meyer v. Texas*,
    78 S.W.3d 505 (Tex. App.—Austin 2002, pet. ref'd) ..........................25

*Mowbray v. Avery*,
    76 S.W.3d 663 (Tex. App.—Corpus Christi 2002, pet. denied)............45

## TABLE OF AUTHORITIES
(continued)

Page

*Mowbray v. Avery*,
  76 S.W.3d 683 681...................................................................................................46

*Ojeda v. Wal-Mart Stores, Inc.*,
  956 S.W.2d 704 (Tex. App.—San Antonio 1997, pet. denied.)............................16

*Omnibus Int'l v. AT&T, Inc.*,
  111 S.W.3d 818 (Tex. App.—Dallas 2003, pet. granted, judgm't vacated w.r.m.) ...............16

*Omohundro v. Matthews*,
  161 Tex. 367, 341 S.W.2d 401 (1960)................................................................45

*Perry v. S.N.*,
  973 S.W.2d 301.................................................................................................22

*Plotnik v. Meihaus*,
  208 Cal. App. 4th 1590 (2012) ..........................................................................17

*Porten v. Univ. of S.F.*,
  64 Cal. App. 3d 825 (1976) ...............................................................................10

*Puerto v. Superior Court*,
  158 Cal. App. 4th 1242 (2008) .....................................................................11, 13

*Rogers v. Ulrich*,
  52 Cal. App. 3d 894 (1975) ...............................................................................25

*Sanders v. Am. Broad. Cos.*,
  20 Cal. 4th 907 (1999) .......................................................................................12

*Shulman v. Group W Prods., Inc.*
  18 Cal. 4th 200 (1998) .............................................................................10, 12, 14

*Trevino v. Lightning Laydown, Inc.*,
  782 S.W.2d 946 (Tex. App.—Austin 1990, writ denied) ......................................23

*Trilogy Software, Inc. v. Callidus Software, Inc.*,
  143 S.W.3d 452 (Tex. App.—Austin 2004, pet. denied)................................19, 20

*U.S. Golf Ass'n v. Arroyo Software Corp.*,
  69 Cal. App. 4th 607 (1999) ..............................................................................15

*U.S. Sporting Prods. v. Johnny Stewart Game Calls, Inc.*,
  865 S.W.2d 214 (Tex. App.—Waco 1993, writ denied) ......................................15

# TABLE OF AUTHORITIES
(continued)

Page

*U-Haul Int'l, Inc. v. Waldrip,*
  55 Tex. Sup. Ct. J 1345, 2012 WL 3800220 (Tex. Aug. 31, 2012) ......................................... 23

*Valenzuela v. Aquino,*
  853 S.W.2d 512 (Tex. 1993) .............................................................................................. 12

*Walker v. Cotter Props., Inc..,*
  181 S.W.3d 895 (Tex. App.—Dallas 2006, no pet.) ............................................................ 45

STATUTES

18 U.S.C. § 1030(a)(2)(C) ............................................................................................................ 29

18 U.S.C. § 1030(a)(5)(A) ............................................................................................................ 29

18 U.S.C. § 1030(a)(5)(C) ...................................................................................................... 29, 30

18 U.S.C. § 1030(c)(4)(A)(i)(I) .................................................................................................... 30

18 U.S.C. § 1030(c)(4)(A)(i)(IV) ................................................................................................. 30

18 U.S.C. 1030(c)(4)(A)(i)(V) ...................................................................................................... 31

18 U.S.C. § 1030(e)(2) .................................................................................................................. 30

18 U.S.C. § 1030(g) .......................................................................................................... 29, 30, 31

18 U.S.C. § 1343 ............................................................................................................................ 37

18 U.S.C. § 1962(c) ................................................................................................................. passim

18 U.S.C. § 1962(c) and (d) .......................................................................................................... 32

18 U.S.C. § 1964(c) ................................................................................................................. 32, 39

18 U.S.C. § 2314 ..................................................................................................................... 37, 39

18 U.S.C. § 2510(4) ...................................................................................................................... 26

18 U.S.C. § 2510(5) ...................................................................................................................... 26

18 U.S.C. § 2510(8) ...................................................................................................................... 28

18 U.S.C. § 2511(1)(a) .................................................................................................................. 24

18 U.S.C. § 2511(1)(c) .................................................................................................................. 24

**TABLE OF AUTHORITIES**
(continued)

Page

18 U.S.C. § 2511(1)(d) ...................................................................................24

18 U.S.C. § 2511(2)(d) ...................................................................................27

Cal. Penal Code § 502(b)(10) .........................................................................44

Cal. Penal Code §§ 502 (c)(1), (2), (6), (7) & (8).........................................42

Cal. Penal Code § 631(a) ..........................................................................25, 27

Cal. Penal Code § 502 ............................................................................. passim

Tex. Civ. Prac. & Rem. Code § 134.002(2).....................................................40

Tex. Code Crim. Proc. art. 18.20 § 1(3) .........................................................26

Tex. Code Crim. Proc. art. 18.20 § 1(4) .........................................................26

Tex. Code Crim. Proc. art. 18.20 § 1(6) .........................................................28

Tex. Penal Code § 16.02 ..................................................................................22

Tex. Penal Code § 31.01(2) .............................................................................41

Tex. Penal Code § 31.01(4) .............................................................................41

Texas Penal Code § 31.03 ...............................................................................40

Tex. Penal Code § 31.03(a)..............................................................................41

Tex. Penal Code § 33.02 ..................................................................................22

**OTHER AUTHORITIES**

California Constitution......................................................................................13

Fed. R. Civ. P. 8.......................................................................................1, 7, 8

Fed. R. Civ. P. 8(a)(2)......................................................................................7, 8

Fed. R. Civ. P. 8(a) ............................................................................................7

Fed. R. Civ. P. 9 .................................................................................................1

Fed. R. Civ. P. 9(b) ..............................................................................8, 37, 38

## TABLE OF AUTHORITIES
(continued)

**Page**

Fed. R. Civ. P. 12(b)(1)......................................................................................................5

Fed. R. Civ. P. 12(b)(6)......................................................................................................8

Article III of the U.S. Constitution ......................................................................... passim

Defendants Instagram, Inc., Gowalla, Inc., Chillingo Ltd., Electronic Arts Inc., Foodspotting, Inc., Foursquare Labs, Inc., Kik Interactive, Inc.,[1] Path, Inc., Rovio Mobile Oy, and Yelp Inc., (together, "Defendants") respectfully submit this joint motion to dismiss the second amended class action complaint ("SAC") filed by Plaintiff Marc Opperman, *et al.* ("Plaintiffs") in its entirety on the grounds that Plaintiffs lack Article III standing, they fail to comply with Rules 8 and 9 of the Federal Rules of Civil Procedure, and they fail to state a claim upon which relief may be granted.  Because this is Plaintiffs' third bite at the apple and they have failed to comply with the Federal Rules of Civil Procedure, the SAC should be dismissed with prejudice.

## I.  <u>INTRODUCTION</u>

This case is the latest in a string of class action lawsuits against some of the most recognizable and popular software application developers in the world filed on the heels of reports in the press and claims on Internet blogs.  At the heart of this case is the alleged improper use of contact information stored on an individual's wireless mobile device, such as an iPhone, iPad, or iPod Touch, to facilitate the use of a software application that the individual has voluntarily downloaded to his or her device.  The SAC alleges that, as part of the functionality of each software application, the applications transferred contact information from a user's address book to the application developer.  Although the SAC alleges that different applications implemented this functionality in different ways, it alleges that this was done for the purpose of helping users connect with friends (people from whom they have contact information) who are also using the application.

---

[1] Kik has separately filed a motion to dismiss for lack of personal jurisdiction.  Kik joins this motion only in the event that the Court denies its motion to dismiss for lack of personal jurisdiction.

Plaintiffs' SAC is the proverbial kitchen sink and, despite being over 80 pages in length and containing 439 paragraphs (after reducing the font size and increasing the number of lines per page from their prior complaint), Plaintiffs fail to allege sufficient facts to state a single cause of action.  In a nutshell, Plaintiffs allege that Defendants violated a variety of wiretap, property and privacy laws by "surreptitiously[,]" SAC ¶ 2, "cop[ying], transmit[ing], upload[ing], stor[ing], us[ing] and disclos[ing]" their "address book materials" "without their consent."  SAC ¶¶ 65, 66, 68, 155.  Even accepting Plaintiffs' allegations as true for purposes of this motion, they do not establish that Plaintiffs have Article III standing and they are wholly insufficient to state a claim under any of the theories Plaintiffs advance.  Indeed, similar class action claims involving analogous factual allegations have failed to survive motions to dismiss.  Plaintiffs' SAC fares no better.  The SAC merely recites the legal elements of Plaintiffs' claims for relief, and fails to allege sufficient facts to give rise to a plausible entitlement to relief.

Because Plaintiffs did not heed the Court's "WARN[ING]" to file a new complaint that states a claim and complies with the Federal Rules, the SAC should be dismissed with prejudice. Docket No. 99 at 4.

## II.    BACKGROUND

### A.    The SAC's Factual Allegations

Plaintiffs each "purchased iPhones, iPads and iPod touches (collectively, 'iDevices') from Apple, with several built in Apps."  SAC ¶ 1.  Plaintiffs allege that each of them used a "built-in" application on their iDevices called "Contacts" to store address book information. SAC ¶¶ 89-90.  Plaintiffs "organize[d] and maintain[ed] their address book contacts" by either directly "input[ing] numerous address book contacts[,]"  SAC ¶ 90, or syncing the information from another computer.  SAC ¶¶ 91-92.

### 1.   Plaintiffs' use of the applications

Plaintiffs concede that they voluntarily installed, accessed and used one or more of the

App Defendants' applications.  For instance, certain Plaintiffs allege that prior to February 2012,

they "obtained" the Path App, and each recalls "opening the Path App, signing up via a 'Sign

Up' screen, and using and navigating around the Path App."  SAC ¶¶ 1; 175.  In many instances,

Plaintiffs allege that after downloading the application they recall being presented with a screen

asking if they wished to locate their friends who also used the application.  For instance, certain

Plaintiffs "recall using[,]" "logging in and navigating within the [Gowalla] App to a 'Find

Friends' menu screen and being offered various options (including an option entitled 'Address

Book')."  SAC ¶ 151.  Users of the Angry Birds application allege that after registering, players

had to navigate to the "Send an invite screen," which contained the subheading "Invite your

friends to Angry Birds."  SAC ¶ 247.  The user then had to press a button labeled "Invite from

contacts" with the subheading "Send an invite from your local Contacts."  *Id.*  After doing so, the

application accessed Plaintiffs' address book in order to identify potential contacts that were

using or could be invited to use the Crystal network.  SAC ¶ 249.[2]

### 2.   Defendants' alleged violations

Once the applications were installed on their wireless mobile devices, Plaintiffs allege

that Defendants "copied, transmitted, uploaded, stored, used and disclosed" their "address book

materials[,]" in particular, "email addresses, phone numbers, [and] contact names[,]" "without

their consent."  SAC ¶¶ 65, 66, 68,155,176, 219, 220.  The address book information was

purportedly transferred to Defendants' servers via Wi-Fi, 3G, and the Internet.  SAC ¶ 154.

---

[2] Defendants detail the allegations against Path, Gowalla, and Angry Birds as examples of and to illustrate Plaintiffs' allegations of their voluntary installation, access and use of Defendants' applications.  Plaintiffs make similar or virtually identical allegations as to all of the Defendants.  *See* SAC ¶¶ 1 (all Defendants), 160 (Kik), 175 & 179 (Path), 206 (Foursquare), 217 (Instagram), 226 & 228 (Yelp!), 238 (Foodspotting).

In addition, Plaintiffs allege that with respect to certain applications, they were not notified that their address book had to or would be transmitted and/or uploaded to Defendants to locate friends from their contact list.  SAC ¶¶ 218 and 222; SAC ¶ 152; SAC ¶ 67; SAC ¶ 176. With regards to Gowalla and Path Apps specifically, Plaintiffs further allege that the application accessed the address book "***before*** the user made any menu selection on the 'Find Friends' page."  SAC ¶ 153; SAC ¶ 176.  With respect to the Instagram, Cut the Rope and Angry Birds Classic apps, Plaintiffs allege that they first made a menu selection to "Send an invite from your local Contacts" or to "Find friends via contacts" *before* defendants accessed address book information."  SAC ¶¶ 219, 247, 261.

Plaintiffs admit that each Defendant "followed Apple's standard protocol for getting Apps on the App store."  SAC ¶ 108. "Apple [also] reviewed all updates and new versions of the App Defendants' Apps, and did not terminate or restrict their distribution at any time …."  SAC ¶ 116.

### 3.    Plaintiffs' Alleged Harm

Plaintiffs allege that their "private address books have intrinsic, extrinsic and commercial market value."  SAC ¶ 77.  Plaintiffs further allege that they have lost the "ability to control and keep [their address book] information private[,]"  SAC ¶ 78, and that Defendants "have impermissibly benefited by growing their social and gaming networks exponentially ...."  SAC ¶ 79.

In addition, Plaintiffs assert that Defendants' actions "used iDevice resources, battery life energy and cellular time, at a cost to the Plaintiffs, and caused loss of use and enjoyment of some portion of their iDevices' useful life."  SAC ¶ 81.  As a result, Plaintiffs allege that they "must also re-charge their iDevices" thereby consuming "additional electricity purchased by Plaintiffs." SAC ¶ 81.

### III.   <u>PLAINTIFFS LACK ARTICLE III STANDING</u>

Defendants hereby join and incorporate Apple's argument that the SAC should be dismissed in its entirety under Rule 12(b)(1) because Plaintiffs have failed to plead facts sufficient to establish that they suffered a cognizable injury in fact that is fairly traceable to each Defendant as required by Article III of the U.S. Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). As detailed by Apple, Plaintiffs' allegations of injury fail to satisfy the Constitutional requirement for several reasons. *First*, Plaintiffs' allegation that Defendants' uploaded their address books to enable software features establishes a benefit, rather than any harm, to Plaintiffs. *See, e.g.*, SAC ¶¶ 232-236 (alleging Twitter uploaded address book information in connection with a "Follow Friends" feature that purported to "[s]can your contacts for people you already know on Twitter"). *Second*, Plaintiffs' allegation that Defendants' use of their address books "de-privatized" the information and somehow made it obtainable "by government officials without a warrant or cause" (SAC ¶ 79) is too vague and speculative to establish Article III standing. *We-Flex, LLC v. NBSP, Inc.*, No. H-11-1078, 2012 WL 1440439, at *7 (S.D. Tex. Apr. 25, 2012); *Crenshaw-Logal v. City of Abilene, Tex.*, 436 F. App'x 306, 309 (5th Cir. 2011).

*Third*, Plaintiffs' theory that their "address books have intrinsic, extrinsic and commercial market value" (*e.g.*, SAC ¶ 77) has been repeatedly rejected by courts considering similar theories of economic value. *See, e.g.*, *Low v. LinkedIn Corp.*, No. 11-CV-01468-LHK, 2011 WL 5509848, at *4-6 (N.D. Cal. Nov. 11, 2011) (sharing of unique user IDs); *In re iPhone App. Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *5-6 (N.D. Cal. Sept. 20, 2011) (collection of "personal information"); *LaCourt v. Specific Media, Inc.*, No. SACV 10-1256-GW(JCGx), 2011 WL 1661532, at *3-6 (C.D. Cal. Apr. 28, 2011) (collection of internet browsing history); *Del Vecchio v. Amazon.com Inc.*, No. C11-366-RSL, 2011 WL 1585623, at

*3-4 (W.D. Wash. Dec. 1, 2011) (collection of user data); *see In re JetBlue Airways Corp.,
Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) (disclosed passenger data had no
compensable value).  Moreover, while Plaintiffs do allege that certain companies might pay for
individual address book contacts (SAC ¶ 77), they do not allege that Defendants' alleged
accessing or copying of that information somehow makes it unsuitable for sale by Plaintiffs or
that it impaired Plaintiffs' ability to sell such information.

Fourth, Plaintiffs' vague allegations that Defendants' actions "used iDevice resources,
battery life energy and cellular time"—which are not tied to any specific Plaintiff, device, or
Defendant—fail to allege that any specific Plaintiff experienced actual injury.  SAC ¶ 81.
Plaintiffs do not allege that a particular Defendant's alleged collection of their address books had
*any* concrete impact on the utility of their devices or them.  No Plaintiff alleges, for example, that
she ran out of storage capacity or was prevented from downloading an app due to the
consumption of storage resources on her iDevice.  No Plaintiff alleges that she had to recharge
her iDevice sooner or more frequently than she would have had to in the normal course of her
use of the device, or that she incurred any additional charges for the use of any cellular time, or
that she had to replace her iDevice earlier than she would have had to in the normal course.  The
conclusory, non-Plaintiff-specific claims alleged in the SAC cannot demonstrate a basis for
Article III standing because they do not specify how any named Plaintiff (or anyone) suffered
any discernible injury due to the "reported" data practices allegedly engaged in by Defendants.
*Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320-22 (5th Cir. 2002) (pleading "general
principles" of injury, instead of contributing to a "fully developed factual record," is insufficient
to establishing Article III standing and requires dismissal).

And *fifth*, even if Plaintiffs could identify some particularized injury, they have failed to

show how any purported injury would be "fairly traceable" to any specific Defendant, an

independent requirement for Article III standing.  Instead, they generally plead the alleged harm

as attributable to Defendants as a group.  SAC ¶¶ 79-81; *La. ACORN Fair Hous. v. LeBlanc*, 211

F.3d 298, 304 (5th Cir. 2000) (injury in fact must be "fairly traceable to the challenged action of

the defendant") (internal quotation marks omitted).

## IV.   THE SAC FAILS TO SATISFY THE PLEADING REQUIREMENTS OF RULE 8

Plaintiffs' SAC stands in stark contrast to the pleading requirements set forth under the

Federal Rules.  Rule 8(a) requires that a pleading contain a "short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The allegations

should be "simple, concise, and direct."  *See Sefton v. Jew*, 204 F.R.D. 104, 106 (W.D. Tex.

2000) (internal quotation marks omitted).  Despite these requirements and the Court's August 22

Order expressly directing Plaintiffs to "comply with both the letter and the spirit of the Federal

Rules of Civil Procedure" (Docket No. 99), the SAC remains over 80 pages long, continues to

provide lengthy and repetitive recitations of extraneous facts, and consistently fails to allege

fundamental facts and legal bases to support Plaintiffs' claims.[3]

Based on the foregoing and on the Rule 8 arguments set forth in co-defendant ZeptoLabs

UK Limited's motion to dismiss, which Defendants expressly incorporate by reference,[4]

Plaintiffs' SAC should be dismissed with prejudice.  *See Hall v. Civil Air Patrol, Inc*., 193 F.

App'x 298, 300 (5th Cir. 2006) (plaintiff's "deliberate persistence in refusing to conform his

---

[3] For example, Plaintiffs have not alleged specific facts giving rise to a legal duty to support
their negligence claim.  SAC ¶ 327.  Likewise, the statutory Computer Fraud claim fails to
identify the specific clause pursuant to which it is brought.  SAC ¶ 348.

[4] *See ZeptoLabs UK Limited's Motion to Dismiss Plaintiffs' Second Amended Class Action
Complaint*, Docket No.110, pp. 6-8.

pleadings to the requirements of Rule 8 justified dismissal of the complaint with prejudice”);

*Jumonville v. Dep’t of Treasury*, No. 94-30583, 1995 WL 136507, at *2 (5th Cir. 1995)

(recognizing that “there may be cases in which mere verbosity or repetition would justify final

dismissal”) (internal quotation marks omitted); *Jasper v. Hardin Cnty. Sheriff’s Dep’t*, No. 1:11-

CV-408, 2012 WL 4480713, at *12 (E.D. Tex. Sept. 5, 2012) (dismissal recommended where the

pleadings were “difficult to follow” and offered “little connection between any concrete pled

facts and any cited statutory and common law bases”).[5]

## V.  PLAINTIFFS FAIL TO STATE A CLAIM

Plaintiffs allege, depending on how one counts, nineteen separate claims, grouped into

common law claims, federal statutory claims, Texas and California statutory claims, “secondary

liability claims,” and equitable and declaratory claims, spanning 142 paragraphs of the SAC.

SAC ¶¶ 293-435.  Except where otherwise made clear, this motion addresses those claims in the

order pled.  Plaintiffs do not identify under what state law their alleged common law claims

arise, so this motion addresses both Texas and California law,[6] which are not materially different

for purposes of the grounds for dismissal set out in this motion.

### A.  12(b)(6) Standard

A complaint can meet the pleading requirements of Rule 8(a)(2) and survive a Rule

12(b)(6) motion to dismiss, only if “(1) every element of each cause of action [is] supported by

specific factual allegations; and (2) the complaint [states] a plausible claim for relief.”  *Kan v.*

---

[5] Further, as discussed *infra*, Plaintiffs have not pled their fraud allegations with the particularity required by Rule 9(b), including allegations regarding “the who, what, when, where, and how of the alleged fraud.”  *Carroll v. Fort James Corp*., 470 F.3d 1171, 1174 (5th Cir. 2006) (internal quotation marks omitted).  Therefore, Plaintiffs’ RICO claims alleging wire fraud warrant dismissal.

[6] As discussed in the Motion to Transfer filed concurrently with this motion, many of the Defendants’ choice of law provisions require that Plaintiffs bring their claims under California law.

*OneWest Bank, FSB*, 823 F. Supp. 2d 464, 468 (W.D. Tex. 2011). To avoid dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face;" that is, facts that "nudge[] [a plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Little v. KPMG LLP*, No. SA-07-CA-621-FB, 2008 WL 576226, at *2 (W.D. Tex. Jan. 22, 2008) (plaintiff must plead "specific facts" to avoid dismissal) (internal quotation marks omitted), *aff'd*, 575 F.3d 533 (5th Cir. 2009). Courts follow a two-pronged approach when adjudicating a motion to dismiss. The court first identifies conclusory allegations that "are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations "plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Facial-plausibility demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. The court must be able to draw from the factual allegations "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *accord Twombly*, 550 U.S. at 556; *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) ("[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.'") (quoting *Twombly*, 550 U.S. at 558). "If a complaint omits facts concerning a pivotal element of a plaintiff's claim, a court is justified in presuming the non-existence of those facts." *Little*, 2008 WL 576226, at *2.

### B.   Plaintiffs Fail To State A Claim For Invasion Of Privacy

Plaintiffs' claim for invasion of privacy pursuant to two separate theories—the public disclosure of private facts and an intrusion on Plaintiffs' seclusion—should be dismissed because it fails to allege the public disclosure of or an intrusion into private matters that would be "highly offensive" or "highly objectionable" to a reasonable person.

### 1.   Elements of a claim based on public disclosure of private facts

To state a claim based on public disclosure of private fact under Texas law, Plaintiffs must allege facts demonstrating that "(1) publicity was given to matters concerning [plaintiff's] private life; (2) the publication of which would be highly offensive to a reasonable person of ordinary sensibilities; and (3) the matter publicized was not of legitimate public concern." *Lowe v. Hearst Commc'ns, Inc.*, 487 F.3d 246, 250 (5th Cir. 2007) (applying Texas law); *Johnson v. Sawyer*, 47 F.3d 716, 731 (5th Cir. 1995); *Aldridge v. Sec'y, Dep't of the Air Force*, No. Civ. 7:05-CV-00056-R, 2005 WL 2738327, at *4 (N.D. Tex. Oct. 24, 2005); *Montemayor v. Miller*, No. SA-11-CV-24-XR, 2011 WL 3902764, at *4 (W.D. Tex. Sept. 6, 2011).  Similarly, in California, the elements of the tort of public disclosure include: "(1) public disclosures (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern."  *Shulman v. Group W Prods., Inc.* 18 Cal. 4th 200, 214 (1998) (internal quotation marks omitted).  Here, Plaintiffs allege neither a "public" disclosure nor any "private facts" that would be highly objectionable to a person of ordinary sensibilities.

### a.   Defendants did not disclose private facts to the public at large

Plaintiffs' claim fails because they have not alleged a public disclosure.  For a public disclosure to arise, the information must be disseminated to the public at large.  *See Aldridge*, 2005 WL 2738327, at *4 (public disclosure claim failed where it did not allege disclosure to the public at large); *Porten v. Univ. of S.F.*, 64 Cal. App. 3d 825, 828-29 (1976) (same).  It is not enough to distribute the information to a single person or even to a small group of people. *Johnson*, 47 F.3d at 731 (disclosure must be made to the public at large, not merely a small group of people); *Hill v. NCAA*, 7 Cal. 4th 1, 27 (1994) ("[C]ommon law invasion of privacy by public disclosure of private facts requires that the actionable disclosure be widely published and

not confined to a few persons or limited circumstances."); Restatement (Second) of Torts § 652D, cmt. a. ("[I]t is not an invasion of the right of privacy, within the rule stated in this section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.").

The SAC is devoid of any facts demonstrating a public disclosure of Plaintiffs' information. Instead, Plaintiffs make the conclusory allegation that Defendants "disseminat[ed] their private address books" and that as a result of Defendants' "conduct, this information was taken and publicly disclosed." SAC ¶¶ 295, 297. Presumably, if a public disclosure had occurred, Plaintiffs would have no problem identifying specific facts underlying the public disclosure, including, to whom, when and/or how the disclosure was made. The SAC contains no such allegations.

**b.** **Address book data does not constitute "highly intimate" or "embarrassing" facts about "private affairs"**

Plaintiffs allege that their "private affairs…include their private address books and the contents of their iDevices and their private address books and unique contacts." SAC ¶ 296. Even if true, this allegation is not sufficient to state a claim. Contact information and address book data are not considered "private" or "highly intimate or embarrassing facts" under Texas or California law. *Johnson*, 47 F.3d at 732-33 (personal information such as a name, age, street address, date of birth, and job title are not considered "private" and/or "highly intimate or embarrassing facts" such that its publication would by "highly objectionable to a person of ordinary sensibilities") (internal quotation marks omitted); *see also In re iPhone App. Litig*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (holding disclosure of personal data and geolocation from iDevices did not constitute an "egregious breach of social norms" under California law); *Puerto v. Superior Court*, 158 Cal. App. 4th 1242, 1253-54 (2008) (noting that contact

information is not "particularly sensitive" and is not the type of information deemed "private"). In fact, the contact information of other people is not even data relating to Plaintiffs themselves. Accordingly, Plaintiffs' claim for invasion of privacy based on the public disclosure of private fact should be dismissed.

### 2. Elements of a claim based on intrusion upon seclusion

Plaintiffs' conclusive allegations that they did not have notice of or consent to the alleged use of their address book data and that Defendants "intentionally intruded on Plaintiff's solitude, seclusion or private affairs by uploading, copying, reviewing, disclosing, storing, and disseminating their private address books[,]" SAC ¶ 295, will not suffice.

Under Texas law, a claim for intrusion on seclusion exists when (i) the defendant intentionally intruded on the plaintiff's solitude, seclusion, or private affairs; and (ii) the intrusion would be highly offensive to a reasonable person. *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993); *Guillen v. Calhoun Cnty.*, No. V-11-48, 2012 WL 1802617, at *3 (S.D. Tex. May 16, 2012) (citing *Valenzuela*, 853 S.W.2d at 513); *Shulman*, 18 Cal. 4th at 231.[7]

### a. Accessing address book data is not "highly offensive"

Plaintiffs' claim for intrusion upon seclusion fails for one of the same reasons their public disclosure claim fails—address book data is not private and accessing it is not considered "highly offensive" to a reasonable person. Plaintiffs allege that Defendants' intrusion into their "private address books" "was highly offensive to a reasonable person." SAC ¶ 295. But address book data is not considered private and an intrusion on such information would not be considered

---

[7] The elements of a claim for invasion of privacy by intrusion under California law are materially identical to Texas law, requiring (1) intentional intrusion upon the solitude or seclusion, private affairs or concerns of the plaintiff; (2) the intrusion was of a kind that would be highly offensive to an ordinarily reasonable person; and (3) the intrusion caused plaintiff to sustain injury, damage, loss or harm. California Civil Jury Instructions (CACI) No. 1800; *Sanders v. Am. Broad. Cos.*, 20 Cal. 4th 907, 914 (1999).

"highly offensive."  *See Johnson v. Sawyer*, 47 F.3d 716, 732-33 (5th Cir. 1995) (personal

information such as a name, age, street address, date of birth, and job title are not considered

"private" and/or "highly intimate or embarrassing facts" such that its publication would by

"highly objectionable to a person of ordinary sensibilities"); *Folgelstrom v. Lamps Plus, Inc.*,

195 Cal. App. 4th 986, 993 (2011) (holding allegations that defendant improperly accessed

plaintiffs' address information did not constitute "highly offensive" behavior); *see also In re

iPhone App. Litig.*, 844 F. Supp. 2d at 1063 (N.D. Cal. 2012); *Puerto*, 158 Cal. App. 4th at 1253-

54.

### b. No "physical invasion" occurred

Plaintiffs' claim also fails because they do not allege a "physical invasion" of property of

the sort that typically gives rise to an intrusion on seclusion claim under either Texas or

California law.  "Typically, an action for intrusion upon one's seclusion exists 'only when there

has been 'a physical invasion of a person's property or … eavesdropping on another's

conversation with the aid of wiretaps, microphones, or spying.'"  *Tomblin v. Trevino*, No. SA-

01-CA-1160-OG, 2002 WL 32857194, *4 (W.D. Tex. June 17, 2002); *Cornhill Ins. PLC v.

Valsamis, Inc.*, 106 F.3d 80, 85 (5th Cir. 1997) (applying Texas law and dismissing invasion of

privacy claim where there were no allegations of physical intrusion or eavesdropping); *Shulman*,

18 Cal. at 230-31 (noting that the tort under California law requires some physical intrusion or

eavesdropping).

Acts found by Texas courts to constitute an intrusion include the following:  spying,

opening private mail, wiretapping, entering a person's residence, videotaping a bedroom without

permission, and searching a locker or purse.  *See Aldridge*, 2005 WL 2738327, at *3.

"[D]isclosure of information to a third party does not qualify as an act of intrusion in and of

itself."  *See id.*  California law is similar.  "The California Constitution and the common law set a

high bar for an invasion of privacy claim." *Low v. LinkedIn Corp.*, No. 11-CV-01468-LHK, 2012 WL 2873847, at *9 (N.D. Cal. July 12, 2012). Actionable intrusion requires that the defendant pry into the plaintiff's personal affairs—penetrating a zone of physical or sensory privacy surrounding the plaintiff. *Shulman*, 18 Cal. 4th at 232.

Plaintiffs do not allege an intentional intrusion constituting a "physical invasion" that is in line with the types of acts found by Texas and California courts to give rise to an intrusion on seclusion claim. To the contrary, Plaintiffs specifically allege and admit that each of them voluntarily "obtained" the specified applications on their iDevices and used the feature that resulted in access to each Plaintiff's address book. *See, e.g.*, SAC ¶¶ 1,151, 216-217. Further, as discussed *infra* in section V.H.3. Plaintiffs have not alleged an interception of the contents of communications between Plaintiffs and third parties. As such, Plaintiffs have not alleged that the Defendants "eavesdropped" via the aid of wiretaps, microphones, or spying in a manner that would state a claim. Accordingly, Plaintiffs fail to allege a "physical invasion" of the type that would give rise to a claim.[8] *See Hill*, 7 Cal. 4th at 26 (where voluntary consent to the defendant's conduct is present, the intrusion will rarely be deemed highly offensive to a reasonable person so as to justify tort liability).

### C.    Plaintiffs Fail To State A Claim For Common Law Misappropriation

Plaintiffs' claim for common law misappropriation fails because they do not allege that Defendants are "in competition" with Plaintiffs. To state a claim for common law misappropriation under Texas law, a plaintiff must allege that (i) plaintiff "created" information or product through extensive time, labor, skill and money; (ii) the defendant used that information or product in competition with the plaintiff, thereby gaining a special advantage in

---

[8] As discussed above, Plaintiffs make similar or virtually identical allegations of their voluntary installation, access and use of all Defendants' applications. *See* note 2, *supra*.

that competition (i.e., a "free ride") because the defendant was burdened with little or none of the expenses incurred by the plaintiff; and (iii) commercial damage to the plaintiff.  *U.S. Sporting Prods. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. App.—Waco 1993, writ denied).  Further, the plaintiff's information or product must have "commercial value" to the plaintiff.  *Id.* at 219.[9]

The SAC is completely devoid of any allegation that Defendants are "in competition" with Plaintiffs thereby causing "commercial damage" to Plaintiffs.  Indeed, Plaintiffs are individual users of Defendants' applications, not businesses, and certainly not commercial competitors.  The mere allegation that Defendants used the information "for their own purposes and to their own benefit[,]" SAC ¶ 301, thereby obtaining a "free ride[,]" SAC ¶ 303, is not sufficient to allege "competition," much less that Plaintiffs suffered "commercial damage" from Defendants' alleged conduct.  Plaintiffs' naked assertion that Defendants "intentionally and willfully appropriated" their address book information, SAC ¶ 299, cannot withstand a motion to dismiss and their cause of action for common law misappropriation should be dismissed.

---

[9] Similarly, in California, "[c]ommon law misappropriation is one of a number of doctrines subsumed under the umbrella of unfair competition."  *U.S. Golf Ass'n v. Arroyo Software Corp.*, 69 Cal. App. 4th 607, 618 (1999).  Under California law, the elements of a claim for common law misappropriation include: "(a) the plaintiff invested substantial time, skill, or money in developing its property; (b) the defendant appropriated and used the plaintiff's property at little or no cost to the defendant; (c) the defendant's appropriation and use of the plaintiff's property was without the authorization or consent of the plaintiff; and (d) the plaintiff can establish that it has been injured by the defendant's conduct."  *Id.*  As discussed extensively in this brief, Plaintiffs fail to sufficiently allege these elements.  Plaintiffs did not spend "substantial time, skill or money" in "creating" their address books.  *See infra* section V.F.1.  Nor did Defendants use the Plaintiff's property without the consent of the Plaintiffs.  *See infra* section V.F.2.  Finally, Plaintiff has failed to allege that it suffered "injury" or "harm" as a result of Defendants' alleged conduct.  *See supra* section III.

D.      **Plaintiffs Fail To State A Claim For Conversion**

Plaintiffs' claim for conversion also fails because intangible property such as the user's address book data is non-actionable under Texas conversion law and because they have not and cannot allege that Defendants' use of their address book data occurred "to the exclusion of" Plaintiffs' rights.  Under Texas law, a conversion claim does not apply to intangible property. *See Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (noting that conversion allegations regarding intellectual property rights, are "outside the scope of Texas conversion law, which concerns only physical property"); *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 777-78 (S.D. Tex. 2010); *Devon Energy Corp. v. Westacott*, No. H-09-1689, 2011 WL 1157334, at *9 (S.D. Tex. Mar. 24, 2011) (acknowledging that Texas courts have not yet recognized intangible property as the proper subject of a conversion claim, despite decisions by other state courts to do so).  Further, a conversion claim requires that the defendant wrongfully "exercised dominion or control" of plaintiff's property "to the exclusion of and inconsistent with the plaintiff's rights."  *Ojeda v. Wal-Mart Stores, Inc.,* 956 S.W.2d 704, 707 (Tex. App.—San Antonio 1997, pet. denied.), *Omnibus Int'l v. AT&T, Inc.*, 111 S.W.3d 818, 826 (Tex. App.— Dallas 2003, pet. granted, judgm't vacated w.r.m.); *Hill v. Anderson*, 420 F. App'x 427, 434-35 (5th Cir. 2011) (citing *J.P. Morgan Chase Bank, N.A. v. Tex. Contract Carpet, Inc*., 302 S.W.3d 515, 536 (Tex. App.—Austin 2009, no pet.) (listing elements)).  Similarly, under California law, a claim for conversion requires that a defendant exercise a dominion over property in exclusion or in defiance of the plaintiff's right.  *Horton v. Jack*, 126 Cal. 521, 526 (1899).

Plaintiffs do not and cannot allege that any of the "property" at issue, including their address book data, the battery life of their iDevices, or cellular air time were anything other than intangible property at all relevant times.  Thus, they cannot state a claim for conversion under Texas law.  Further, Plaintiffs do not allege any facts showing that they have been dispossessed,

deprived of, or excluded from use of the address book information maintained on their iDevices as a result of Defendants' actions. Instead, Plaintiffs assert that Defendants "copied, transmitted, uploaded, stored, used and disclosed" their "address book materials[,]" in particular, "email addresses, phone numbers, [and] contact names[,]" "without their consent." SAC ¶¶ 65, 66, 68, 155, 219, 220. This allegation is insufficient to state a claim. "In cases where the alleged converter has only a copy of the owner's property and the owner still possesses the property itself, the owner is in no way being deprived of the use of his property." *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 303-04 (7th Cir. 1990). Plaintiffs' conclusory allegation that Defendants "exercised dominion or control over at least a portion of the Plaintiffs' address books and iDevices to the exclusion of, or inconsistent with, Plaintiffs' rights of exclusive possession and control[,]" SAC ¶ 307, does not satisfy the pleading standards and Plaintiffs' claim should be dismissed.

### E.   Plaintiffs Fail To State A Claim For Trespass To Personal Property/Chattels

"[T]he tort of trespass protects against interference with one's possessory interest in personal property." *Carpenter v. Carpenter*, No. 02-11-00266-CV, 2012 WL 2579498, at *12 (Tex. App.—Fort Worth, July 5, 2012, pet. filed); *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1606 (2012) (same). To state a claim for trespass to chattel/personal property, a plaintiff must allege facts showing the "wrongful interference with the use or possession of another's property." *Jones v. Boswell*, 250 S.W.3d 140, 143 (Tex. 2008); *Plotnik*, 208 Cal. App. 4th at 1606. However, liability for trespass to chattels does not attach "unless the wrongful detention is accompanied by actual damage to the property or deprives the owner of its use for a substantial period of time." *Jones*, 250 S.W.3d at 144; *Carpenter*, 2012 WL 2579498, at *4; *Jamgotchian v. Slender*, 170 Cal. App. 4th 1384, 1401 (2009) (a claim for trespass of chattels requires "actual

damages suffered by reason of the impairment of the property or the loss of its use") (internal quotation marks omitted).

The SAC alleges in conclusory fashion that Defendants "intermeddled with" and "interfered with Plaintiff's possession and use" of their iDevices and address books.  SAC ¶¶ 311-12.  These theories are not supported by case law.

Plaintiffs' voluntary download, installation, and use of Defendants' applications negates any claim that Defendants committed a trespass.  *See In re Apple & ATTM Antitrust Litig.*, No. C 07-05152 JW, 2010 WL 3521965, at *7 (N.D. Cal. Jul. 8, 2010) ("Voluntary installation runs counter to the notion that the alleged act was a trespass.").  In addition, the SAC does not allege an "interference" with the "use" or "possession" of Plaintiffs' address book information. Plaintiffs do not allege any specific facts demonstrating how they were deprived of the use of the address book information nor do they allege any facts showing that they lost possession of the data.  At most, Plaintiffs provide vague, conclusory allegations of some sort of diminished use of their iDevices (diminished iDevice resources, battery life energy and cellular time, loss of use and enjoyment of some portion of their iDevices' useful life).  SAC ¶ 81.  These allegations are insufficient.  *See Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1356 (2003) (noting that a trespass occurs only where there is a ***significant*** reduction in available memory and processing power). Even if there was diminished use of Plaintiffs' iDevices, that does not result in "actual damage" since the diminished use was allegedly only during the upload of the address book information and not of a permanent nature as to cause actual damage to the iDevice.  Without actual damage there is no liability for trespass and Plaintiffs' claim should be dismissed.

**F.    The SAC Fails To State A Claim For Misappropriation Of Trade Secrets And Proprietary Information**

Plaintiffs generally allege a claim for misappropriation of trade secrets and proprietary information.  Under Texas law, however, Plaintiffs fail to allege sufficient facts to state a claim for misappropriation of trade secrets and proprietary information.  The cardinal requirement of a trade secret is that it be secret.  Plaintiffs do not allege sufficient facts from which it may be inferred that their address book information constitutes a trade secret under Texas law.  At most, Plaintiffs allege that their "private" address book information is "valuable."  *See, e.g*., SAC ¶¶ 7, 23, 56 and 57.  "Private" and "valuable" are not synonymous with "trade secret."  Accordingly, Plaintiffs trade secret misappropriation claim should be dismissed.

To state a claim for misappropriation of trade secret under Texas law, Plaintiffs must allege sufficient facts showing (1) the existence of a trade secret; (2) acquisition of the trade secret through breach of a confidential relationship or improper discovery; (3) use of the trade secret without authorization; and (4) damages.  *Bohnsack v. Varco, L.P*., 668 F.3d 262, 279 (5th Cir. 2012) (citing *Trilogy Software, Inc. v. Callidus Software, Inc*., 143 S.W.3d 452, 463 (Tex. App.—Austin 2004, pet. denied)); *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C*., 637 F.3d 604, 610 (5th Cir. 2011).

**1.    No trade secret is alleged**

Texas courts consider the following factors when determining if a trade secret exists: (1) the extent to which the information is known outside of the **business**; (2) the extent to which it is known by employees and others involved in the **business**; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to the **business and to its competitors**; (5) the amount of effort or money expended in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by

others.  *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003); *Tewari De-Ox Sys.*, 637 F.3d at 610 (citing *In re Union Pac. R.R. Co*., 294 S.W.3d 589, 592 (Tex. 2009)).  Notably absent from the SAC are any allegations that the contents of Plaintiffs' address books were compiled in connection with **a business** so as to constitute a trade secret under Texas law.  *See Tewari De-Ox Sys.*, 637 F.3d at 610 (defining trade secrets in the context of information known to a business and its value to competitors); *Trilogy Software*, 143 S.W.3d at 463 ("A trade secret is a process or device for continuous use in the operation of the business."); *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 467 (5th Cir. 2003); *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1123 (5th Cir. 1991) ("A trade secret is any . . . compilation of information used in one's business, and which gives an opportunity to obtain an advantage over competitors who do not know or use it.").

Plaintiffs' claim also fails because the SAC does not allege sufficient facts establishing (a) that substantial effort or money was invested to compile the address book information, (b) the measures taken to guard the secrecy of the information or (c) that the information could not be acquired by other means.  Aside from the conclusory allegation that their "address books are compilations of information that substantial efforts went into assembling and creating[,]" SAC ¶ 316, Plaintiffs only other allegation is that each of them generally had "more than one hundred contacts in their address book," all of which were either independently "inputted" by Plaintiffs or automatically "synched" with information from other devices.  SAC ¶¶ 90-92.  Even assuming the truth of this allegation, minimal effort, and no money, are expended in compiling an address book consisting of one hundred contacts, particularly when some of those contacts are automatically synced from other sources.  The SAC is also completely devoid of any factual

allegations demonstrating the measures taken to guard the secrecy of the information or establishing that the information could not be acquired by other means.

### 2.     The contents of Plaintiffs' address book were acquired and used with Plaintiffs' consent

Even assuming a trade secret exists in Plaintiffs' contacts, as discussed in section V.F.1., above, there was no misappropriation because Plaintiffs' voluntarily used the Defendants' Apps. *See, e.g*., SAC ¶¶ 151, 217.  Plaintiffs' conclusory allegation that Defendants "obtained, disclosed, and used Plaintiffs' proprietary address books or portions thereof without Plaintiffs' express or implicit consent" or through "improper means," SAC ¶¶ 318-319, is belied by Plaintiffs' allegations and admissions that demonstrate otherwise.

### G.     Plaintiffs Fail To State A Claim For Negligence, Gross Negligence And Negligence *Per Se*

Plaintiffs assert a variety of negligence-based claims—Negligence, Gross Negligence, and Negligence *Per se*—all of which fail because Plaintiffs have not alleged specific facts giving rise to a legal duty owed to Plaintiffs.[10]

### 1.     Defendants do not owe a legal or statutory duty to Plaintiffs

Plaintiffs cannot establish a claim under a theory of negligence or negligence *per se* because Defendants do not owe Plaintiffs either a legal or statutory duty not to acquire their address book information from their iDevices.  *See In re iPhone App. Litig*., 2011 WL 4403963, at *9 (no legal duty to protect users' personal information).

---

[10] Plaintiffs also assert a theory of "negligence at common law" but it's unclear to what theory Plaintiffs are referring because negligence in and of itself is a common law theory and Plaintiffs assert a claim for negligence.  To the extent Plaintiffs are referring to the doctrine of *res ipsa loquitor*, that theory also fails because *res ipsa loquitor* is not an independent cause of action but rather "is a rule of evidence by which negligence may be inferred by the jury." *Dominguez v. Walgreen Co*., No. 11-08-00045-CV, 2009 WL 3155041, at *2 (Tex. App.—Eastland Oct. 1, 2009, no pet.); *Aguilar v. Morales*, 162 S.W.3d 825, 835 (Tex. App.—El Paso 2005, pet. denied.)

Under both Texas and California law, the elements of a negligence cause of action are (1) the existence of a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002); *City of Waco v. Schouten*, 385 F. Supp. 2d 595, 604 (W.D. Tex. 2005); *Hoyem v. Manhattan Beach City Sch. Dist.*, 22 Cal. 3d 508, 513-14 (1978). Similarly, a claim based on negligence *per se* requires "evidence of an unexcused violation of a statutory duty that has been adopted by the court as defining the applicable standard of conduct." *Quemado v. Exxon Mobil Corp.*, No. DR-03-CA-19-OG, 2005 WL 3591912, at *4 (W.D. Tex. Mar. 31, 2005) (citing *Perry*, 973 S.W.2d *Perry v. S.N.*, 973 S.W.2d 301, 305) (Tex. 1998); *Fennessey v. PG&E*, 20 Cal. 2d 141, 146 (1942).

Although Plaintiffs make the conclusory allegation that Defendants "breached the duty of care owed to Plaintiffs" by "violating the criminal law" and "failing to operate according to industry accepted standards," SAC ¶ 327, they fail to allege any actual facts demonstrating a legal duty owed to them or any damages proximately caused by Defendants, let alone a statutory duty that has been adopted by the court as defining the applicable standard of conduct. Plaintiffs' conclusory allegation that "Defendants' wrongful actions and/or inaction…constitute negligence at common law, negligence *per se*, negligence and gross negligence[,]" SAC ¶ 332, cannot survive a motion to dismiss.[11]

### 2. Plaintiffs' claim for gross negligence also fails

If negligence is established, a claim for gross negligence exists if "(1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved

---

[11] Additionally, for the reasons stated in other sections of this motion, Plaintiffs fail to state a claim pursuant to California Penal Code § 502, The Texas Computer Security Act, Texas Penal Code § 33.02, and 16.02 such that these claims cannot serve as a basis for Plaintiffs' negligence *per se* claim.

an extreme degree of risk, considering the probability and magnitude of the potential harm to others and (2) the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." *U-Haul Int'l, Inc. v. Waldrip*, 55 Tex. Sup. Ct. J 1345, 2012 WL 3800220, 50-51 (Tex. Aug. 31, 2012).

Plaintiffs' claim for gross negligence fails because one cannot be grossly negligent without first being negligent. *See Trevino v. Lightning Laydown, Inc*., 782 S.W.2d 946, 949 (Tex. App.—Austin 1990, writ denied) (noting one's conduct cannot be grossly negligent without being negligent and explaining that in one instance the actor fails to use ordinary care; in the other, he consciously commits the act or omission with an entire want of care). As explained above, Plaintiffs have not pled sufficient facts to establish a legal or statutory duty on which a negligence claim may be based and, accordingly, the theory of gross negligence also fails. Further, Plaintiffs have not alleged any facts which establish "an extreme degree of risk" to Plaintiffs or any subjective awareness of and indifference to that risk by the Defendants.

### H.     Plaintiffs Fail To State A Claim For Violations Of The Federal, Texas and California Wiretap Acts

Plaintiffs raise indistinguishable, deficient claims for violations of federal, Texas and California criminal wiretap laws. Plaintiffs' claims for violations of section 2511(1)(a), (c) and (d) of the Electronic Communications Privacy Act ("ECPA"), section 16.02(b) of the Texas Wiretap Act and section 631 of the California Invasion of Privacy Act ("CIPA") fail as a matter of law both because they fail to allege interceptions of electronic communications contemporaneous with their transmission and because they do not allege that "contents" of communications were acquired.

## 1.     The Electronic Communications Privacy Act

Plaintiffs generally allege a violation of the ECPA but do not specifically identify on which code section they are relying.  As best as can be inferred from the general allegations, Plaintiffs' claim purportedly arises under the Wiretap Act, pursuant to 18 U.S.C. § 2511(1)(a), (c) and (d).  *See* SAC ¶¶ 334 and 337.

To state a claim under section 2511(1)(a), Plaintiffs must allege that Defendants "intentionally intercept[ed]" an electronic communication.  18 U.S.C. § 2511(1)(a).  Under section 2511(1)(c), a claim exists if a person "intentionally discloses…to any other person the contents of any…electronic communication, knowing or having reason to know that the information was obtained through the interception of a[n]…electronic communication."  18 U.S.C. § 2511(1)(c).  Further, a cause of action exists under section 2511(1)(d) against anyone who "intentionally uses…the contents of any…electronic communication, knowing or having reason to know that the information was obtained through the interception of a[n]…electronic communication in violation of [the Wiretap Act]."  18 U.S.C. § 2511(1)(d).

## 2.     The Texas and California Wiretap Statutes

Plaintiffs also allege violations of the Texas Wiretap Act and, against the California-based Application Developer Defendants ("CADs"), violation of California's Invasion of Privacy Act ("CIPA").

Similar to the federal Wiretap Act, a violation of the Texas Wiretap Act occurs when a person intentionally intercepts, discloses the contents of (only if the person has knowledge that the information was obtained through an interception), or uses the contents of an electronic communication.[12]  Tex. Pen. Code § 16.02(b).  Given the similarity between the two wiretap

---

[12] Tex. Pen. Code § 16.02(b) contains additional bases that give rise to a violation, none of which are applicable here.

acts, Texas courts have looked to the federal courts' interpretation of the federal Wiretap Act in interpreting the Texas Wiretap Act.  *Garza v. Bexar Metro. Water Dist.*, 639 F. Supp. 2d 770, 775 (W.D. Tex. 2009) ("[T]he Texas Wiretap Act was fashioned after the Federal Wiretap Act. The Texas statute mirrors the federal statute in several respects and makes reference to it."); *Meyer v. Texas*, 78 S.W.3d 505, 509 (Tex. App.—Austin 2002, pet. ref'd) ("In interpreting the Texas wiretapping statute, it is appropriate to consider the interpretation of the federal statute on which it was modeled."); *Castillo v. Texas*, 810 S.W.2d 180, 183 (Tex. Crim. App. 1990) (same).

Like the Federal and Texas Wiretap Acts, Plaintiffs' CIPA claim requires Plaintiffs to allege sufficient facts to demonstrate that Defendants intercepted Plaintiffs' communications with others by tapping into a "telephonic wire, line, cable, or instrument" or by intercepting the contents of communications while "in transit or passing over any wire, line, or cable."  Cal. Penal Code § 631(a).  Because Section 631 of CIPA prohibits only a third party's *interception* of communications between others, allegations that a party to a communication recorded or read the communication cannot state a claim under the statute.  *See, e.g.*, *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898-99 (1975) (wiretapping claim under § 631 requires allegation of interception of communications by third party); *Powell v. Union Pac. R.R. Co.*, - - F. Supp. 2d - - 2012 WL 1081474, at *3-4 (E.D. Cal. Mar. 31, 2012) (party to a communication cannot violate § 631, which applies only to third party interceptors).

### 3.     The SAC fails to allege defendants intercepted the contents of an electronic communication contemporaneous with transmission

Plaintiffs allege that Defendants "copied, transmitted, uploaded, stored, used and disclosed" their "address book materials[,]" in particular, "email addresses, phone numbers, [and] contact names[,]" "without their consent."  SAC ¶¶ 65, 66, 68,155, 219, 220.  Even

accepting Plaintiffs' allegations as true, they do not demonstrate an interception of the contents of any electronic communication.

### a.        Meaning of "intercept"

The ECPA defines "intercept" as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device[,]" 18 U.S.C. § 2510(4), which is defined as "any device or apparatus which can be used to intercept a wire, oral, or electronic communication." 18 U.S.C. § 2510(5). For an interception to occur, the acquisition of contents must be "contemporaneous with transmission." *Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 461-62 (5th Cir. 1994) (Congress did not intend for "intercept" to apply to "electronic communications" when those communications are in storage); *United States v. Steiger*, 318 F.3d 1039, 1047-48 (11th Cir. 2003); *Theofel v. Farey-Jones*, 359 F.3d 1066, 1077-78 (9th Cir. 2004) (unauthorized access to stored emails does not violate the Wiretap Act); *Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, 876-78 (9th Cir. 2002). In other words, as the common meaning of the word "intercept" suggests, "[t]he person intercepting must access the communication while it is actually in the process of traveling to its destination." *Borninski v. Williamson*, No. 3:02-CV-1014-L, 2005 WL 1206872, at *10 (N.D. Tex. May 17, 2005).

Likewise, under the Texas statute, "intercept" is defined as the acquisition of the contents of an electronic communication through the use of an electronic, mechanical, or other device, Tex. Code Crim. Proc. art. 18.20 § 1(3), which is defined as "a device that may be used for the nonconsensual interception of wire, oral, or electronic communications." Tex. Code Crim. Proc. art. 18.20 § 1(4). An "interception" occurs when the "content" is acquired while "in flight" (i.e. contemporaneous with transmission). *See Borninski*, 2005 WL 1208672, at *10 ("The person intercepting must access the communication while it is actually in the process of traveling to its

destination."); *Castillo*, 810 S.W.2d at 183 ("Finally, because § 1(3) was borrowed from the federal wiretap statue, it is appropriate for us to consider the construction placed upon the federal statute by other courts."). Similarly, the interception provision of section 631(a) of the CIPA is expressly limited to the acquisition of communications "while the same is in transit or passing over any wire, line, or cable." Cal. Pen. Code § 631(a).

### b. Acquiring stored data on an iDevice does not constitute an "interception"

Plaintiffs do not allege that Defendants acquired the address book data while it was being transmitted to another source. At most, Plaintiffs allege that when they sync their iDevices with their computers, an electronic communication occurs. SAC ¶ 336. However, Plaintiffs do not allege that Defendants intercepted the syncing of the information from another computer to their iDevices. Nor do they allege the address book was in the process of being transmitted to another source. Their allegations are that the application "took" (allegedly without sufficient disclosure) the address book from the phone where the data was stored. *See, e.g.*, SAC ¶ 249 (stating that Defendant Rovio or Chillingo accessed stored information, not a communication in transit).[13]  In fact, Plaintiffs' SAC makes clear that their address book information was not in a state of transmission when allegedly "intercepted" but rather was simply being "maintained" on their iDevices. SAC ¶¶ 2, 7, 44(v), 90,183, 350, 350,369.

---

[13] In fact, the SAC makes clear that any communication sent from the iDevice was intended for the App Defendants, and thus cannot be intercepted. *See also* 18 U.S.C. § 2511(2)(d) (providing it is not unlawful for a person to intercept an electronic communication where such person is a party to the communication or one party has consented); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011) (dismissing Wiretap Act claims based on the receipt of information via a cookie because defendant was an intended recipient). Plaintiffs attempt to avoid dismissal by alleging that App Defendants were not intended recipients of any "unauthorized calls initiated by their iDevices," (Compl. ¶ 337), but this is contradicted by other allegations in the complaint which make clear that the *App Defendant* was the intended recipient of any communications to it. *See, e.g.*, Compl. ¶ 249 (stating that when a user clicked on "Invite from friend" the device initiated a call *to the App Defendants* in order to transmit address book information).

Plaintiffs' conclusory allegation that Defendants "intentionally intercepted[,]" "disclosed and/or used the contents of electronic communications" is not sufficient to survive a motion to dismiss.  SAC ¶¶ 337, 393; *see Iqbal*, 556 U.S. at 678 ("[A] complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *Twombly*, 550 U.S. at 555).  The allegations contained in the SAC make clear that Defendants acquired only static information stored on Plaintiffs' respective iDevices.  The acquisition of data "maintained" on a device's memory does not constitute an "interception" under either Wiretap Act and the SAC is completely devoid of any specific allegations demonstrating the interception of a communication contemporaneous with transmission.

### c.   Plaintiffs also fail to allege the acquisition of "content" of a communication by defendants

Plaintiffs' claim also fails because they do not allege the improper acquisition of the "content" of any communication by Defendants.  The federal Wiretap Act defines "contents" as "any information concerning the substance, purport, or meaning of that communication."  18 U.S.C. § 2510(8).  Likewise, under Texas law, "[c]ontents," when used with respect to an electronic communication, "includes any information concerning the substance, purport, or meaning of that communication."  Tex. Code Crim. Proc. art. 18.20 § 1(6).

Plaintiffs allege that Defendants acquired data from the device owner's private address book, including "email addresses, phone numbers, [and] contact names."  SAC ¶¶ 219, 220. This type of information does not constitute "content" under either Wiretap Act and cannot give rise to a violation.  Content is limited to information the user intended to communicate, such as words spoken in a phone call and the substantive text of an email or text message. *See, e.g.*, *In re iPhone App. Litig.*, 844 F. Supp. 2d at 1061 (identities of parties and geolocation data is not

content); *United States v. Forrester*, 512 F.3d 500, 509-10 (9th Cir. 2008) (address information, such as email addresses and IP addresses, are not "contents" of communications).

Plaintiffs' SAC contains nothing more than a formal recitation of the elements of a cause of action under the federal, Texas and California wiretap statutes and cannot withstand a motion to dismiss.[14]  *See, e.g.*, SAC ¶¶ 335-339, 392-393,397-406.

### I.  Plaintiffs Fail To State A Claim Under 18 U.S.C. § 1030(g) For Fraud And Related Activity In Connection with Computers

Plaintiffs generally assert that Defendants "have each violated the requisite sections of 18 U.S.C. § 1030," but again fail to articulate what particular clause they rely on to bring their claim.  SAC ¶ 348.  As best as can be inferred, *see* SAC ¶ 345, Plaintiffs are alleging a violation of sections 1030(a)(2)(C), 1030(a)(5)(A) and 1030(a)(5)(C) of the Computer Fraud And Abuse Act (CFAA), but fail to allege sufficient facts demonstrating "economic damage" resulting from Defendants' alleged actions and, as a result, Plaintiffs cannot maintain a civil action against them.

To state a claim under § 1030(a)(2)(C), Plaintiffs must allege that Defendants (1) intentionally accessed a computer, (2) without authorization or exceeding authorization, and (3) obtained information from a protected computer.  18 U.S.C. § 1030(a)(2)(C).  The elements of a claim under § 1030(a)(5)(A) are (1) knowingly causing the transmission of information, (2) intentionally causing damage without authorization as a result of the conduct, (3) to a protected computer.  18 U.S.C. § 1030(a)(5)(A).  Finally, a claim under § 1030(a)(5)(C) requires a person to (1) intentionally access, (2) a protected computer, (3) without authorization, and (4) cause damage and loss as a result of such conduct.  18 U.S.C. § 1030(a)(5)(C).  "Protected computer"

---

[14]  Plaintiffs claim under § 2511(c) also fails because the SAC is completely devoid of any allegations demonstrating a disclosure by Defendants.

means a computer which is used in or affecting interstate or foreign commerce or communication.  18 U.S.C. § 1030(e)(2).

### 1. Plaintiffs have not alleged unauthorized access to their devices

Section 1030(a)(5)(C) requires that a plaintiff allege that a defendant accessed their device "without authorization."  Plaintiffs, however, do not contend that the App Defendants hacked into their iDevices or engaged in any conduct that triggers the CFAA's narrow prohibition on unauthorized access to a computer.  To the contrary, their claims are based on the functionality of software, which accessed address book information and sent that data to defendants' servers.  SAC ¶¶ 154, 179, 200, 201, 220, 228, 240, 249, 264.  And for Defendants Chillingo, Rovio, Instagram and Electronic Arts, the transmissions only occurred after Plaintiffs took voluntary action in activating a "find friends" feature within the Apps.  The App Defendants thus did not engage in "unauthorized access" because users voluntarily installed software on their own phones.  *See In re iPhone Application Litig*., 844 F. Supp. 2d 1040, 1066 (N.D. Cal. 2012).

### 2. Plaintiffs did not suffer any damage and cannot maintain a civil action against defendants

Plaintiffs have not alleged sufficient facts showing that they suffered any "economic damage" let alone damage that is at least $5,000 and, as a result, cannot maintain a civil action for violation of the CFAA.  A plaintiff may file a civil lawsuit if he suffered "damage or loss" as a result of the violation, 18 U.S.C., § 1030(g), and there is "loss to 1 or more persons during any 1-year period…aggregating at least $5,000 in value."[15]  18 U.S.C. § 1030(c)(4)(A)(i)(I).  When a

---

[15] Plaintiffs appear to assert that a civil action is appropriate because Defendants' actions threaten public safety.  SAC ¶ 347; 18 U.S.C. § 1030(g) and 1030(c)(4)(A)(i)(IV).  This assertion is speculative and the SAC contains no allegations demonstrating an actual threat to public safety.  Similarly, Plaintiffs appear to assert that a civil action is appropriate because damage occurred to a computer "used by or for an entity of the United States Government in

civil action is maintained pursuant to § (c)(4)(A)(i)(I), damages are limited to "economic

damages." 18 U.S.C. § 1030(g).  Moreover, "[n]o [civil] action may be brought…for the

negligent design or manufacture of…computer software…." 18 U.S.C. § 1030(g).

Even assuming Plaintiffs' allegation that Defendants "used iDevice resources" is true,

SAC ¶ 81, this alleged harm does not constitute "economic damage" under the CFAA.  *See In re

iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1067 (N.D. Cal. 2012) (rejecting argument that

consumption of memory space and reduced battery life constitutes economic damages for the

purposes of the CFAA); *Bose v. Interclick, Inc.*, No. 10 Civ 9183(DAB), 2011 WL 4343517, at

*4-5 (S.D.N.Y. Aug. 17, 2011) (rejecting argument that impaired functionality and diminished

value of a computer in a general fashion constituted economic damages under the CFAA).

"Damage under the CFAA does not occur simply by 'any use or consumption of a device's

limited resources,' but rather 'damage' must arise from an impairment of performance…so as to

result in a slowdown, if not an outright 'shutdown' of service.'" *In re iPhone App. Litig.*, 844 F.

Supp. at 1067.

Plaintiffs can no more pursue computer hacking claims against the App Defendants based

on the "resources" consumed by the software Plaintiffs installed or downloaded to their devices

than plaintiffs can sue Microsoft any time the latest Windows update takes up space on a

computer hard disk.  If a computer hacking claim based on "consumption of resources" were

viable, any software functionality that was not pre-approved would give rise to a § 1030 claim

against a software developer—exactly the outcome Congress intended to avoid when it amended

the CFAA in 2001 to protect software design.

---

furtherance of the administration of justice, national defense, or national security."  18 U.S.C.
1030(g) and 1030(c)(4)(A)(i)(V); SAC ¶ 347.  Plaintiffs do not identify a single computer
owned or used by the United States government that was damaged by Defendants' actions.

Plaintiffs also do not allege a specific amount of monetary damages suffered by any individual Plaintiff as a result of Defendants' actions but instead make the bare allegation that they "have suffered aggregate losses in a one year period-from the time of each unauthorized uploading, above $5,000." SAC ¶ 354. Nowhere in the SAC do Plaintiffs allege that they have actually incurred any economic damage as a result of Defendants' actions to even be able to determine if, in the aggregate, that amount is at least $5,000. Accordingly, Plaintiffs' claim for violations of the CFAA should be dismissed.

**J.**      **Plaintiffs Fail To State A RICO Claim**

To state a claim under RICO a plaintiff must plead (1) "conduct" (2) "of an enterprise" (3) "through a pattern" (4) "of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 496 (1985). The plaintiff must also plead injury to its business or property "by reason of" the alleged RICO violation. 18 U.S.C. § 1964(c). Plaintiffs have failed to meet these basic pleading requirements offering only bare-bones and conclusory allegations that do little more than parrot the statutory language without any factual support. *See Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989). These factually deficient allegations should be rejected and Plaintiffs' RICO claim for violations of 18 U.S.C. § 1962(c) and (d) should be dismissed.

**1.**      **Plaintiffs fail to establish the existence of a RICO enterprise**

A claim under 18 U.S.C. § 1962(c) requires "both the existence of an 'enterprise' and the connected 'pattern of racketeering activity.'" *See Montesano v. Seafirst Commercial Corp*., 818 F.2d 423, 427 (5th Cir. 1987). Plaintiffs have failed to plausibly establish either.

To start, a RICO enterprise requires something more than a business relationship. *Whelan v. Winchester Prod. Co*., 319 F.3d 225, 230 (5th Cir. 2003) (holding that acts done "in the ordinary course of business" did not constitute an enterprise). Instead, a RICO enterprise must be "an entity separate and apart from the pattern of activity in which it engages." *Atkinson*

*v. Anadarko Bank & Trust Co*., 808 F.2d 438, 441 (5th Cir. 1987) (emphasis added) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).  In addition, "liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs."  *See Reves v Ernst & Young*, 507 U.S. 170, 185 (1993) (quoting 18 U.S.C. § 1962(c)).  An association-in-fact enterprise must also have "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle v. United States*, 556 U.S. 938, 939 (2009).  As discussed below, Plaintiffs fail to meet any of these requirements.

Plaintiffs start by attempting to plead associated-in-fact enterprises between each individual App Defendant and Apple.  *See* SAC ¶ 362.  From there, Plaintiffs assert that the association allows Apps to "surreptitiously" access plaintiffs' address book contact information while making the iDevices function as "bots and illegal electronic eavesdropping and wiretapping devices."  *See id*. ¶¶ 362, 363, 364.  But the entire basis for these alleged associations stems from the normal business relationship between the App Defendants and Apple.  *See* SAC ¶¶ 109, 362-63 (detailing App Defendants' contracts with Apple, which permitted them to participate in application development process and distribute their applications via the App Store).  This is insufficient to establish an enterprise, because each of these enterprises (or associations) springs from the parties' business relationship rather than a separate and distinct association.  *See Whelan*, 319 F.3d at 230; *In re MasterCard Int'l Inc., Internet Gambling Litig*., 132 F. Supp. 2d 468, 487 (E.D. La. 2001) (finding that plaintiffs failed to allege enterprise when allegations were based on defendants business relationship), *aff'd*, 313 F.3d 257

(5th Cir. 2002); *see also VanDenBroeck v. CommonPoint Mortg. Co*., 210 F.3d 696, 700 (6th Cir. 2000) (overruled on other grounds).[16]

Plaintiffs also fail to allege the necessary separateness between the enterprise and the pattern of racketeering activity.  Indeed, the extent of Plaintiffs' allegations on this element is a threadbare recitation of the statutory standard.  *See* SAC ¶ 362.  "This association exists separate and apart from the pattern of racketeering activity being pursued by these defendants."  In determining whether an alleged enterprise is "distinct from that inherent in a pattern of racketeering," courts have looked to whether the "enterprise would still exist were the predicate acts removed from the equation."  *Handeen v. Lemaire*, 112 F.3d 1339, 1352 (8th Cir. 1997); *see also Landry v. Air Line Pilots Assoc*., 901 F.2d 404, 424 (5th Cir. 1990) (the enterprise element is not satisfied when its only purpose is to commit a predicate act).  Here, the alleged enterprise would not—and indeed does not—exist once the predicate acts are removed.  This is because (1) the alleged association is based on nothing more than the contractual relationship between the App Defendant and Apple; and (2) the predicate acts—allegedly acquiring Plaintiffs address book information through the wires and transportation of the same—exist only because of those contractual relationships.  Put differently, the association's alleged action of "surreptitiously" accessing Plaintiffs' address book information would not separately exist if the alleged wire fraud and transportation of stolen property ceased.  Plaintiffs concede as much by alleging that

---

[16] To the extent Plaintiffs allege an association between all App Defendants and Apple, such an allegation is still not a proper enterprise because Plaintiffs do not allege nor provide facts that any of the App Defendants knew about or cooperated with one other or jointly participated in any of the associations.  Thus, there is no linkage between any of the individual App Defendants or a "relationship" as required under *Boyle*, 556 U.S. at 939; *see also Cont'l Petroleum Corp., Inc. v. Corporation Funding Partners, LLC*, No. 11 Civ. 7801 (PAE), 2012 WL 1231775, at *5 (S.D.N.Y. Apr. 12, 2012) (finding no association based on conclusory allegations and no facts as to interactions among defendants).

the App Defendants ceased collection of user data without prior consent by at least February or March of 2012.[17]

Because Plaintiffs allege a relationship between members of an alleged enterprise that does not "exist[] for purposes other than simply to commit the predicate acts and reap the resultant rewards," Plaintiffs have failed to allege a RICO enterprise. *McCann v. McCann* 268 F. App'x. 359, 366 (5th Cir. 2008); *Tipton v. Northrop Grumman Corp*., No. 08-1267, 2009 WL 2914365, at *12 (E.D. La. Sept. 2, 2009) (dismissing RICO claim where association existed only for purpose of carrying out pattern of racketeering.); *Young v. Scruggs*, No. 09-cv-669KS-MTP, 2010 WL 2301641, at *7-8 (S.D. Miss. June 7, 2010) (dismissing claim where only purpose of enterprise was to commit fraudulent acts related to litigation).

### 2.    There is no viable claim of racketeering activity

Plaintiffs' concession that Defendants have ceased collecting user data without notice or consent is fatal to their RICO claim because there is no "threat of continued criminal activity." *H.J., Inc. v. Nw. Bell Tel. Co*., 492 U.S. 229, 239 (1988) (RICO is not directed at short-term threats, but only "long-term criminal conduct").  Although RICO continuity may, in some instances, exist during a closed period, Plaintiffs must show a "series of related predicates extending over a substantial period of time."  *Id*. at 242; *Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996).  "Predicate acts extending over a few weeks or months and threatening no future criminal conduct" do not suffice.  *H.J, Inc*., 492 U.S.

---

[17] *See* SAC ¶¶ 202-204, 214, 223, 230, 237, 242, 255, 270, 278 (noting Foursquare, Instagram, Yelp, Foodspotting, Angry Birds, and Cut The Rope applications modified their applications by the end of February 2012 to require explicit user consent prior to download of address book information); *id*. ¶¶ 192-193 (noting Path modified its application to display an explicit user opt-in before any upload of user information and started hashing user contact data during any uploads as of April 2, 2012); *id*. ¶ 278 (the Gowalla application was shut down around March 12, 2012); *id*. ¶ 137 (noting that the Kik application disclosed collection of user address book data before any of other App Defendants, and therefore prior to February 2012).

at 242; *see also Calcasieu Marine Nat'l. Bank v. Grant*, 943 F.2d 1453, 1464 (5th Cir. 1991) (affirming dismissal of RICO claims because alleged acts posed no future criminal threat).

The SAC falls far short of alleging a continued threat of criminal activity demonstrating long-term criminal conduct. Plaintiffs concede that the App Defendants ceased the alleged non-consensual collection of user data by at least February or March of 2012 and remedied and revised the Apps at issue. *See supra* note 17. As a result, Plaintiffs cannot meet the continuity requirement. *See H.J., Inc.*, 492 U.S. at 239-243; *see also Atel Mar. Investors, LP v. Sea Mar Mgmt., L.L.C.*, No. 08-1700, 2012 WL 2994337, at *9 (E.D. La. July 20, 2012) (finding lack of continuity "because the [agreement] that allowed Sea Mar to charter the Atel vessels was no longer in effect between Atel and Sea Mar at the time this suit was filed and therefore, the activity had ceased"); *Orthoflex, Inc. v. ThermoTek, Inc.*, No. 11-cv-0870-D, 2012 WL 2864510, at *3 (N.D. Tex. July 12, 2012) ("Because the distributor agreement has been terminated, ThermoTek has failed to adequately plead a threat of long-term criminal activity.").[18]

Similarly, continuity cannot be established by multiple acts of fraud that are part of a single transaction. *See, e.g.*, *Word of Faith*, 90 F.3d at 123 (Fifth Circuit precedent "make[s] clear that where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown."); *In re Burzynski*, 989 F.2d 733, 743 (5th Cir. 1993) (continuity not established because "*[a]ll* of the alleged predicate acts took place as part of the *Burzynski I* litigation, which has ended"); *Delta Truck & Tractor, Inc. v.*

---

[18] The short duration of the alleged conduct also defeats a claim of continuity. *See Primary Care Investors, Seven, Inc. v. PHP Healthcare Corp.*, 986 F.2d 1208, 1215-16 (8th Cir. 1993) (holding that an 11-month period was insubstantial and legally insufficient to establish closed-ended continuity); *Johnston v. Wilbourn*, 760 F. Supp. 578, 588 n.12 (S.D. Miss. 1991) (noting that no case following *H.J. Inc.* had found predicate acts spanning less than one year, in closed-ended scheme, to satisfy continuity requirement; holding that scheme extending over nine months was too short lived to establish continuity).

*J.I. Case Co.*, 855 F.2d 241, 244 (5th Cir. 1988) ("Delta has alleged as a pattern of racketeering activity nothing more than numerous predicate acts which were necessary segments of an otherwise legitimate [merger].").

Here, Plaintiffs allege—without any details or factual support—that the App Defendants repeatedly accessed and copied their address book data.  Even if true, these downloads were a part of a single otherwise lawful transaction, providing service to the applications that Plaintiffs requested and voluntarily downloaded.  Plaintiffs have not alleged that the App Defendants perpetrated any criminal activity that was unrelated to the provision of their Apps.  Because Plaintiffs fail to allege any enterprise or a continuing pattern of racketeering, they fail to state a claim under 18 U.S.C. § 1962(c).

###### 3.   Plaintiffs fail to plead predicate acts of wire fraud or transportation of stolen property

Further undermining Plaintiffs' RICO claim are their procedurally and substantively inadequate allegations of wire fraud (18 U.S.C. § 1343) and transportation of stolen property (18 U.S.C. § 2314) as the predicate acts of "racketeering activity."  At the outset, allegations supporting a wire fraud claim must be pled with specificity to comply with Federal Rule of Civil Procedure 9(b).  *See Elliott*, 867 F.2d at 880.  At a minimum, the wire fraud allegations must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.  *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177-78 (5th Cir. 1997) (citation omitted).  On the substantive elements, a claim for wire fraud must include (1) a scheme to defraud, *see United States v. Herron*, 825 F.2d 50, 54 (5th Cir. 1987); (2) use of wire communications in furtherance of the scheme, *see id.*; and (3) specific-intent, i.e., that the

"defendant knew the scheme involved false representations."  *United States v. Nguyen*, 504 F.3d 561, 568 (5th Cir. 2007).  Plaintiffs have not met any of these requirements.

First, Plaintiffs cannot satisfy the pleading requirements of Rule 9(b) by tersely asserting that the App Defendants obtained address book data under "false pretenses and as part of a scheme to defraud."  SAC ¶ 357.  Absent from the SAC are allegations of any specific statements by the App Defendants falsely asserting that they would not engage in such conduct—much less when or by whom such statements were made.  Although Plaintiffs recite a litany of representations made by Apple regarding privacy and data collection (SAC ¶¶ 124-132), the SAC is bereft of a single specific or factually supported allegation that the App Developers made similar promises.[19]  Similarly, Plaintiffs allege on information and belief, that the App Defendants "divulged and/or disseminated" Plaintiffs' private address books to "(i) wireless and/or cell phone service providers; (ii) third party server system owners, and/or (iii) their own organizations."  SAC ¶ 358.  But Plaintiffs fail to allege with particularity when the alleged dissemination of Plaintiffs' address books took place.  They further fail to allege the specifics of how each App Defendant used or caused the wires to be used to execute the alleged scheme to defraud.  *Allstate Ins. Co. v. Donovan*, No. H-12-0432, 2012 WL 2577546, at *8-9 (S.D. Tex. July 3, 2012) (dismissing RICO claims because complaint failed to allege names of patients, specific misrepresentations by defendants, which statements were fraudulent, when they were made, and what each defendant gained by participating in the alleged fraud).  Moreover, a RICO plaintiff's allegations of scienter cannot be "merely conclusory and unsupported by any factual allegations."  *O'Malley v. O'Neill*, 887 F.2d 1557, 1560 (11th Cir. 1989) (dismissing

---

[19] Although Plaintiffs make the cursory statement that the App Defendants "each promised to protect iDevice owners' privacy" they do not allege a single fact or statement by the App Defendants in support of this generalized assertion.

RICO conspiracy claim); *see also Tuchman v. DSC Commc'ns's Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) ("To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud."); *Marriott Bros. v. Gage*, 704 F. Supp. 731, 740 (N.D. Tex. 1988) (RICO fraud averment must provide some "factual basis for conclusory allegations of intent"); *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987) (RICO plaintiffs must "provide some factual basis for conclusory allegations of intent"), *overruled on other grounds*, *United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989) (en banc).

Further, the SAC fails to state a claim for transportation of stolen property.  A violation of § 2314 contains three elements: "(1) the interstate transportation of (2) goods, merchandise, wares, money, or securities valued at $5,000 or more; (3) with knowledge that such items have been stolen, converted or taken by fraud."  *United States v. Onyiego*, 286 F.3d 249, 253 (5th Cir. 2002).  Although the SAC asserts that the value of Plaintiffs' and class member's address book data "exceeds $5,000" in the "aggregate" (SAC ¶ 359), there is not a single factual allegation offered in support of that conclusion.  Moreover, Plaintiffs assert that these injuries stem from their own losses and those of "class members."  SAC ¶ 359.  But a named plaintiff may not rely upon the presumed damages of unrepresented class members to reach the jurisdictional minimum under 18 U.S.C. § 2314.  *See Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 408 (5th Cir. 2003).  Plaintiffs thus fail to state a claim under 18 U.S.C. § 2314.

### 4.    Plaintiffs lack standing because they have not sustained a RICO injury

For the same reasons discussed in Apple's Motion to Dismiss on Article III grounds, and in section I.3, above, Plaintiffs' claims under § 1962(c) fail for the additional reason that they cannot establish that they were "injured in [their] business or property."  18 U.S.C § 1964(c); *Hughes v. Tobacco Institute, Inc.*, 278 F.3d 417, 422 (5th Cir. 2001) (personal injuries are not

compensable under RICO, which requires "proof of concrete financial loss, and not mere 'injury to a valuable intangible property interest.'"); *In re Taxable Mun. Bond Sec. Litig*., 51 F.3d 518, 523 (5th Cir. 1995) (speculative damages are the "type of 'intangible property interest' that RICO does not protect") (quoting *Steele v. Hosp. Corp. of Am*., 36 F.3d 69, 70 (9th Cir. 1994)).

### 5.     Plaintiffs' conspiracy claim is entirely dependent on their deficient RICO claim

To prove a RICO conspiracy, a plaintiff must establish "(1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense." *Trugreen Landcare LLC v. Scott*, 512 F. Supp. 2d 613, 625 n.11 (N.D. Tex. 2007) (quoting *United States v. Delgado*, 401 F.3d 290, 296 (5th Cir. 2005)).  Because Plaintiffs cannot state a claim under § 1962(c), their claims under § 1962(d) necessarily fail.  *See Burzynski*, 989 F.2d at 742 (failure to adequately allege pattern of racketeering merited dismissal of all claims under § 1962); *see also Word of Faith*, 90 F.2d at 122 (section 1962(d) conspiracy claim requires plaintiff to allege the elements of section 1962(c)).

### K.     Plaintiffs Fail To State A Claim Under The Texas Theft Liability Act

Plaintiffs allege that Defendants committed theft pursuant to Texas Penal Code § 31.03 and are therefore liable to Plaintiffs under § 134.003 of the Texas Theft Liability Act.  SAC ¶¶ 372, 376.  Under the Texas Theft Liability Act, a person who commits theft is liable for the damages resulting from the theft.  Tex. Civ. Prac. & Rem. Code § 134.003.  "Theft" is defined as "unlawfully appropriating property or unlawfully obtaining services" as described in section 31.03 of the Texas Penal Code.[20]  Tex. Civ. Prac. & Rem. Code § 134.002(2).  Under section 31.03, a theft occurs when a person "unlawfully appropriates property with the intent to deprive

---

[20] Other bases for "theft" exist, but none are pertinent to Plaintiffs' allegations.

the owner of [the] property."  Tex. Penal Code § 31.03(a).  Plaintiffs' claim fails because they do

not allege facts demonstrating either an "appropriation" of or an "intent to deprive" them of

property.

### 1.      No appropriation occurred

Under the Texas Penal Code, "appropriate" means "to bring about a transfer or purported

transfer of title to or other nonpossessory interest in property, whether to the actor or another" or

"to acquire or otherwise exercise control over property other than real property."  Tex. Penal

Code § 31.01(4).  Plaintiffs make the bare allegation that "Defendants have unlawfully

appropriated each Plaintiff's iDevice and at least a portion of their iDevice address book."  SAC

¶ 370.  Specifically, they assert that the "non-consensual taking of Plaintiffs' address books and

transmission to the App Defendants constitutes a 'transfer [of a]…non-possessory interest in the

[user's address book]'" to Defendants.  SAC ¶ 370.

These facts do not establish an "appropriation."  Plaintiffs do not allege any facts

identifying what their "nonpossessory interest" in the address book data is, let alone how that

interest was transferred to Defendants.  Moreover, the mere alleged "cop[ying], transmit[ing],

upload[ing], stor[ing], use[] and disclos[sure]" of address book information does not constitute a

"transfer…of title" so as to give rise to an appropriation of property.  SAC ¶¶ 65, 66, 68, 155,

220.  Plaintiffs always remained in possession and control of the address book information and

were free to use it at any time.

### 2.      Plaintiffs were not deprived of property

A person is "deprived" of property if the property is withheld from the owner

permanently or for an extended period of time, restored only upon payment or disposed of in an

unrecoverable manner.  Tex. Penal Code § 31.01(2).  Plaintiffs allege that they were "deprived of

airtime on their iDevices and computing and processing power, resources and battery life" as

well as "control over their address book data and the data's value" during Defendants'

transmission and upload of the address book information.  SAC ¶ 371.  While the SAC fails to

allege facts providing a plausible basis to accept such conclusory allegations, even assuming

these allegations are true, none suffice to show deprivation or an intent to deprive.  *See Intel*

*Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350-51 (2003) (noting that a trespass occurs only where

there is *significant* reduction in available memory and processing power.)

Plaintiffs do not allege that Defendants "withheld" their address book data or iDevices

for any period of time, let alone permanently, or that Defendants disposed of the property in an

unrecoverable manner.  Indeed, it is difficult to imagine how one would be deprived of property

of which they remain in possession and control.  Because the SAC is devoid of any factual

allegations showing an appropriation, deprivation or an intent to deprive, Plaintiffs' claims under

section 31.03 and section 134.003 should be dismissed.

**L.      Plaintiffs Fail To State A Claim Under California Penal Code § 502**

Although Plaintiffs allege that Defendants' actions violated Cal. Penal Code §§ 502

(c)(1), (2), (6), (7) & (8), that statute is inapplicable to the facts alleged, and the claims should be

dismissed.  California Penal Code § 502 permits civil suit if, and only if, a computer system is

accessed "without permission" (i.e., broken into) by an outsider.  *See Chrisman v. City of Los*

*Angeles*, 155 Cal. App. 4th 29, 34 (2007) ("Section 502 defines 'access' in terms redolent of

'hacking' or breaking into a computer").  "[U]sing a computer network for the purpose that it

was designed to serve, even if in a manner that is otherwise improper, is not the kind of behavior

that the legislature sought to prohibit" and does not constitute acting "without permission."

*Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *7 (N.D.

Cal. July 20, 2010).  Further, Plaintiffs have not adequately alleged the existence of any

"computer contaminant" necessary to state a claim under § 502(c)(8).  Thus, Plaintiffs' claims should not survive the motion to dismiss.

### 1.      Defendants did not act "without permission" under the statute

Plaintiffs have not and cannot plead facts sufficient to show Defendants knowingly accessed or caused to be accessed Plaintiffs' data, computer, computer system, or computer network without permission.  The phrase "without permission" means to "circumvent technical barriers" in order to access or use the information.  *See In re Facebook Privacy Litig*., 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011) (dismissing plaintiffs' § 502 claims which failed to allege that the access of their personal information required the website to overcome a technical barrier designed to block it).  Plaintiffs do not and cannot allege that there were any technical or code based barriers which prevented the Defendants' actions.  Instead, Plaintiffs repeatedly concede that they voluntarily interacted with Defendants by willingly downloading the relevant applications to their iDevices.  SAC ¶¶ 9-21.  Such voluntary actions cannot amount to the "'hacking' or breaking into a computer" that § 502 was intended to prohibit.  *See Chrisman,* 155 Cal. App. 4th at 34.  In fact the Northern District of California has already dismissed substantially similar allegations in *In re iPhone Application Litigation*, wherein plaintiffs alleged that certain application developers' use of "specific, surreptitious code" to download user information, including address book contents, from user's phones stated a claim for violation of Cal. Penal Code § 502.  *See In re iPhone App. Litig*., No. 11-MD-02250-LHK, 2011 WL 4403963, at *12-13 (N.D. Cal. Sept. 20, 2011).  The Court concluded that such allegations could not be "without permission," noting "on plaintiffs' own allegations, the iOS and third party apps—which contain the alleged 'surreptitious code'—were all installed or updated voluntarily by Plaintiffs."  *Id*.  Thus, Plaintiffs fail to state any actionable claim under Cal. Penal Code § 502.

### 2.   Plaintiffs have not alleged any "computer contaminant" under § 502(c)(8)

Similarly, Plaintiffs' claim that Defendants knowingly and without permission introduced a "computer contaminant" in violation of § 502(c)(8) is not supported by any factual allegations. Computer contaminants are depicted by the statute as computer "viruses or worms" that "usurp the normal operation" of a device. Cal. Penal Code § 502(b)(10). Although Plaintiffs include conclusory allegations that the applications are "malware" (SAC ¶¶ 75, 326, 363), they nowhere allege that these applications in any way usurped the normal operation of their iDevices or otherwise interfered with their use of their information. *See In re iPhone App. Litig.*, 2011 WL 4403963, at *13 (concluding that plaintiffs had not adequately alleged that the Apps at issue were "computer contaminants" under the statutes, as they were not viruses or worms and did not "usurp the normal operation of the computer"); *In re Facebook Privacy*, 791 F. Supp. 2d at 716 n.11 (dismissing plaintiffs § 502(c)(8) claims where they failed to allege that the technology at issue somehow usurped the normal operation of their computer). Further, a "computer contaminant" is defined by the statute as computer instructions which damage or modify data "without the intent or permission of the owner of the information." *See* Cal. Penal Code § 502(b)(10). As discussed above, because Plaintiffs have not and cannot allege that their voluntary download of the Defendant App was "without permission" as understood by the statute, they cannot state a claim under subpart (c)(8). *See In re iPhone App. Litig.*, 2011 WL 4403963, at *13 (dismissing plaintiffs (c)(8) claim because "the very definition limits liability to conduct that occurs 'without the intent or permission of the owner'").

Cal. Penal Code § 502 was designed to prevent outsiders from hacking into a computer, network, or system and altering or stealing the data therein, and it simply does not apply to the

facts Plaintiffs allege.  Therefore, the Complaint fails to state a claim under California Penal Code § 502, and the claims should be dismissed.

**M.     Plaintiffs Fail To State A Claim For Unjust Enrichment**

Plaintiffs' claim for unjust enrichment should be dismissed because it is not an independent cause of action under Texas law or California law  *Walker v. Cotter Props., Inc.*., 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.) ("Unjust enrichment is not an independent cause of action…."); *Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App.—Corpus Christi 2002, pet. denied) ("[U]njust enrichment is not a distinct independent cause of action but simply a theory of recovery."); *City of Corpus Christi v. Heldenfels Bros., Inc.,* 802 S.W.2d 35, 40 (Tex. App.—Corpus Christi 1990), *aff'd,* 832 S.W.2d 39 (Tex. 1992); *In re DirectTV Early Cancellation Litig*., 738 F. Supp. 2d 1062, 1091 (C.D. Cal. 2010).  Unjust enrichment is available as a theory of recovery when "one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."  *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

**N.     Plaintiffs Fail To State A Claim For Constructive Trust**

Plaintiffs' claim for constructive trust also fails because it is not an independent cause of action recognized in Texas or California.  Under Texas and California law, a constructive trust is actually an equitable ***remedy*** imposed by law to prevent unjust enrichment."  *Hudspeth v. Stoker*, 644 S.W.2d 92, 94 (Tex.App.—San Antonio 1982, writ ref'd) (emphasis added); *Lowther et ux v. Lowther, Jr. et ux,* 578 S.W.2d 560 (Tex. Civ. App.—Waco, 1979, writ ref'd n.r.e) ("a constructive trust is not in reality a trust but is an equitable remedy."); *see Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401, 405 (1960); *Batt v. City and County of San Francisco*, 155 Cal. App. 4th 65, 82 (Cal. App. 2007).  Given that the imposition of a constructive trust is a remedy and not a cause of action, Plaintiffs' claim should be dismissed.  Further, this equitable

-45-

remedy is not available in the instant case, as it arises only where the parties have a special relationship of trust, for instance a fiduciary relationship, or where there has been a fraudulent act by the defendant.  *See Mowbray v. Avery*, 76 S.W.3d 683 681 n. 27 (Tex. App-Corpus Christi 2002, pet. denied).  Because Plaintiffs have not adequately alleged any special relationship, and have not adequately pled any facts in support of fraud by the App Defendants, this remedy is not available.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant Defendants' motion to dismiss with prejudice as indicated in the Court's August 23, 2012 Order.  Docket No. 99 ("Furthermore, the Court WARNS Plaintiffs that, if the Court finds any new complaint fails to (1) state a claim…it will be subject to dismissal with prejudice.").

/ / /

Dated: October  12, 2012                ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Daniel J. Weinberg*
    I. Neel Chatterjee (*admitted pro hac vice*)
    nchatterjee@orrick.com
    Daniel J. Weinberg (*admitted pro hac vice*)
    dweinberg@orrick.com
    Morvarid Metanat (*admitted pro hac vice*)
    mmetanat@orrick.com
    1000 Marsh Road
    Menlo Park, California  94025
    Telephone:   +1-650-614-7400
    Facsimile:    +1-650-614-7401

    M. Leah Somoano (*admitted pro hac vice*)
    lsomoano@orrick.com
    2050 Main Street, Suite 1100
    Irvine, CA  92614-8255
    Telephone:   949-567-6700
    Facsimile:    949-567-6710

    KING & SPALDING LLP
    Michael J. Biles
    Texas Bar No. 24008578
    mbiles@kslaw.com
    Yusuf Bajwa
    Texas Bar No. 24047754
    ybajwa@kslaw.com
    401 Congress Avenue, Suite 3200
    Austin, TX  78701
    Telephone:  512.457.2000
    Facsimile:  512.457.2100

    **ATTORNEYS FOR DEFENDANT**
    **GOWALLA, INC.**

Dated: October  12, 2012                      GREENBERG TRAURIG, LLP


                                              By: */s/ Gregory J. Casas*
                                                  Gregory J. Casas (TX Bar No. 00787213)
                                                  casasg@gtlaw.com
                                                  300 West 6th Street, Suite 2050
                                                  Austin, Texas 78701
                                                  Telephone: 512-320-7200
                                                  Facsimile: 512-320-7210

                                                  Jedediah Wakefield (CA Bar No. 178058)
                                                  jwakefield@fenwick.com
                                                  Tyler G. Newby (CA Bar No. 205790)
                                                  tnewby@fenwick.com
                                                  FENWICK & WEST, LLP
                                                  555 California Street, 12th Floor
                                                  San Francisco, CA 94104
                                                  Telephone: 415-875-2300
                                                  Facsimile: 415-281-1350
                                                  *Admitted Pro Hac Vice*

                                                  **ATTORNEYS FOR DEFENDANT
                                                  PATH, INC.**


Dated: October  12, 2012                      MORRISON & FOERSTER, LLP


                                              By: */s/ Keith M. Henneke*
                                                  Keith M. Henneke
                                                  khenneke@mofo.com
                                                  MORRISON & FOERSTER, LLP
                                                  555 W. Fifth Street, Suite 3500
                                                  Los Angeles, CA 90013
                                                  Telephone: 213-892-5200
                                                  Facsimile: 213-892-5454

                                                  **ATTORNEYS FOR DEFENDANT
                                                  FOURSQUARE LABS, INC.**

Dated: October  12, 2012

GRAVES DOUGHERTY HEARON & MOODY, PC

By: */s/ Peter D. Kennedy*

Peter D. Kennedy
pkennedy@gdhm.com
GRAVES DOUGHERTY HEARON & MOODY PC
401 Congress Avenue, Suite 2200
Austin, Texas 78701
Telephone: 512-480-5764
Facsimile: 512-536-9908

Michael H. Page (*Admitted pro hac vice*)
mpage@durietangri.com
DURIE TANGRIE, LLP
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: 415-362-6666
Facsimile: 415-236-6300

**ATTORNEYS FOR DEFENDANTS YELP, INC. AND FOODSPOTTING, INC.**

Dated: October  12, 2012                    HAYNES AND BOONE, LLP

                                            By: */s/ Hal Sanders*
                                            _____
                                                Hal Sanders (TX Bar No. 17607500)
                                                hal.sanders@haynesboone.com
                                                Adam Sencenbaugh (TX Bar No. 24060584)
                                                adam.sencenbaugh@haynesboone.com
                                                HAYNES & BOONE, LLP
                                                600 Congress Avenue, Suite 1300
                                                Austin, Texas 78701
                                                Telephone: 512-867-8427
                                                Facsimile: 512-867-8667

                                                Marc Zwillinger (*pro hac vice pending*)
                                                marc@zwillgen.com
                                                Jacob Sommer (*pro hac vice pending*)
                                                jake@zwillgen.com
                                                ZWILLGEN PLLC
                                                1705 N. Street NW
                                                Washington, DC 20036
                                                Telephone: 202-706-5205

                                                **ATTORNEYS FOR DEFENDANTS
                                                ELECTRONIC ARTS, INC. AND
                                                CHILLINGO LTD.**

Dated: October  12, 2012                    COOLEY, LLP

By: */s/ Mazda K. Anita*
      Michael G, Rhodes (*pro hac vice*)
      mrhodes@cooley.com
      Mazda K. Anita (pro hac vice)
      manita@cooley.com
      4401 Eastgate Mall
      San Diego, CA 92101-1909
      Telephone: 858-550-6000
      Facsimile: 858-550-6420

      Lori R. Mason (Tex. Bar No. 00791455)
      lmason@cooley.com
      5 Palo Alto Square
      3000 El Camino Real
      Palo Alto, CA 94306
      Telephone: 650-846-5000
      Facsimile: 650-549-7400

      **ATTORNEYS FOR DEFENDANTS**
      **INSTAGRAM, INC. and KIK**
      **INTERACTIVE, INC.**

Dated: October  12, 2012            BEATTY BANGLE STRAMA, P.C.


By: */s/ Shannon W. Bangle*
     Shannon W. Bangle (TX Bar No. 24006789)
     sbangle@bbsfirm.com
     BEATTY BANGLE STRAMA, P.C.
     400 West 15th Street, Suite 1450
     Austin, Texas 78701
     Telephone: 512-879-5052
     Facsimile: 512-879-5040


     Christopher G. Kelly (admitted pro hac vice)
     Christopher.kelly@hklaw.com
     Judith R. Nemsick (pro hac vice pending)
     Judith.nemsick@hklaw.com
     HOLLAND & KNIGHT, LLP
     31 West 52nd Street
     New York, NY 10019
     Telephone: 212-513-3200
     Facsimile: 212-385-9010

     **ATTORNEYS FOR DEFENDANT**
     **ROVIO ENTERTAINMENT LTD.**
     **S/H/A ROVIO MOBILE OY**

## <u>FILER'S ATTESTATION</u>

Pursuant to Section 14(c) of the Administrative Policies and Procedures for Electronic Filing in Civil and Criminal Cases for the United States District Court for the Western District of Texas, regarding signatures, I, Daniel J,. Weinberg, attest that concurrence in the filing of this document has been obtained.

*/s/ Daniel J. Weinberg*
Daniel J. Weinberg

## CERTIFICATE OF SERVICE

The Undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who are deemed to have consented to electronic service.  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(b)(1)(2), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on Friday, October 12, 2012.


_____
*/s/ Daniel J. Weinberg*
Daniel J. Weinberg