IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Marc Opperman, *et al.*, § <br> for themselves and all others § <br> similarly situated, § <br> § <br> Plaintiffs, § <br> §     Case No. 1:12-CV-00219-SS <br> vs. § <br> § <br> Path, Inc., *et al.*, § <br> § <br> Defendants. § | |

### DEFENDANT ZEPTOLAB UK LIMITED'S REPLY
### IN FURTHER SUPPORT OF ITS MOTION TO DISMISS
### PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

Defendant ZeptoLab UK Limited respectfully submits this Reply in support of its Motion to Dismiss the Second Amended Complaint ("SAC") under FED. R. CIV. P. 8, 12(b) and 21.[1]

**A.     The SAC Should Be Dismissed for Failing to Comply with FED. R. CIV. P. 8**

1.     The excessive length of the SAC warrants dismissal for failure to comply with FED. R. CIV. P. 8. Rule 8 requires a pleading to contain "a short and plain statement of the claim" with "simple, concise and direct allegations" showing "that the pleader is entitled to relief." The SAC is neither short nor plain; nor are its allegations simple, concise or direct. Plaintiffs admit their claims in this action are not complex. (Pl. Opp. at 5.) Indeed, in their Opposition, Plaintiffs summarized their allegations in a mere three pages. (*Id.* at 2-5). Nonetheless, Plaintiffs filed a rambling 83-page SAC that is unnecessarily long. Critically, Plaintiffs do not dispute that many of the 439 paragraphs of the SAC are duplicative. (ZeptoLab

---

[1] Plaintiffs' Opposition is lengthy and rife with immaterial, *ad hominem* statements against ZeptoLab and its counsel. Given the brevity of this Reply, ZeptoLab is unable to respond fully to each of them here. For the avoidance of doubt, ZeptoLab vigorously denies it has committed any torts or engaged in any unlawful activity, in Texas or otherwise.

Mot. at 6 fn. 1.)  Also, substantial portions of the SAC are filled with unnecessary summaries of press "reports", a developer "manual", and other extraneous materials.  (*Id.* at ¶ 16.)

2. The Fifth Circuit has held that "[t]here may be cases in which [a pleading's] mere verbosity or repetition would justify final dismissal." *Jumonville v. Dep't of Treasury*, 50 F.3d 1033, 1995 WL 136507, at *2 (5th Cir. 1995) (citation omitted).[2]  As demonstrated by the cases cited in ¶ 17 of ZeptoLab's Motion, many courts (including the Fifth Circuit) have rejected pleadings that are far shorter than the SAC as having violated Rule 8.  Plaintiffs wrongly argue that these cases have been abrogated by *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  Specifically, Plaintiffs contend that following *Twombly* and *Iqbal*, a complaint cannot be deemed to violate Rule 8 on the basis of being overly prolix, as long as it provides the defendant with "fair notice" of what the plaintiff's claims are.  However, neither *Twombly* nor *Iqbal* says anything of the sort.  Rather, they merely held that, to comply with Rule 8, the allegations in a complaint must be plausible.  *Twombly* and *Iqbal* did not eliminate Rule 8's **additional** requirements that a pleading must also be "short and plain", and contain "simple, concise and direct allegations".  After *Twombly and Iqbal*, courts continue to recognize that unnecessarily lengthy complaints violate Rule 8.  *Jasper v. Hardin Cty. Sheriff's Dep't*, No. 1:11-CV-408, 2012 WL 4480713, at *12 (E.D. Tex. Sept. 5, 2012)*, recomm. adopted*, 2012 WL 4472261 (E.D. Tex. Sept. 26, 2012); *Armstrong v. Tygart*, Case No. A-12-CS-606-SS, 2012 WL 2688774 (W.D. Tex. July 9, 2012).[3]  This is because repetitive and irrelevant

---

[2] Plaintiffs wrongly contend that the above quotation from *Jumonville* "does not exist." (Pl. Opp. at 8 fn. 8.)  To the contrary, the Fifth Circuit's entire *Jumonville* opinion (including this quotation) may be found through the online Westlaw service at the citation listed above.

[3] Plaintiffs misleadingly state that ZeptoLab filed a 61-page complaint in the Southern District of New York.  However, that complaint only contained 31 pages of text.  (Pl. Opp. Ex. 2.)  Consistent with the local practice in that court, ZeptoLab annexed 30 pages of trademark and copyright registrations which were referenced in the complaint as exhibits thereto.

allegations such as those in the SAC do not make a complaint more plausible; rather, they merely impose unnecessary burdens on the Court and other litigants. *Hall v. Civil Air Patrol, Inc.*, 193 Fed. Appx. 298, 300 (5th Cir. 2006) (a "prolix[]" pleading makes "an orderly trial impossible").

3. Finally, the Court should deny Plaintiffs' request that they be given yet another chance to comply with Rule 8 through the filing of a third amended complaint. Instead, the Court should dismiss the action with prejudice, given its warning in its August 23, 2012 Order (Doc. # 99) that this would occur if the SAC did not comply with the Federal Rules. "Where . . . a plaintiff has been given leave to file a second amended complaint that meets the requirements of Rule 8(a) and fails to do so, the case should be dismissed." *Hall*, 193 Fed. Appx. at 300.[4]

**B.**    **The Court Lacks Personal Jurisdiction Over ZeptoLab**

4. Plaintiffs have failed to meet their burden to demonstrate that this Court may exercise personal jurisdiction over ZeptoLab, which is a United Kingdom company.

**1.**    **This Court Has No Specific or General Jurisdiction Over ZeptoLab**

5. Plaintiffs contend this Court has personal jurisdiction over it, both pursuant to the Texas long-arm statute, and based upon their assertion of a RICO claim.[5] Both jurisdictional theories require Plaintiffs to demonstrate that the exercise of personal jurisdiction complies with due process. Thus, to establish personal jurisdiction, Plaintiffs must show that (i) ZeptoLab has minimum contacts that are sufficient to establish either specific or general jurisdiction; and (ii) the exercise of jurisdiction over ZeptoLab is reasonable. *Grynberg v. BP P.L.C.*, 855 F. Supp. 2d

---

[4] In support of their request for leave to amend, Plaintiffs cite *Simmons v. Abruzazo*, 49 F.3d 83 (2d Cir. 1995). This case is inapposite because it concerns a *pro se* plaintiff who did not know his action would be dismissed if he failed to file a pleading that complied with Rule 8. In contrast, this Court provided Plaintiffs with ample warning of the consequences of filing a deficient pleading.

[5] Plaintiffs' RICO claim is vaguely pleaded, and ZeptoLab has joined in the other defendants' FED. R. CIV. 12(b)(6) motion to dismiss that claim. If the Court grants that motion, it need not consider whether jurisdiction exists over ZeptoLab under RICO.

Page 3 of 17

4919816.2

625, 643-44 (S.D. Tex. 2012); *Auto Wax, Inc. v. Kasei Kogyo Co.*, No.A 00-531 SS, 2001 WL 1891719, at *2-3 (W.D. Tex. Sept. 26, 2001) (Sparks, J.). To determine if there is long-arm jurisdiction, this Court evaluates ZeptoLab's contacts with Texas. *Auto Wax, Inc.*, 2001 WL 1891719, at *2. To determine if there is RICO jurisdiction, this Court evaluates ZeptoLab's contacts with the United States as a whole. *Grynberg*, 855 F. Supp. 2d at 644.

### a.       Specific Jurisdiction Does Not Exist Over ZeptoLab

6.      Specific jurisdiction requires a showing that ZeptoLab "'purposefully availed' itself of the benefits of conducting business in the forum and the cause of action 'arises out of or relates to' that purposeful availment." *Auto Wax, Inc.* 2001 WL 1891719, at *2 (citation omitted). "The purposeful availment requirement cannot be satisfied by 'random,' 'fortuitous,' or 'attenuated' contacts with the forum state or by plaintiffs' or a third party's unilateral activities; instead, [Plaintiffs] must show actions" by the defendant "that create a 'substantial connection' with the forum state." *Id.* (citation omitted). Merely placing a product into the stream of commerce, knowing it might end up in the forum, is not purposeful availment. *Id.* Plaintiffs cannot demonstrate any relevant contacts between ZeptoLab and Texas (or the United States) that are sufficient to establish purposeful availment.

7.      Plaintiffs attempt to satisfy the purposeful availment requirement by contending that: (i) ZeptoLab purportedly "distributed" the *Cut the Rope* app to consumers in Texas and the United States in general; and (ii) Zeptolab allegedly entered into two boilerplate contracts with Apple Inc. that provided ZeptoLab with the necessary software to develop the *Cut the Rope* app. Plaintiffs' first contention is simply wrong. A third party, Chillingo Ltd. is the publisher of *Cut the Rope* and has delivered it to Apple for release through its iTunes Store, where it may be purchased by consumers. (Zuy Reply Decl., Ex. A hereto, ¶ 3.) When a consumer purchases *Cut the Rope* from the iTunes Store, the proceeds from that sale are paid by Apple to Chillingo

(and not to ZeptoLab).  (*Id.*)  The mere fact that ZeptoLab allows Chillingo to exploit *Cut the Rope* in the United States (including Texas) through the iTunes Store is simply too attenuated a contact to constitute purposeful availment.  *Auto Wax, Inc.*, 2001 WL 1891719, at *2.

8. Plaintiffs' second basis for purposeful availment is also too attenuated to support the assertion of specific jurisdiction in Texas under its long-arm statute.  The two alleged contracts between ZeptoLab and Apple that are referenced by Plaintiffs expressly define Apple as a **California** corporation, and include **California** choice of law and venue provisions.[6] Moreover, contrary to Plaintiffs' assertion otherwise, these contracts simply do not provide for Apple to make any payment of sales taxes on behalf of ZeptoLab.  The contract provision cited by Plaintiffs in support of this incorrect argument concerns the payment of **withholding taxes** on monies owed by Apple to companies which license apps to it; this provision has nothing to do with the payment of sales taxes on consumer transactions.  (*See* Pl. Opp., Ex. 11 at § 3.7.)

9. Moreover, the mere existence of these two alleged contracts is also too attenuated a contact to constitute purposeful availment by ZeptoLab of the benefits of conducting business in the United States for purposes of RICO jurisdiction.  As Plaintiffs concede, these "click-through" contracts have been signed by hundreds of thousands of app developers whose products have been submitted to the iTunes Store.  Under Plaintiffs' incorrect jurisdictional theory, any of these developers (no matter where they lived) would be subject to personal jurisdiction in the United States, merely because they entered into these boilerplate agreements.  These are exactly the type of "random" and "fortuitous" contacts that are insufficient to support personal jurisdiction.  *Pervasive Software, Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 222 (5th Cir. 2012); *see also Attachmate Corp. v. Celcom Axiata Berhad*, No. C10-0526-RSM, 2010 WL

---

[6] (*See* Pl. Opp., Ex. 4 at p. 1, ¶ 1.2 & p. 19, ¶ 15.12; *id.*, Ex. 5, at p. 1, ¶ 1 & p. 10, ¶ 10.11.)

4856793, at *2 (W.D. Wash. Nov. 22, 2010) ("acceptance of . . . 'click-through' agreements is insufficient to establish the contacts necessary for the exercise of personal jurisdiction").

10.     Plaintiffs also contend that ZeptoLab is subject to specific jurisdiction on the basis of the SAC's conclusory allegations that ZeptoLab committed a tort in Texas.  This allegation does not bear even minimal scrutiny, given that Plaintiffs do not allege a single wrongful action that ZeptoLab actually committed in Texas (or the United States for that matter).  Plaintiffs further argue that specific jurisdiction exists because the effects of that alleged tort were purportedly felt by some of the Plaintiffs in Texas.  However, this is insufficient to show purposeful availment "if the defendant[] did not otherwise have sufficient contacts with the State."  *Hooda v. WCA Servs. Corp.*, No. CIV.A. H-10-5022, 2011 WL 2182354, at *5 (S.D. Tex. June 3, 2011); *accord Auto Wax, Inc.*, 2001 WL 1891719, at *3.  Plaintiffs have therefore failed to satisfy their burden of establishing specific jurisdiction over ZeptoLab.

### b.     General Jurisdiction Does Not Exist Over Zeptolab

11.     Plaintiffs also have not established a *prima facie* case of general jurisdiction. Plaintiffs do not dispute that ZeptoLab is a United Kingdom company that has no offices or property in the United States.  Nor do Plaintiffs dispute that ZeptoLab has no bank accounts in Texas, and is not registered to do business there.  (ZeptoLab Mot. ¶ 12.)  Instead, Plaintiffs have provided a seemingly random list of scattered and isolated alleged contacts.  Plaintiffs contend that ZeptoLab: (1) filed a trademark lawsuit in New York, (2) maintains a website accessible worldwide, (3) entered into licensing details for other parties to create merchandise based on the *Cut the Rope* brand, (4) has attended "trade shows", (5) has filed trademark and copyright registrations, (6) developed several apps that have been downloaded millions of times, and (7) retained "agents and executives in the United States."  However, to establish general jurisdiction, ZeptoLab's contacts with Texas (under the long-arm statute) or the United States (under RICO)

must be **pervasive, continuous and systematic**. *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 420-21 (5th Cir. 2001). The contacts cited by Plaintiffs do not meet the high standard to establish general jurisdiction.

12. *First*, ZeptoLab's filing of a lawsuit in New York for trademark and copyright infringement cannot justify the assertion of jurisdiction over ZeptoLab. *Am. Bank, F.S.B. ex rel. Am. Premium Fin. v. Auto-Owners Mut. Fire & Cas. Ins. Co.*, 4:10-CV-331-A, 2010 WL 3784282, at *6 (N.D. Tex. Sept. 27, 2010). *Second*, ZeptoLab's website, which merely provides an email address for visitors to send "customer support" inquiries, also provides no valid basis for general personal jurisdiction. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir. 1999).[7]

13. *Third* and *fourth*, ZeptoLab's contractual agreements with U.S. companies for licensing deals are clearly not "pervasive" and therefore cannot justify assertion of general jurisdiction.[8] *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010). The same is true of sporadic attendance by agents of ZeptoLab at trade shows in the United States. *See Submersible Sys.*, 249 F.3d at 420-21. *Fifth*, Plaintiffs' assertion that ZeptoLab's filings of trademark or copyright registrations are sufficient to establish nationwide general jurisdiction also strains credulity. If filing such registrations were sufficient, every foreign owner of intellectual property attempting to protect its interests in the United States could be held subject to general jurisdiction.

14. *Sixth*, "sales of a product in the forum state are generally insufficient to establish general jurisdiction." *Am. Bank, F.S.B. ex rel. Am. Premium Fin.*, 2010 WL 3784282, at *6. This is true even if relatively large volumes of product have been sold in the forum. *See Bearry*

---

[7] Plaintiffs' claim that ZeptoLab takes "credit" for the *Cut the Rope* app is wholly irrelevant. Nor could ZeptoLabs' purported promotion of *Cut the Rope* – which Plaintiffs do not allege to be directed specifically at either Texas or the United States – support a finding of general personal jurisdiction. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2002).

[8] ZeptoLab does not manufacture, distribute or sell merchandise to consumers. Rather, it enters into licensing agreements which permit third-party companies to do so. (Zuy Reply Decl., ¶ 3.)

*v. Beech Aircraft Corp.*, 818 F.2d 370, 372 (5th Cir. 1987) (no general jurisdiction despite nearly $250 million in sales in the forum); *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1198 (4th Cir. 1993) (no general jurisdiction despite $13 million in sales in the forum).

15.  *Seventh*, Plaintiffs' allegation that ZeptoLab maintains "agents and executives in the United States" is also insufficient.  Plaintiffs cite to only "executive," Tanya Haider, who is an **independent contractor** (and not an employee) who has been engaged by ZeptoLab to help it with licensing deals.  (Zuy Reply Decl., ¶ 4.)  Plaintiffs similarly cite to only one "agent": Studio Licensing Inc.  Plaintiffs' own evidence states that Studio Licensing is based in **Toronto**, and thus it is an irrelevant contact.  (Pl. Opp., Ex. 9.)  These two contacts, like the others listed by Plaintiffs, are constitutionally insufficient to subject ZeptoLab to nationwide general jurisdiction.  *See Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1075 (11th Cir. 1999) (general jurisdiction "lacking even where a company had employees, agencies and salespeople regularly in the forum").

    **c.**   **It Would Be Unreasonable to Exercise Jurisdiction Here**

16.  Plaintiffs have also failed to demonstrate that the exercise of jurisdiction over ZeptoLab would be reasonable.  Plaintiffs do not dispute that it is a foreign company whose witnesses would be required to travel great distances to appear in this action.  (ZeptoLab Mot. ¶ 36.)  Nor does Plaintiff dispute that it is a mere fortuity that some of the named Plaintiffs happen to allegedly live in Texas.  (*Id.*)  The mere fact Plaintiffs have alleged that ZeptoLab engaged in purported wrongdoing does not outweigh these other considerations of fundamental fairness.  *Auto Wax, Inc.,* 2001 WL 1981719, at *3 ("The state's interest in protecting its citizens from injury is not significant enough to override the burden on everyone else in the case … .").

4919816.2

## 2. Plaintiffs' Remaining Jurisdictional Arguments Also Fail

17. In an attempt to keep ZeptoLab in this case, Plaintiffs assert two other jurisdictional arguments that are also without merit. *First*, Plaintiffs wrongly argue that ZeptoLab made a "general appearance" in this action (thereby purportedly waiving its jurisdictional defenses) by (i) appearing at a scheduling conference pursuant to this Court's Order, and (ii) moving for dismissal on the dual grounds of lack of personal jurisdiction and improper joinder. However, under the Federal Rules of Civil Procedure there is no distinction between a "special" and "general" appearance; a jurisdictional defense is properly preserved by raising it in a party's first motion under Rule 12(b), just as ZeptoLab has done here. *Bayou Steel Corp. v. M/V Amstelvoorn*, 809 F.2d 1147, 1149 n.6 (5th Cir. 1987).[9] Further, a defendant who has moved for dismissal for lack of personal jurisdiction in its first Rule 12 motion does not waive its defense of lack of personal jurisdiction by also raising other grounds for dismissal. *Ellibee v. Leonard*, 226 Fed. Appx. 351, 357 (5th Cir. 2007). Similarly, counsel's appearance at a Court-ordered scheduling conference is not a waiver. *US LED, Ltd. v. Nu Power Assocs., Inc.*, No. H-07-0783, 2008 WL 4838851, at *3 (S.D. Tex. Nov. 5, 2008).

18. Plaintiffs also claim they are purportedly entitled to take jurisdictional discovery. However, Plaintiffs do not describe what facts they hope to obtain from such discovery, or how such discovery would produce information that would support jurisdiction over ZeptoLab. "To allow [Plaintiffs] to conduct discovery on [ZeptoLab] would be to allow [them] to embark on a fishing expedition on a party over which this Court lacks jurisdiction." *Deemer v. Bontz*, No. CIV A 4:07-CV-380-Y, 2007 WL 3129485, at *8 (N.D. Tex. Oct. 25, 2007).

---

[9] Prior to the filing of the Motion at bar, ZeptoLab also consistently included an express reservation of its jurisdictional defenses in its filings with this Court. (*See* Doc. # 33; Doc. # 66.)

C. **ZeptoLab Should Be Dismissed on the Ground of Improper Joinder**

19. It is undisputed that, to establish joinder is proper, Plaintiffs have the burden to demonstrate, *inter alia*, that: (1) all Plaintiffs' claims arise out of the same transaction, occurrence or series of transactions or occurrences; and (2) joinder would not cause prejudice or delay. (ZeptoLab Mot. ¶ 41.) Plaintiffs cannot meet their burden with respect to either element. Accordingly, all Plaintiffs other than Mr. Opperman should be dismissed from the action on the ground of misjoinder. Because Mr. Opperman has not asserted a claim against ZeptoLab, ZeptoLab should also be dismissed on this ground.

20. *First,* each Plaintiff's claims simply do not arise out of the same transaction, occurrence or series of transactions or occurrences as those of the other Plaintiffs. This is because each Plaintiff independently engaged in his or her own **separate transactions** to acquire certain allegedly harmful Apps. Moreover, each App was programmed by different individuals, and functions differently from the other Apps at issue. (*See* ZeptoLab Mot. ¶ 42.)

21. Nonetheless, Plaintiffs wrongly contend that their claims can be deemed to arise from the same "series of transactions or occurrences" as long as all of the Plaintiffs' claims have a "logical relationship" to each other.[10] Plaintiffs further contend that this "logical relationship" test has been satisfied here simply because each Plaintiff allegedly purchased a mobile device from Apple, and each app at issue was allegedly reviewed by Apple and sold through Apple's online store. However, this is not enough. Even pursuant to the "logical relationship" test advocated by Plaintiffs, joinder of the claims of multiple plaintiffs is improper unless there are "some **common events** giving rise to each plaintiff's claim." *Norwood v. Raytheon Co.*, No. EP-04-CA-127-PRM, 2007 WL 2408480, at *3 (W.D. Tex. May 1, 2007) (emphasis added). In their

---

[10] This "logical relationship" test for determining whether joinder is proper has been applied by certain Texas district courts, but has not been adopted by the Fifth Circuit.

Opposition, Plaintiffs have failed to inform the Court of any relevant events that are common to the claims of all Plaintiffs, and thereby tacitly concede that none exist.

22. Having failed to allege any common events, Plaintiffs instead argue that their (vaguely pleaded) RICO claims against ZeptoLab and the other defendants provide an adequate procedural basis for joinder of all of their claims. Again, this is entirely incorrect, particularly given the lack of any plausible factual basis for the "conspiracy" which Plaintiffs have alleged. *See* App Defendants' Motion to Dismiss (Doc. # 145) at 32-40; *Rappaport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481, 497 (D.N.J. 1998) (joinder should not be granted based upon a "far-fetched allegation" that defendants were part of a "strategic umbrella collusion"). Notably, the only case which Plaintiffs have cited for this incorrect position is an inapplicable criminal decision that was not decided under the Federal Rules of Civil Procedure.

23. *Second*, Plaintiffs incorrectly contend that joinder will allow for a more "economical" litigation, and will not prejudice ZeptoLab. This is not so. Plaintiffs have not disputed that they will have to individually prove with separate evidence that each of the **fourteen** named Plaintiff downloaded some of the **eleven** Apps at issue, and that each of those Apps cause an injury to that Plaintiff. Nor have Plaintiffs disputed that each of the **sixteen** defendants is likely to assert its own defenses and conduct its own motion practice. (ZeptoLab Mot. ¶ 43.)[11] This will cause tremendous delays and unnecessary expense for ZeptoLab. Nonetheless, Plaintiffs speculate there might be some "overlapping evidence" between their various claims and that there is a hypothetical possibility of "inconsistent results" if their claims are tried separately. However, this speculation is insufficient to allow joinder given the concrete prejudice that ZeptoLab will face if all Plaintiffs' claims proceed together in the same action.

---

[11] To date, the sixteen defendants have filed seven motions to dismiss and two motions to sever.

*Acevedo v. Alsup's Conven. Stores, Inc.*, 600 F.3d 516, 522 (5th Cir. 2010) (joinder is improper when "different witnesses and documentary proof would be required").

24. *Finally,* Plaintiffs wrongly argue that the Court may only grant severance (and not dismissal) as a remedy for misjoinder. This is simply incorrect. (*See* cases cited in ZeptoLab's Motion at ¶ 40.) The decision cited by Plaintiffs for this incorrect proposition, *El Aguila Food Prods., Inc. v. Gruma Corp.*, 167 F. Supp. 2d 955 (S.D. Tex. 2001), is not to the contrary.

### D. ZeptoLab Has Properly Joined the Other Defendants' Rule 12(b)(6) Motions

25. Plaintiffs admit that their claims against each of the defendants "present the same legal issues." (Pl. Opp. at 6.) Accordingly, to the extent that the Court grants the FED. R. CIV. P. 12(b)(6) motions which have been filed by the other defendants to this action, and holds that the SAC's causes of action fail to state a claim against them, that holding would apply with equal force and effect to ZeptoLab. For this reason, ZeptoLab has joined in the other defendants' Rule 12(b)(6) motions (which were filed shortly after ZeptoLab filed the Motion at bar).

26. In their Opposition, Plaintiffs wrongly argue ZeptoLab's joinder of the other defendants' Rule 12(b)(6) motions somehow violates FED. R. CIV. P. 7 and 11 simply because ZeptoLab has not provided any legal authorities of its own to establish that the SAC fails to state a claim. (Pl. Opp. at 6-7.) However, ZeptoLab has expressly joined in the arguments and legal authorities raised by the other defendants in their Rule 12(b)(6) motions. *See* W.D. TEX. LOCAL CIV. R. 7(d)(2)(1) ("Legal authorities are not required to be cited in . . . joint motions to dismiss"). Pointedly, Plaintiff has not cited any remotely relevant caselaw in support of its argument that ZeptoLab is precluded from doing so under Rules 7 and 11 (as it clearly is not).

27. Indeed, ZeptoLab's joinder of the other defendants' motions is logical from the standpoint of judicial efficiency. FED. R. CIV. P. 12(h) provides a defendant with the right to file a motion for judgment on the pleadings on the ground that the complaint fails to state a claim –

even when (as here) that defendant previously filed a motion to dismiss on different grounds.[12] ZeptoLab submits that it is more efficient for it to join in the other defendants' Rule 12(b)(6) motions at this time than for it to file a motion for judgment on the pleadings (which would duplicate arguments that have already been raised by the other defendants) at a later date.[13]

**E.**     **Conclusion**

28.    For these reasons, ZeptoLab should be dismissed from the action with prejudice.

DATED: October 19, 2012
             Austin, Texas

Respectfully submitted,

JACKSON WALKER L.L.P.

By: */s/ Lawrence A. Waks*
    Lawrence A. Waks
    Texas State Bar No. 20670700
    Emilio B. Nicolas
    Texas State Bar No. 24058022
    100 Congress Avenue, Suite 1100
    Austin, Texas 78701
    (512) 236-2000 – Telephone
    (512) 236-2002 – Facsimile
    E-mail: lwaks@jw.com; enicolas@jw.com

MITCHELL SILBERBERG & KNUPP LLP
    Christine Lepera (*pro hac vice*)
    New York State Bar No. 1849637
    Jeffrey M. Movit (*pro hac vice*)
    New York State Bar No. 4239778
    12 East 49th Street, 30th Floor
    New York, New York 10017-1028
    (212) 509-3900 – Telephone
    (212) 509-7239 – Facsimile
    E-mail: ctl@msk.com; jmm@msk.com
*Attorneys for Defendant ZeptoLab UK Limited*

---

[12] For this reason, Plaintiffs' argument that ZeptoLab has "waived" the arguments set forth in the other defendants' FED. R. CIV. P. 12(b)(6) motions is meritless.

[13] In an abundance of caution, ZeptoLab does respectfully reserve the right to subsequently file a motion for judgment on the pleadings to the extent it is necessary to do so.

4919816.2

## **CERTIFICATE OF SERVICE**

This is to certify that on this 19th day of October, 2012, a copy of the foregoing reply brief was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following:

*Attorneys for Plaintiffs and the Putative Class:*

Carl F. Schwenker
Texas State Bar No. 00788374
LAW OFFICES OF CARL F. SCHWENKER
The Bremond-Houston House
706 Guadalupe Street
Austin, Texas 78701
(512) 480-8427 – Telephone
(512) 857-1294 – Facsimile
E-mail: cfslaw@swbell.net

Dirk M. Jordan
Texas State Bar No. 00784359
JORDAN LAW FIRM
1717 West 6th Street, Suite 420
Austin, Texas 78703
(512) 469-7987 – Telephone
(512) 469-9408 – Facsimile
E-mail: dirk@dirkjordan.com

Jeffrey S. Edwards
Texas State Bar No. 24014406
THE EDWARDS LAW FIRM
The Bremond-Houston House
706 Guadalupe Street
Austin, Texas 78701
(512) 623-7727 – Telephone
(512) 623-7729 – Facsimile
E-mail: jeff@edwards-law.com

*Attorneys for Defendant Path, Inc.:*

Gregory J. Casas
GREENBERG TRAURIG, LLP
300 West 6th Street, Suite 2050
Austin, Texas 78701
(512) 320-7238 – Telephone
(512) 320-7210 – Facsimile
Email: casasg@gtlaw.com

Jedediah Wakefield
Shane B. Witnov
Tyler G. Newby
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
(415) 875-2300 – Telephone
(415) 281-1350 – Facsimile
E-mail: jwakefield@fenwick.com;
switnov@fenwick.com; tnewby@fenwick.com

/
/
/
/
/
/
/

4919816.2

*Attorneys for Defendant Twitter, Inc.:*

| | |
|---|---|
| Tanya D. Henderson<br>PERKINS COIE LLP<br>2001 Ross Avenue, Suite 4225<br>Dallas, Texas 75201<br>(214) 965-7700 – Telephone<br>(214) 965-7799 – Facsimile<br>Email: thenderson@perkinscoie.com | Amanda J. Beane<br>Ryan T. Mrazik<br>PERKINS COIE LLP<br>1201 Third Avenue, Suite 4900<br>Seattle, Washington 98101<br>(206) 359-8000 – Telephone<br>(206) 359-9000 – Facsimile<br>E-mail:  abeane@perkinscoie.com;<br>rmrazik@perkinscoie.com |
| Timothy L. Alger<br>PERKINS COIE LLP<br>3150 Porter Drive<br>Palo Alto, California 94304<br>(650) 838-4300 – Telephone<br>(650) 838-4350 – Facsimile<br>E-mail:  talger@perkinscoie.com | |

*Attorneys for Defendants Apple, Inc.:*

| | |
|---|---|
| Alan D. Albright<br>BRACEWELL & GIULIANI LLP<br>111 Congress Avenue, Suite 2300<br>Austin, Texas 78701<br>(512) 494-3620 – Telephone<br>(512) 472-9123 – Facsimile<br>Email: alan.albright@bgllp.com | William B. Dawson<br>Scott Howard Mellon<br>GIBSON, DUNN & CRUTCHER LLP<br>2100 McKinney Avenue, Suite 1100<br>Dallas, Texas 75201<br>(214) 698-3132 – Telephone<br>(214) 571-2919 – Facsimile<br>Email: wdawson@gibsondunn.com;<br>smellon@gibsondunn.com |

*Attorneys for Defendants Facebook, Inc. and Kik Interactive, Inc.:*

| | |
|---|---|
| Lori R. Mason<br>COOLEY, LLP<br>5 Palo Alto Square<br>3000 El Camino Real<br>Palo Alto, California 94306<br>(650) 843-5000 – Telephone<br>(650) 849-7400 – Facsimile<br>Email: lmason@cooley.com | Mazda K. Antia<br>Michael G. Rhodes<br>COOLEY, LLP<br>4401 Eastgate Mall<br>San Diego, California 92121<br>(858) 550-6000 – Telephone<br>(858) 550-6420 – Facsimile<br>Email: mantia@cooley.com;<br>mrhodes@cooley.com |

/
/
/
/
/
/

4919816.2

*Attorneys for Defendants Yelp! Inc. and Foodspotting, Inc.:*

| | |
|---|---|
| Peter D. Kennedy | Michael Page |
| GRAVES, DOUGHERTY, HEARON & MOODY, PC | DURIE TANGRI LLP |
| 401 Congress Avenue, Suite 2200 | 217 Leidesdorff Street |
| Austin, Texas 78701 | San Francisco, California 94111 |
| (512) 480-5764 – Telephone | (415) 362-6666  – Telephone |
| (512) 536-9908 – Facsimile | (415) 236-6300 – Facsimile |
| Email: pkennedy@gdhm.com | Email: mpage@durietangri.com |

*Attorneys for Defendants Instagram, Inc. and Gowalla Incorporated:*

| | |
|---|---|
| Michael J. Biles | Daniel Weinberg |
| KING & SPALDING LLP | Indra Neel Chatterjee |
| 401 Congress Avenue, Suite 3200 | Morvarid Metanat |
| Austin, Texas 78701 | ORRICK, HERRINGTON & SUTCLIFFE, LLP |
| (512) 457-2000 – Telephone | 1000 Marsh Road |
| (512) 457-2100 – Facsimile | Menlo Park, California 94025 |
| Email: mbiles@kslaw.com | (650) 614-7400 – Telephone |
| | (650) 614-7401 – Facsimile |
| M. Leah Somoano | Email: dweinberg@orrick.com; |
| ORRICK, HERRINGTON & SUTCLIFFE, LLP | nchatterjee@orrick.com; |
| 2050 Main Street, Suite 1100 | mmetanat@orrick.com |
| Irvine, California 92614 | |
| (949) 567-6700 – Telephone | |
| (949) 567-6710 – Facsimile | |
| Email: lsomoano@orrick.com | |

*Attorneys for Defendant Foursquare Labs, Inc.:*

Keith Mason Henneke
MORRISON & FOERSTER LLP
555 West Fifth Street, 35th Floor
Los Angeles, California 90013
(213) 892-5200 – Telephone
(213) 892-5454 – Facsimile
Email:  khenneke@mofo.com

*Attorneys for Defendant Rovio Mobile Oy a/k/a Rovio Entertainment Ltd.:*

| | |
|---|---|
| Shannon W. Bangle | Christopher G. Kelly |
| BEATTY, BANGLE, STRAMA P.C. | HOLLAND & KNIGHT LLP |
| 400 West 15th Street, Suite 1450 | 31 West 52nd Street |
| Austin, Texas 78701 | New York, New York 10019 |
| (512) 879-5050 – Telephone | (212) 513-3200 – Telephone |
| (512) 879-5040 – Facsimile | (212) 385-9010 – Facsimile |
| Email: sbanble@bbsfirm.com | Email: christopher.kelly@hklaw.com |

/

4919816.2

*Attorneys for Defendants Electronic Arts, Inc. and Chillingo Ltd.:*

Hal L. Sanders, Jr.
Adam Hugh Sencenbaugh
HAYNES AND BOONE, LLP
600 Congress Avenue, Suite 1300
Austin, Texas 78701
(512) 867-8427 – Telephone
(512) 867-8667 - Facsimile
Email: hal.sanders@haynesboone.com;
adam.sencenbaugh@haynesboone.com

   This is to further certify that a copy of the foregoing reply brief will be served upon the following non-CM/ECF system participants by U.S. Certified Mail, Return Receipt Requested:

*Attorneys for Defendants Electronic Arts, Inc. and Chillingo Ltd.:*

Jacob Alan Sommer
Marc J. Zwillinger
ZWILLGEN PLLC
1705 N. St. NW
Washington, DC 20036
(202) 296-3585 – Telephone
(202) 706-5298 – Facsimile

*Attorneys for Defendant Rovio Mobile Oy a/k/a Rovio Entertainment Ltd.:*

Judith R. Nemsick
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
(212) 513-3200 – Telephone
(212) 385-9010 – Facsimile

            JACKSON WALKER L.L.P.

            By: */s/ Lawrence A. Waks*
              Lawrence A. Waks
              Emilio B. Nicolas
           *Attorneys for Defendant ZeptoLab UK Limited*